UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

DONNY A. SINKOV, as Administrator of
the Estate of Spencer E. Sinkov, deceased,
DONNY A. SINKOV, and HARA SINKOV,

                              Plaintiffs,

-against-

DONALD B. SMITH, individually and in his
official capacity as Sheriff of Putnam County,
JOSEPH A. VASATURO, individually,
LOUIS G. LAPOLLA, individually,
THE COUNTY OF PUTNAM, New York,
and AMERICOR, INC.,

                              Defendants.

------------------------------------------------------x

**ORIGINAL**

**07 Civ. 2866**

**COMPLAINT**

**BRIEANT**

**Jury Trial Demanded**

Plaintiffs DONNY A. SINKOV, as Administrator of the Estate of Spencer E. Sinkov, deceased, DONNY A. SINKOV, and HARA SINKOV, by their attorneys Lovett & Gould, LLP, for their complaint respectfully allege:

## NATURE OF THE ACTION

1. This is an action for deprivations, committed by Defendants while acting under color of New York State law, of Plaintiffs' rights, privileges and immunities as guaranteed them by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983. The action also seeks damages against Defendants for their negligent and/or reckless conduct which proximately caused the death of Spencer E. Sinkov at the Putnam County Correctional Facility on May 20, 2006.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With respect to the claims against Americor, Inc., jurisdiction is also invoked pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum or value of $75,000. Plaintiffs' state law claims are interposed in accordance with 28 U.S.C. §1367.

3. On March 20, 2007, Letters of Administration were duly issued to decedent Spencer E. Sinlov's father, Donny A. Sinkov, by the Surrogate's Court, County of Putnam.

4. On August 3, 2006, a notice of claim was duly filed with the Defendant County of Putnam. A hearing pursuant to Section 50-h of the New York State General Municipal Law was conducted with respect to that notice of claim on December 18, 2006. The claim remains unadjusted and unresolved.

## THE PARTIES

5. Plaintiff DONNY A. SINKOV (hereinafter "Donny") is a citizen of the United States, domiciliary of the State of New York, and resident of the County of Putnam. He is the duly appointed Administrator of the Estate of Spencer E. Sinkov (hereinafter "Spencer"). Spencer was Donny's biological son. Donny sues both individually and in his fiduciary capacities.

6. Plaintiff HARA SINKOV (hereinafter "Hara") is a citizen of the United States, domiciliary of the State of New York, and a resident of the County of Putnam. Spencer was also Hara's biological son.

7. Defendant DONALD B. SMITH (hereinafter "Smith"), who is sued in his official and individual capacities, at all times relevant to this complaint was the duly elected Sheriff of the County of Putnam, New York. As such, he possessed the final, discretionary decision making authority with respect to: training of employees of the Putnam County Correctional Facility; and the creation and enforcement of policies and procedures pertaining to the treatment of and incarceration of inmates in the Putnam County Correctional Facility (hereinafter "PCCF").

8. Defendant JOSEPH VASATURO (hereinafter "Vasaturo"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Correction Officer employed by the County of Putnam in the PCCF. With respect to the events leading to the death of Spencer, Vasaturo was assigned as the booking officer for the midnight shift on May 20, 2006. As such he was immediately responsible for the initial assessment, health and safety of Spencer, including but not limited to the administration of the suicide assessment examination.

9. Defendant LOUIS G. LAPOLLA (hereinafter "Lapolla"), who is sued only in his individual and personal capacities, at all times relevant to the events alleged in this complaint was a Sergeant employed by the County of Putnam in the PCCF. With respect to events of May 20, 2006, Lapolla was responsible for supervision of correctional facility employees including his co-defendant Vasaturo. As such he had final, discretionary decision making authority with respect to the treatment of Spencer during that shift. Lapolla, together with his co-defendant Vasaturo, had direct responsibility to ensure Spencer was appropriately housed and provided with a sufficient level of supervision in connection with the results of medical and suicide screening administered

by Vasaturo to Spencer. Lapolla was immediately responsible for the health and safety of Spencer.

10. Defendant COUNTY OF PUTNAM, New York (hereinafter "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State. The County owns and operates the PCCF. Spencer died on May 20, 2006, while in the custody and control of the County at the PCCF.

11. Defendant AMERICOR, INC. (hereinafter "Americor") is a domestic corporation doing business in New York with its principle place of business at 3105 Videre Drive, Wilmington, Delaware. By reason of its contract and/or agreement with the County, and on May 20, 2006, Americor provided and coordinated medical services to PCCF inmates. In that connection, Americor was responsible for performing medical intake assessments on individuals brought to the PCCF.

## THE FACTS

12. On or about November 15, 2003, an inmate of the PCCF, Norberto Rivera, committed suicide by hanging himself from a sweatshirt tied to his cell door bars. He was found hanging by Defendant Vasaturo.

13. Upon booking and/or processing into the PCCF five days earlier, Rivera was administered the required suicide screening examination in connection with which he scored sufficiently high so as to require him to be placed on periodic observations every fifteen minutes. He was noted to be actively withdrawing from heroin and was placed in the facility's detoxification program. During his incarceration in Putnam County, Rivera was housed in a cell in the North Housing Unit.

14. Upon Rivera's death, the New York State Commission of Correction conducted an investigation and issued a report dated January 11, 2005 in which the Commission concluded that:

> a. there was a regular and reoccurring policy of the jail Psychiatrist failing to see patients who were intoxicated or withdrawing from drug use which policy constituted a deliberate refusal to provide services and amounted to inadequate medical care;
>
> b. the post assignment then in place was inadequate in that one officer was assigned to the North Housing Unit post and that officer's duties required him or her to leave the post thereby preventing the officer from maintaining active supervision of inmates;
>
> c. staff of the Putnam County Correctional Facility should be counseled to document the exact time of their observations of inmates rather than rounding off times to the nearest fifteen or thirty minute interval; and
>
> d. Smith should request an updated staffing analysis to be completed with particular attention to the North Housing area post and its adjacent responsibilities.

15. On May 19, 2006, Spencer, then twenty-one years old, was arrested and brought to the PCCF by members of the Putnam County Sheriff's Department. Spencer had never been arrested before and had no criminal record.

16. Up to and including May 19, 2006, Spencer resided with his parents, Donny and Hara, and his younger brother in their family home in Putnam County. In that connection he contributed to the household by performing household chores, shopping,

5

maintenance, and the like. Spencer was also involved in actively caring for his mother, Hara, who was and continues to be seriously ill. Spencer was an aspiring musician and composer who played bass guitar with a local band and had recently received copyrights for several songs. He attended college, then in his third year. In 2006, he was involved in the active management of a multi-family property then owned by his father Donny and with respect to which he was being trained to fully manage.

17. Upon arrival at the Putnam County Correctional Facility at approximately 12:30 a.m. on May 20, 2006, Defendant Vasaturo booked and processed Spencer, which processing included administering to Spencer a suicide screening examination. Spencer's score on the suicide screening examination indicated that he should be the subject of constant supervision as the results revealed Spencer expressed feelings of hopelessness, suffered from current heroin addiction, and *inter alia* showed signs of active withdrawal from heroin. Under the circumstances, Vasaturo was also required to provide notification to the Shift Commander of the results of Spencer's suicide assessment examination.

18. During the booking process, Lapollo spoke directly with Spencer with respect to his recent use of heroin and withdrawal therefrom. Spencer inquired of Lapollo about the availability of a detoxification program in the facility.

19. Paul Clark, an employee of Americor and a registered nurse, performed the required medical intake assessment of Spencer on May 20, 2006. However, consistent with Americor's policies and practices and/or due to a lack of adequate training, Clark performed a wholly inadequate assessment of Spencer, failed to record his vital signs, did not document any physical examination or medical history, and in that regard failed to

comply with, *inter alia*, State standards, rules and/or regulations with respect to intake assessments performed on inmates of correctional facilities.

20. At the conclusion of the booking process, Vasaturo and/or Lapolla, acting with deliberate indifference to the high risk that Spencer would commit suicide, determined to place Spencer on "fifteen minute checks" rather than constant supervision.

21. Lapolla ordered Vasaturo to place Spencer in cell number 29. Vasaturo instead unilaterally determined to change the assignment to cell 7 in the North Housing Unit so that Spencer could be observed at fifteen-minute intervals.

22. In connection with his processing of Spencer, Vasaturo deliberately, recklessly and/or negligently did not follow County policies and procedures when he failed to:

    a. immediately notify his supervisor and/or Shift Commander of the results of the suicide assessment examination he administered to Spencer;

    b. immediately notify his supervisor, Lapolla, that he was processing a high risk inmate;

    c. forward a copy of the suicide screening form to his supervisor;

    d. assign appropriate housing based on the results of the suicide screening test;

    e. notify his supervisor of the change and reason for the change in the cell assignment that he unilaterally made; and

    f. notify his supervisor as to why a fifteen minute watch was instituted.

23. Similarly, Lapolla deliberately, recklessly and/or negligently did not follow County policies and procedures when he failed to:

    a. inquire as to why Spencer was placed on a fifteen minute watch;

    b. receive and review the suicide screening results prior to Spencer's cell assignment;

    c. properly supervise his subordinate, Vasaturo; and,

    d. inquire about the reason for Vasaturo's decision to change Spencer's cell assignment to a cell in the North Housing Unit.

24. Americor and/or its employees also deliberately, recklessly and/or negligently failed to follow State and/or County standards, rules and regulations in connection with the intake assessment performed on Spencer.

25. At approximately 10:50 a.m. on May 20, 2006, Spencer visited with his parents, Donny and Hara, and younger brother at the facility visiting room. Spencer was overheard by correctional staff stating that he was withdrawing from heroin. Donny advised the correction officer in the visiting room that Spencer was going through heroin withdrawal and requested medical treatment for his son. In response, the correction officer advised Donny that, in accordance with the then practice and custom in place in the PCCF, Spencer could not receive any treatment for five days.

26. After approximately fifteen minutes of visiting with his family, and at 11:05 a.m., Spencer returned to his cell in the North Housing Unit.

27. During the period 11:05 a.m. to 1:50 p.m. on May 20, 2006, Spencer was under the direct supervision of the County defendants. Although he was supposed to be personally observed at fifteen-minute intervals during that period of time, upon

8

information and belief and in accordance with the County and Smith's practice then in place during weekend shifts, some if not all of the required fifteen-minute checks were never performed.

28. At 1:49 p.m. Correction Officer Michael Oliver observed Spencer hanging from his sweatshirt which was affixed to the cell door bars. CPR was performed by correctional staff and/or emergency medical technicians. Spencer was pronounced dead at approximately 3:01 p.m. The Medical Examiner's autopsy report concluded that Spencer had died of asphyxiation.

29. At the time of Spencer's reception into the Putnam County Correctional Facility on May 20, 2006 and against the background of Norberto Rivera's prior suicide in the same manner and on the same unit as Spencer's, the County and Smith deliberately and/or with reckless disregard for the substantial risk of harm posed to high risk detainees failed to implement policies requiring:

  a. constant supervision of inmates who received high scores on the suicide screening assessment;

  b. issuance to such inmates of paper clothing; and

  c. immediate provision of medical and/or psychiatric care for inmates who scored high on the suicide screening assessment, were under the influence of drugs and/or alcohol, and/or were withdrawing from alcohol and/or drug use.

30. Upon information and belief, the County and/or Smith did not take appropriate remedial steps in response to the concerns cited in the State Commission's January 11, 2005 report on the death of Norberto Rivera to wit:

    a.    Defendants failed to implement a policy requiring that the jail Psychiatrist/Physician see patients who were intoxicated or withdrawing from drugs or alcohol -- which failure the State Commission concluded three years earlier constituted a deliberate refusal to provide services and amounted to inadequate medical care;

    b.    Defendants failed to alter the North Housing Unit post assignment so as to ensure that the officer's duties either did not require him or her to leave the post and/or prevented the officer from maintaining active supervision of inmates; and

    c.    The policy of not accurately documenting active supervision of inmates continued.

31. Thus, consistent with the County and Smith's then policy, Spencer was not placed on constant supervision.

32. Consistent with the County and Smith's then policy, Spencer was not provided with a paper gown upon reception into the Correctional Facility.

33. During the time of his incarceration at the Putnam County Correctional Facility, despite the high score on the suicide screening assessment and Donny's requests for medical treatment for his son Spencer, consistent with the County and Smith's custom, practice and policy, Defendants deliberately, recklessly and/or negligently failed to provided Spencer with any medical or mental health treatment. Nor was Spencer placed in a detoxification program or treated in any way for withdrawal from heroin.

34. As a proximate result of Defendants' deliberate, willful, reckless and/or negligent disregard of Spencer's need for constant supervision, medical and/or mental health care, Spencer: was denied his federal civil rights as guaranteed him by reason of the United States Constitution and wrongfully deprived of his life without Due Process; and experienced pain and suffering.

35. As a proximate result of the Defendants' deliberate, willful, reckless and/or negligent conduct, Donny and Hara Sinkov were: subjected to a violation of their federal civil rights deriving from their biological familial relationship to Spencer; caused to suffer pecuniary losses in the form of lost future monetary contributions by Spencer, lost future contributions in the form of caring for his ill mother, lost future maintenance and support of the family home, and lost future assistance and/or complete management of his father's rental property; caused to suffer severe emotional upset, anxiety, and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM BY THE ESTATE
## AGAINST ALL DEFENDANTS

36. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

37. Under the premises the Defendants' conduct violated Spencer's rights as guaranteed by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM BY THE ESTATE
## AGAINST ALL DEFENDANTS

38. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

39. Under the premises each of the Defendants' negligently and/or recklessly caused the death of Spencer Sinkov for which Defendants are answerable in damages under New York State law.

## AS AND FOR A THIRD CLAIM BY DONNY AND HARA SINKOV
## AGAINST ALL DEFENDANTS

40. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35", inclusive.

41. Under the premises the Defendants' intentional and/or reckless conduct, proximately resulting in the death of Plaintiffs' biological son, violated Donny and Hara's federal civil rights as guaranteed them by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM BY DONNY AND HARA SINKOV
## AGAINST ALL DEFENDANTS

42. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "35" inclusive.

43. Under the premises the Defendants' intentional, reckless conduct, and/or negligent conduct resulted in the wrongful death of Spencer and as such Defendants are answerable in damages to Plaintiffs under New York State law.

WHEREFORE judgment is respectfully demanded:

a. Awarding as against all Defendants such compensatory damages as the jury may determine;

b. Awarding as against the individually named defendants on the §1983 claims such punitive damages as the jury may impose;

c. Awarding as against all Defendants on the §1983 claims reasonable attorney's fees and costs, and,

d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
April 9, 2007

LOVETT & GOULD, LLP
By: _____
Jane Bilus Gould (JBG4570)

_____
Kim Berg (KB1425)
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401