UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DONNY A. SINKOV, as Administrator of the Estate of    CIVIL ACTION NO.
Spencer E. Sinkov, deceased, DONNY A. SINKOV, and     07 Civ. 2866, (CLB)
HARA SINKOV,

              Plaintiffs,

                                                   **RULE 56.1 STATEMENT**

   - against -

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM, New York,
and AMERICOR, INC.,

              Defendants.
------------------------------------------------------------------x

      Defendant, AMERICOR, INC. (hereinafter "AmeriCor") by and through its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, sets forth the following Statements of Fact in accordance with Local Rule 56.1 and the motion rules of the Honorable Brient in support of summary judgment. Demand is made that any counter-statement be filed and served within seven (7) days.

      1.     Plaintiffs, DONNY A. SINKOV, as Administrator of the Estate of Spencer E. Sinkov, deceased, (hereinafter "Sinkov" or "the decedent") DONNY A. SINKOV, and HARA SINKOV, brought an action to recover for damages alleged to have been caused by the defendants, DONALD B. SMITH, individually and in his official capacity as Sheriff of Putnam County ("Sheriff Smith"), JOSEPH A. VASATURO ("Vasaturo"), individually, LOUIS G. LAPOLLA ("LaPolla"), individually, THE COUNTY OF PUTNAM, New York[1], and AMERICOR, INC., as set forth in the Complaint (See Exhibit A annexed to the Declaration of

---

[1] The Putnam County Correctional Facility will hereinafter be referred to as "PCCF."

1980100.1

Adam I. Kleinberg), the Answer of AMERICOR, INC. ("AmeriCor") (See Exhibit D annexed to the Declaration of Adam I. Kleinberg) and the Answer of DONALD B. SMITH, individually and in his official capacity as Sheriff of Putnam County, JOSEPH A. VASATURO, individually, LOUIS G. LAPOLLA, individually, THE COUNTY OF PUTNAM, New York, (See Exhibit B annexed to the Declaration of Adam I. Kleinberg).

2. The plaintiffs' assert federal jurisdiction based upon the alleged violation of Sinkov's Fourteenth Amendment Rights, in violation of 18 U.S.C. §1983.

## THE PARTIES

3. The plaintiffs are the Estate of Spencer Sinkov, Decedent, and Donny and Hara Sinkov, the decedent's parents.

4. Donald B. Smith, was the Sheriff of Putnam County at the time of the alleged occurrence. The Sheriff promulgates policies with respect to the Putnam County Correctional Facility ("PCCF"). (See Deposition Transcript of Captain Robert LeFever, Page 14, Lines 7-17, annexed to the Declaration of Timothy P. Coon as **Exhibit "A"**).

5. Joseph A. Vasaturo ("Vasaturo") was a Putnam County Corrections Officer at the time of the alleged occurrence. (See Deposition Transcript of Joseph Vasaturo, Page 6, Lines 24-25, annexed as Exhibit "F" to the Declaration of Adam I. Kleinberg).

6. Louis G. LaPolla ("La Polla") was a Sergeant at the PCCF at the time of the alleged occurrence. (See Deposition Transcript of Louis LaPolla, Page 5, Lines 15-17, annexed as Exhibit "G" to the Declaration of Adam I. Kleinberg).

7. AmeriCor was a health-care company that provides services in small, county jails. (See Deposition Transcript of Kevin Duffy, Page 6, Lines 3-5 annexed as **Exhibit "B"** to the Declaration of Timothy P. Coon). On or about July 1, 2003, AmeriCor entered into a contract

with the County of Putnam to provide such medical services and has been providing these services since. (See Deposition Transcript of Kevin Duffy, Page 14, Lines 4-5, 21-25, annexed as Exhibit "B" to the Declaration of Timothy P. Coon). (See also relevant portions of Scope of Services annexed as **Exhibit "C"** to the Declaration of Timothy P. Coon)

### DEPONENTS

8. Captain Robert LeFever ("Captain LeFever"), the Captain at PCCF was responsible for putting in place procedures to implement the policies formed by the Sherriff. (See Deposition Transcript of Captain Robert LeFever, Page 10, Lines 20-25 annexed as Exhibit "A" to the Declaration of Timothy P. Coon). Captain LeFever is a twenty-seven year veteran at PCCF. (See Deposition Transcript of Captain Robert LeFever, Page 5, Lines 12-25 annexed as Exhibit "A" to the Declaration of Timothy P. Coon).

9. Peter Clarke was a registered nurse employed by AmeriCor and was on duty when Sinkov was brought to Central Booking. (See Deposition Transcript of Peter Clarke, Page 6, Lines 9-10, Page 8, Lines 5-7, Pages 42-44, annexed as **Exhibit "D"** to the Declaration of Timothy P. Coon).

10. Susan Waters was a registered nurse employed by AmeriCor who came on duty the morning of May 20, 2006 and later performed CPR on Sinkov. (See Deposition Transcript of Susan Waters, Page 16, Lines 12-14, Page 7, Lines 12-15, Page 58, Lines 4-14, Page 33, Lines 1-4, annexed as **Exhibit "E"** to the Declaration of Timothy P. Coon).

11. Robert Wendover was a corrections officer employed by the County of Putnam on May 20, 2006. (See Deposition Transcript of Corrections Officer Robert Wendover, Page 5, Lines 19-24 annexed as Exhibit "V" to the Declaration of Adam I. Kleinberg).

1980100.1

12. Michael Oliver was a corrections officer employed by the County of Putnam on May 20, 2006. (See Deposition Transcript of Corrections Officer Michael Oliver, Page 6, Lines 15-16 annexed to the Declaration of Adam I. Kleinberg as Exhibit "U").

## RELEVANT UNDISPUTED FACTS

13. On or about May 19, 2006, the decedent was arrested and charged with five counts of both Criminal Possession of a Controlled Substance and Criminal Sale of a Controlled Substance. After his arrest, Sinkov was thereafter brought to the PCCF by members of the Putnam County Sheriff's Department. (See Final Report of the New York State Commission Correction, Page 2, ¶5, annexed to the Declaration of Adam I. Kleinberg as Exhibit "N")(See also copies of felony complaints against Spencer Sinkov, annexed to the Declaration of Adam I. Kleinberg as Exhibit "W").

14. On or about May 20, 2006, at approximately 12:30 a.m., the decedent arrived at Central Booking. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 122, Line 3, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). At that time, the decedent was placed into a holding cell for approximately one hour. His mood was lighthearted and Vasaturo was joking with the decedent. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 123, Lines 13-17, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). Further, at that time there was no an indication the decedent would hurt himself. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 127, Lines 3-16, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

15. LaPolla met Sinkov during the intake process. After being patted down, he was placed into a holding cell. LaPolla took the decedent's pedigree information for the intake screening and found the decedent to be polite and responsive. (See Deposition Transcript of

4

1980100.1

Sergeant Louis LaPolla, Page 54, Lines 4-17, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). LaPolla also discussed the decedent's heroin use. In response to how much heroin did the decedent use, the decedent stated, "a lot." LaPolla then asked the decedent if he was going to have any problems with withdrawal, and the decedent said, "No." The decedent did ask about a methadone program, and LaPolla advised him there was no methadone program at PCCF. LaPolla then asked again about whether the decedent would be okay relating to any withdrawal problems, and the decedent said he would be okay. (See Deposition Transcript of Sergeant Louis LaPolla, Pages 57-58, Lines 17-25, 1-10, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G").

16. At this time, the decedent looked okay. He exhibited no symptoms of withdrawal. He was not shaking, was not nauseous nor was he claiming to be nauseous. (See Deposition Transcript of Sergeant Louis LaPolla, Page 61, Lines 15-24, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). The decedent was calm. He was not overly upset nor was he unresponsive. (See Deposition Transcript of Sergeant Louis LaPolla, Page 75, Lines 3-9, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). Sinkov did not express any suicidal ideations. He was respectful and made some jokes. (See Deposition Transcript of Sergeant Louis LaPolla, Page 79, Lines 21-25, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G").

17. Sometime thereafter, Vasaturo completed the screening intake, including the completion of the Putnam County Correctional Facility Suicide Prevention Screening Guidelines Form SOJ-32. ("Suicide Screening") (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 128, Lines 7-8, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). (See also Suicide Screening Form of Spencer Sinkov, annexed to the Declaration of Adam I.

Kleinberg as Exhibit "P"). No one assisted him. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 128, Lines 9-10, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). After completing the screening intake, he verbally notified LaPolla that he was placing the decedent on a 15-minute watch and he was placing him in cell 7. He told LaPolla he was doing so due to medical screening and answers provided on the suicide screening. At no time did Sergeant LaPolla change the assignment. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 129, Lines 18-24, Page 130, Lines 12-18, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

18.     When Vasaturo asked the decedent if he was going to hurt himself, the decedent replied, "No." (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 137, Lines 5-10, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). The decedent further stated he was the healthiest junkie Vasaturo would ever meet, that he took care of his body. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 137, Lines 5-10, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). Further, the decedent had asked for some food at this time and was given a bagel or roll and some juice, which he ate. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 11-18, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

19.     With respect to his physical appearance, Vasaturo stated that the decedent looked "normal." (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 138, Lines 10-12, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). He found the decedent to be coherent, and did not believe he was under the influence at the time. Sinkov was calm. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 149, Lines 1-7, 22-23, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

1980100.1

20.     The decedent had a score of ten and had more than one shaded box on the SOJ-32, on the suicide screen performed by Vasaturo. (See Suicide Screening Form of Spencer Sinkov annexed to the Declaration of Adam I. Kleinberg as Exhibit "P"). Despite the requirement to do so, Vasaturo did not notify his supervisor. (See Suicide Screening Form of Spenser Sinkov, annexed to the Declaration of Adam I. Kleinberg as Exhibit "P"). (See also, Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 155, Lines 11-16, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). (See also, Putnam County Policy Article 15, Mental Health Evaluation and Service, annexed to the Declaration of Adam I. Kleinberg as Exhibit "I").

21.     Vasaturo alone determined that the decedent was to be placed on a 15-minute watch. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 170, Lines 7-10, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F"). At no time did Vasaturo think that the decedent would hurt himself. (See Deposition Transcript of Corrections Officer Joseph Vasaturo, Page 174, Lines 8-9, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

22.     If an inmate scores an eight or higher, or one or more shaded boxes are checked, a supervisor is to be notified. (See Deposition Transcript of Captain Robert LeFever, Page 29-30, Lines 21-25, 1-4, annexed to the Declaration of Timothy P. Coon as Exhibit "A"). (See also Deposition Transcript of Sergeant Louis LaPolla, Page 30, Lines 19-24, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). The level of supervision would be determined based upon score, and observation, with a score of eight or higher requiring a constant watch. (See Deposition Transcript of Captain Robert LeFever, Page 63-64, Lines 21-25, 1-16, annexed to the Declaration of Timothy P. Coon as Exhibit "A"). AmeriCor did not

have any role in determining the level of supervision with respect to a possible suicide risk. (See Deposition Transcript of Captain Robert LeFever, Page 58-59, Lines 25, 1-16, annexed to the Declaration of Timothy P. Coon as Exhibit "A"). (See also Deposition Transcript of Sergeant Louis LaPolla, Page 29, Lines 9-14, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). Further, PCCF was not required to notify AmeriCor when and if an inmate scored an eight or higher on the suicide screening. (See Deposition Transcript of Captain Robert LeFever, Page 153-4, Lines 24-25, 1-5, annexed to the Declaration of Timothy P. Coon as Exhibit "A"). (See also, Deposition Transcript of Corrections Officer Robert Wendover, Page 47-48, Lines 21-25, 1-3, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V").

23.  AmeriCor's role was to provide medical services to the inmates. AmeriCor would do an initial screening at booking, and then within the first 24 hours, a more comprehensive screening is done at the medical office. (See Deposition Transcript of Sergeant Louis LaPolla, Page 27, Lines 1-25, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). (See also, Deposition Transcript of Corrections Officer Robert Wendover, Page 46-47, Lines 24-25, 1-20, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V").

24.  AmeriCor has no role in completing the suicide screening, nor has it ever had a role in filing out the suicide screening prior to the death of the decedent. (See Deposition Transcript of Captain Robert LeFever, Page 26, Lines 8-10, annexed to the Declaration of Timothy P. Coon as Exhibit "A"). The SOJ-32 is administered by the correction officer. (See Deposition Transcript of Captain Robert LeFever, Page 29, Lines 12-17, annexed to the Declaration of Timothy P. Coon as Exhibit "A").

25.  AmeriCor's contract with Putnam and the National Commission on Correctional Health Care requires AmeriCor to obtain a complete history and comprehensive physical

examination within fourteen (14) days of an inmate commitment. (See relevant portions of AmeriCor Scope of Services annexed as Exhibit "C" to the Declaration of Timothy P. Coon)

26. Sometime during the booking process, the Sinkov spoke with AmeriCor Nurse Peter Clarke. ("Nurse Clarke"). At that time, Nurse Clarke discussed his heroin use. Sinkov advised Nurse Clarke that he had used a bag of heroin 24 hours ago. (See Deposition Transcript of Peter Clarke, Page 42, Lines 5-13, Page 44, Lines 22-23, annexed to the Declaration of Timothy P. Coon as Exhibit "D"). The decedent advised Nurse Clarke that he had no medical problems and that he felt fine. When asked if he felt sick, the decedent responded no. Nurse Clarke then advised the decedent about medical and that if he felt sick, tell the officers he needed to see medical. (See Deposition Transcript of Peter Clarke, Page 43, Lines 12-22, Page 73, Lines 21-25, annexed to the Declaration of Timothy P. Coon as Exhibit "D").

27. After speaking with the decedent, Nurse Clarke wrote a progress note which stated, "received in booking A&E [alert and oriented] normal gait non tremulous good spirits stats feels fine." He further wrote will follow, meaning that if a complaint was brought to his attention by an officer, medical would assist. (See Progress Notes, annexed to the Declaration of Timothy P. Coon as **Exhibit "F"**). (See also Deposition Transcript of Peter Clarke, Page 52, Lines 5-23, annexed to the Declaration of Timothy P. Coon as Exhibit "D"). Sinkov did not look sick. (See Deposition Transcript of Peter Clarke, Page 74, Lines 22-24, annexed to the Declaration of Timothy P. Coon as Exhibit "D"). Indeed, he was joking around. (See Deposition Transcript of Peter Clarke, Page 78, Lines 14-19, annexed to the Declaration of Timothy P. Coon as Exhibit "D"). The decedent denied any medical problems. (See Deposition Transcript of Peter Clarke, Page 79, Lines 3-4, annexed to the Declaration of Timothy P. Coon as Exhibit "D").

1980100.1

28. After leaving Central Booking, the decedent was placed in cell #7 in the North Housing Unit on a fifteen minute watch.

29. That morning, the decedent ate breakfast. (See Deposition Transcript of Corrections Officer Michael Oliver, Pages 87-88, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U").

30. At approximately 10:50 a.m., the decedent was visited by his mother, father and brother. (See Final Report of the New York State Commission Correction, Page 5, ¶12, annexed to the Declaration of Adam I. Kleinberg as Exhibit "N"). He was escorted to the visit by Corrections Office Wendover. (See, Deposition Transcript of Corrections Officer Robert Wendover, Page 48, Lines 14-17, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V"). (See also Deposition Transcript of Corrections Officer Michael Oliver, Page 89, Lines 7-20, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U"). At the time Wendover retrieved the decedent for his visit, he seemed fine. (See Deposition Transcript of Corrections Officer Robert Wendover, Page 51, Lines 2-4, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V").

31. During the visit, the decedent's parents asked the decedent whether he was going through withdrawal. The decedent replied that it was not too bad. (See Deposition Transcript of Corrections Officer Robert Wendover, Page 56, Lines 11-18, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V"). (See also Deposition Transcript of Hara Sinkov, Page 14, Lines 11-13, annexed to the Declaration of Timothy P. Coon as **Exhibit "G"**). (See Deposition Transcript of Donny A. Sinkov, Page 68-69, Lines 25, 1-4, annexed to the Declaration of Timothy P. Coon as **Exhibit "H"**). At no time did the decedent ever discuss thoughts of suicide with his mother. (See Deposition Transcript of Hara Sinkov, Page 13, Lines 15-18, annexed to

1980100.1

the Declaration of Timothy P. Coon as Exhibit "G"). The decedent did not express any suicidal thoughts during this visitation. (See Deposition Transcript of Donny Sinkov, Page 22-24, annexed to the Declaration of Timothy P. Coon as Exhibit "H").

32. At approximately 11:05 a.m., the visit ended and Wendover escorted the decedent to meet Oliver for transfer of the decedent. This took place outside of the medical department. (See Deposition Transcript of Corrections Officer Robert Wendover, Page 59, Lines 21-22, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V"). (See also, Deposition Transcript of Corrections Officer Michael Oliver, Page 91, Lines 13-20, Page 92, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U"). At the time Wendover handed the decedent over to Oliver, Oliver and the decedent joked about the decedent looking like a rock star. (See Deposition Transcript of Corrections Officer Robert Wendover, Page 60, Lines 15-18, annexed to the Declaration of Adam I. Kleinberg as Exhibit "V").

33. At approximately 11:00 a.m., AmeriCor Nurse Susan Waters ("Nurse Waters") saw the decedent for the first time, while he was sitting outside of the medical office. (See Deposition Transcript of Susan Waters, Page 76, Lines 13-20, annexed to the Declaration of Timothy P. Coon as Exhibit "E"). Nurse Waters was advised at the start of her shift of the decedent's admission to the facility and his history of heroin use, but that he had no signs and symptoms of withdrawal. (See Deposition Transcript of Susan Waters, Page 58, Lines 4-14, annexed to the Declaration of Timothy P. Coon as Exhibit "E").

34. When Nurse Waters saw the decedent sitting outside of the medical office, she thought he was a female prisoner. (See Deposition Transcript of Susan Waters, Page 77, Lines 13-21, annexed to the Declaration of Timothy P. Coon as Exhibit "E"). In front of the decedent, Nurse Waters asked Officer Blanchard if that was the female that need Motrin. The decedent

started to laugh. Nurse Waters told Sinkov that she thought he was a girl. The decedent laughed and said that is what everyone thought when they see him, he should get a haircut. (See Deposition Transcript of Susan Waters, Page 80, Lines 5-19, annexed to the Declaration of Timothy P. Coon as Exhibit "E"). At this time, the decedent appeared to be fine. (See Deposition Transcript of Susan Waters, Page 84, Lines 17-18, annexed to the Declaration of Timothy P. Coon as Exhibit "E").

35. After seeing the decedent, Nurse Waters wrote a progress note indicating that she saw the decedent outside of medical and that he was without signs of withdrawal, was in good spirits and was laughing and joking around. His gait was steady and no complaints were made by the decedent. (See Progress Notes, annexed to the Declaration of Timothy P. Coon as Exhibit "F"). She also filled out a Mental Health Routing Sheet. (See Deposition Transcript of Susan Waters, Page 87, Lines 19-25, annexed to the Declaration of Timothy P. Coon as Exhibit "E")(See also, Mental Health Routing Sheet, annexed to the Declaration of Timothy P. Coon as **Exhibit "I"**).

36. At approximately 11:02, the decedent was back in his cell. (See Deposition Transcript of Corrections Officer Michael Oliver, Page 133, Lines 13-21, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U"). The decedent told Oliver that "everything was ok, it was an alright visit." (See Deposition Transcript of Corrections Officer Michael Oliver, Page 97, Lines 14-18, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U").

37. Thereafter, at approximately 11:30 a.m., the decedent ate some of his lunch. (See Deposition Transcript of Corrections Officer Michael Oliver, Page 98, Lines 19-23, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U") (See also Final Report of the New York

State Commission Correction, Page 5, ¶13, annexed to the Declaration of Adam I. Kleinberg as Exhibit "N").

38.  Oliver collected the decedent's tray at 12:09 p.m. and performed 15-minute checks of the decedent thereafter. (See Final Report of the New York State Commission Correction, Page 5, ¶13, annexed to the Declaration of Adam I. Kleinberg as Exhibit "N").

39.  At or about 1:49 p.m., the decedent was found hanging from the bars of his cell. (See Deposition Transcript of Corrections Officer Michael Oliver, Page 99, Lines 4-7, annexed to the Declaration of Adam I. Kleinberg as Exhibit "U"). (See Final Report of the New York State Commission Correction, Page 5, ¶14, annexed to the Declaration of Adam I. Kleinberg as Exhibit "F").

40.  Nurse Waters was called to the cell and performed CPR on Sinkov until the paramedics arrived. (See Deposition Transcript of Susan Waters, Page 33, Lines 1-4, annexed as Exhibit "E" to the Declaration of Timothy P. Coon).

Dated: White Plains, New York
       May 6, 2008

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Timothy P. Coon (TC 3357)
Bernice E. Margolis (BM0702)
Attorneys for Defendant AmeriCor
3 Gannet Drive
White Plains, New York 10604
(914) 323-7000
File No.: 07621.00174

1980100.1

TO:    Lovett & Gould, LLP
Attorneys for Plaintiffs
Attn.: Kim Berg, Esq.
222 Bloomingdale Road
White Plains, NY 10605
(914) 428-8401
Fax: (914) 428-8916

Santangelo Randazzo & Mangone, LLP
Attorneys for Co-Defendants
Attn.: James Randazzo, Esq.
151 Broadway
Hawthorne, New York 10532
(914) 741-2929
Fax: (914) 741-2920

Miranda Sokoloff Sambursky Slone Verveniotis LLP
Attorneys for Co-defendants DONALD B. SMITH
Attn.: Adam I. Kleinberg, Esq.
The Esposito Building
240 Mineola Boulevard
Mineola, NY 11501
516.741.7676 (TEL)
516.741.9060 (FAX)