UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

**NOTICE OF MOTION**
07 Civ. 2866 (CLB)

DONNY A. SINKOV, as Administrator of the Estate of
Spencer E. Sinkov, deceased, DONNY A. SINKOV, and
HARA SINKOV,

Plaintiffs,

-against-

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM, New York,
and AMERICOR, INC.,

Defendants.

--------------------------------------------------------------------------x
S I R S :

PLEASE TAKE NOTICE that, upon the submitted Declaration of Adam I.

Kleinberg, Esq., attorney for Donald B. Smith, the exhibits annexed thereto; the County

defendants' joint Rule 56.1 statement of undisputed material facts; the accompanying

Memorandum of Law; and upon all other papers and proceedings heretofore had herein,

defendants Joseph A. Vasaturo, Louis G. LaPolla and the County of Putnam, through their

attorneys, will move this Court before Hon. Charles L. Brieant, United States District Judge, at

the United States Courthouse, 300 Quarropas Street, White Plains, New York, on the 13th of June

, 2008, at10:00 in the forenoon, or as soon thereafter as counsel can be heard for an order

pursuant to Fed. R. Civ. P. Rule 56 (b), for summary judgment

dismissing all claims and for such other and further relief as this Court may deem just and

proper.

Dated: Hawthorne, New York
       May 6, 2008

                                        Yours, etc.,

                              SANTANGELO RANDAZZO & MANGONE LLP

                              By: _____
                              James A. Randazzo (0156)
                              Attorneys for Defendants- JOSEPH A.
                              VASATURO, individually, LOUIS G.
                              LAPOLLA, individually, THE COUNTY
                              OF PUTNAM, New York
                              151 Broadway
                              Hawthorne, New York 10532
                              (914) 741-2929


TO:    LOVETT & GOULD, LLP
       Attorneys for Plaintiff
       222 Bloomingdale Road
       White Plains, New York 10605
       (914) 428-8401

       MIRANDA, SOKOLOFF, SAMBURSKY, SLONE & VERVENIOTIS, LLP
       Attorneys for Defendant- Donald B. Smith
       240 Mineola Boulevard
       The Esposito Building
       Mineola, New York 11501
       (516) 741-7676

       WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
       Attorney for Defendant- Americor, Inc.
       3 Gannett Drive
       White Plains, New York 10604
       (914) 323-7000

## CERTIFICATE OF SERVICE

I, JAMES A. RANDAZZO, hereby certify that on May 7, 2008, I served the within defendants Vasaturo, LaPolla and the County of Putnam's motion for summary judgement and memorandum of law upon all parties, via Electronic Case Filing, the address as provided to defendant by notification from this Court:

LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorney for Defendant- Americor, Inc.
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

MIRANDA SOKOLOFF SAMBURSKY
SLONE VERVENIOTIS LLP
Attorneys for Defendant-Donald B. Smith
240 Mineola Boulevard
The Esposito Building
Mineola, New York 11501
(516) 741-7676

James A. Randazzo (JR-0156)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DONNY A. SINKOV, as Administrator of the Estate of
Spencer E. Sinkov, deceased, DONNY A. SINKOV, and
HARA SINKOV,

                            Plaintiffs,

      -against-

                                               07 Civ. 2866  (CLB)

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM, New York,
and AMERICOR, INC.,

                            Defendants.

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VASATURO, LAPOLLA AND COUNTY OF PUTNAM'S MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

SANTANGELO RANDAZZO & MANGONE LLP

        Attorneys for Defendants-Joseph A.
        Vasaturo, Louis G. LaPolla and the County
        of Putnam
        151 Broadway
        Hawthorne, New York 10532
        (914) 741-2929

By: James A. Randazzo, Esq. (0156)

## TABLE OF AUTHORITIES

**PAGE**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Batista v. Rodriguez, 702 F. 2d 393, 397 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Baylis v. Marriott Corp., 848 F.2d 658 (2d Cir. 1988)(" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 10,15

Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

Brown v Harris, 240 F.3d 383, 390-391 (4th Cir. 2001), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) . . . . . . . 20

City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24, 85 L. Ed 2d 791, 105 S. Ct. 2427 (1985) . . 20

City of Yonkers v. Otis Elevator Co., 844 F. 2d 42, 45 (2nd Cir. 1988) . . . . . . . . . . . . . . . . . . . . 9

Clements v. Nassau County, 835 F. 2d 1000, 1005 (2nd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 9

Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.

2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cuocco v. Mositsugu, 222 F. 3d 99, 106 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). . . . . 11,13,18

First Nat'L Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288 (1988) . . . . . . . . . . . . . . . . . . . . 9

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001) . . . . . . . . . . . . . 16

Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kelsey v. City of New York, 2006 U.S. Dist. LEXIS 91977 (E.D.N.Y., December 18, 2006) . . 13

Liebe v. Norton, 157 F.3d 574 (8th Cir. 1998), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mandell v County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 15

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986) . 9

Moffitt v. Town of Brookfield, 950 F. 2d 880, 885 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 12

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . 19

Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Novack v. County of Wood, 226 F. 3d 525 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 12,18,20

Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191 (2d Cir. 1996 . . . . . . . . . . . 21

Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986 . 19

Rellergert by Rellergert v. Cape Girardeau County, Mo, 924 F.2d 794, 797-98 (8th Cir. 1991)13,17

Rhyne v. Henderson County, 973 F. 3d 386 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . 13,15,18,21

Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). . . . . . . . . . . . . 16

SEC v. Research Automation Corp., 525 F. 2d 31, 33 (2nd Cir. 1978) . . . . . . . . . . . . . . . . . . . 10

Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 21

Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,16

Wright v. Smith, 21 F. 3d 496, 501 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ying Jing Gan v. New York, 996 F. 2d 522 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

- •     The PCCF's Suicide Prevention Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- •     Sinkov's Admission into the PCCF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- •     Spencer Sinkov's Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
- •     The Commission's Investigation of Sinkov's Death . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## POINT I

**NEITHER JOSEPH VASATURO NOR LOUIS LAPOLLA WERE
DELIBERATELY INDIFFERENT TO THE MEDICAL NEEDS
OF SPENCER SINKOV; THUS PLAINTIFFS' FEDERAL
CONSTITUTIONAL CLAIMS MUST BE DISMISSED**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## POINT II

**JOSEPH VASTAURO AND LOUIS LAPOLLA ARE
ENTITLED TO QUALIFIED IMMUNITY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

- •     Joseph Vasaturo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
- •     Louis Lapolla . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## POINT III

**PLAINTIFFS HAVE FAILED TO ESTABLISH THE EXISTENCE
OF AN OFFICIALLY ADOPTED POLICY OR CUSTOM THAT
CAUSED INJURY AND A CAUSAL CONNECTION BETWEEN
THAT POLICY OR CUSTOM AND THE DEPRIVATION OF SINKOV'S
CONSTITUTIONAL RIGHTS; THUS, ALL CLAIMS AGAINST
THE COUNTY OF PUTNAM MUST BE DISMISSED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**POINT IV**

**THE COURT SHOULD DECLINE TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER THE STATE
LAW CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## PRELIMINARY STATEMENT

The instant action arises out of the suicide of twenty-one year old Spencer Sinkov while he was in custody at the Putnam County Correctional Facility. Plaintiffs have brought this federal action alleging violations of the Fourteenth Amendment of the United States Constitution as well as related state law claims of negligence and wrongful death. As discussed below, plaintiffs' federal claims require a showing of deliberate indifference. Defendants contend that their conduct did not rise to the level of deliberate indifference and as such, all such claims should be dismissed.

## STATEMENT OF FACTS

On May 19, 2006, after a month long investigation by the Putnam County Sheriff's Department's Narcotics Enforcement Unit, 21-year old Spencer Sinkov ("Sinkov") was arrested for selling heroin (Exh. N). Sinkov was charged with five separate counts of Criminal Sale of a Controlled Substance in the Third Degree and five separate counts of Criminal Possession of a Controlled Substance in the Third Degree (Exhibits N, W).

After Mr. Sinkov was arraigned before a local justice, he was transported to the Putnam County Correctional Facility (hereinafter referred to as "PCCF") where he was received into the booking area at approximately 12:30 a.m. on May 20, 2006 (V: 121, 122).[1]

## THE PCCF'S SUICIDE PREVENTION POLICY

Pursuant to County policy, during the intake process, the PCCF booking officer was required to administer a series of questions to an inmate, make a series of observations, and

---

[1] Number in parenthesis preceded by the letter "V" refer to the page number of the deposition transcript of Joseph Vasaturo; those by the letter "L" to that of Louis LaPolla; those by the letter "S" to that of Donald Smith; those by the letter "O" to that of Michael Oliver; those by the letter "W" to that of Robert Wendover, which are included as Exhibits F, G, E, U and V, respectively.

1

complete related paperwork including medical intake and suicide prevention screening forms (V: 93, 142-43). The PCCF suicide screening form contained a series of 16 questions and observations (some with subparts) and related columns for "Yes," "No," and "Comments/observations" (Exh. H). The boxes in the "Yes" column for 6 of the questions on the PCCF suicide screening form are shaded areas (Exh. H). Affirmative answers to the "shaded area" questions are indicators that an inmate is a high risk candidate to attempt suicide (L: 9, 39). The completed intake packet, including the medical and suicide screening forms, would then be provided to the jail nurses who are employed by defendant Americor, an entity that contracts with the County for the provision of medical services at the PCCF (V:90-91; S:96-98). The Americor staff would review the inmate intake packet and would communicate with the correction staff if they felt that a heightened level of supervision of the inmate was warranted (V: 92).

The PCCF has three levels of supervision of inmates (S: 23). Specifically, these are: i) general supervision, which requires an officer check of an inmate every 30 minutes; ii) active supervision, which requires an officer check of an inmate every 15 minutes; and iii) constant supervision, which requires one on one supervision of the inmate at all times (S: 23-24; V: 56-57).

The lower section of the PCCF suicide screening form provides the following directive to the booking officer:

> If total in Column A is 8 or more, or any shaded box is checked, or if the screening officer feels it necessary, notify shift supervisor.

(Exh. H).

2

As part of their training, corrections officers receive a policy book, commonly referred to as the "Red Book" (V: 60-61). Article 15 of the Red Book is entitled "Mental Health Evaluation & Service", and Section 15-2 (A) (3) of the Red Book provides, in relevant part, a booking officer must:

Immediately notify the tour supervisor whenever a prisoner:

> a.  Scores in the high risk (score of 8 in Column A) or immediate referral categories on the Suicide Prevention Screening form: . . .

(Exh. I at p.15.2; V: 72-74, 76; L: 30-31).

Consistent with this policy, a booking officer must notify a tour supervisor when an inmate scores an eight or higher on the suicide screening form or where there is an affirmative answer in an immediate referral category which are the shaded box areas on the suicide screening form (V:72-74, 76, 157, 160; L: 31-32, 37-38).

Prior to October or November of 2007, Sheriff Smith believed that the PCCF suicide screening form was a replica of the Commission's ADM 330 form (S: 13-14). The PCCF suicide screening form was part of a single intake packet that included medical intake forms (S: 13; V: 64-65).

The lower section of the Commission's ADM 330 form, entitled "Action" directs a screening officer as follows: "If total checks in Column A are 8 or more, or any shaded box is checked, of if you feel it is necessary, notify supervisor and institute constant watch" (Exh. O).

**SINKOV'S ADMISSION INTO THE PCCF**

Sergeant Louis LaPolla ("LaPolla"), a 12 year member of the department, was the tour supervisor on duty when Sinkov arrived at the PCCF (V: 43, 44; L: 5). Correction Officer Joseph Vasaturo ("Vasaturo"), a 5½ year member of the department, was working as the

3

booking officer, an assignment which he had worked twice a week for the prior four years
(V:122). Sinkov was patted down by Correction Officer Matias and placed into a holding cell
(V:122; L:54). While in the holding cell, Sinkov laughed and joked around with the correction
officers and Americor Nurse Peter Clark came to speak with and examine Mr. Sinkov (V:123,
124).

Because there were at least three other prisoners being received into the facility at the
same time as Sinkov, Sergeant LaPolla initially started going through the medical forms with
Sinkov, obtaining his pedigree information (V: 184; L:54; Exh. P). While in LaPolla's
presence, Sinkov was polite, said "thank you" after being told he would be able to make a phone
call and even laughed at a joke (L: 54). Vasaturo took over for the Sergeant and completed the
screening process, including administering the PCCF Suicide Prevention Screening Form (V:
128, 133-134). None of the members of the Sheriff's Department who had been involved in the
investigation and arrest of Sinkov saw any indication that he posed a risk of suicide, nor did
Sergeant LaPolla during his interaction with Sinkov (L: 78-80).

Although Sinkov admitted that he had taken heroin in the past, he denied having any
problems with withdrawal (L: 58). In fact, when Sergeant LaPolla asked Sinkov if he would be
okay, the inmate responded "yes" (L:58). Sinkov looked fine and did not appear to be
withdrawing (L: 61), nor did he appear to have any kind of suicidal intentions (L:79).

While Vasaturo completed the intake forms, Sinkov joked around with Vasaturo and said
that he was the "healthiest junkie you'll ever meet" and that he spent "hours" on his long hair
(V:137). Spencer Sinkov asked for food and was given some bagels or rolls with juice (V: 137).
Sinkov also told one of the arresting officers that "being a drug dealer is like being a bartender"

4

(V:164), and told Vasaturo that he had something to look forward to because he was in a band and was going to college (V:132, 168).

Sinkov scored a 10 in Column A of the Suicide Prevention Screening Form (Exh. P). During the screening process, Vasaturo made a written mistake on the Suicide Prevention Screening Form, initially writing "yes" for answers to questions 13, 14, and 15, when the responses should have been "no" (V: 146, 147). Vasaturo immediately corrected the form (V:146, 147; Exh.P). Then Vasaturo testified at his deposition that based upon his interaction with Sinkov, the answers to questions 8, 11, 16a and 16b should also have been "no", something Vasaturo discussed with the Commission of Correction during their subsequent investigation (V:151-155; 163-167). In short, while Vasaturo made mistakes on the form, he did not believe that Sinkov was a danger to himself (V:130-132, 147-149).

Officer Vasaturo decided to place Sinkov on a fifteen minute watch and to assign him to the North Housing Unit (V:130, 172-173). When asked why he didn't institute a constant watch, Vasaturo testified that "from speaking with him, his demeanor, his attitude, the way he was answering, I know it's a little late to say now, I didn't feel like he was going to hurt himself" (V:174). Indeed, none of the other correction officers working that night believed that Sinkov was a threat to himself (V: 153, 154).

Correction Officer Vasaturo notified Sergeant LaPolla by radio of his decision to place Sinkov on a 15-minute watch and of his cell assignment (V:128, 129; L: 34), and LaPolla thought that Vasaturo was simply erring on the side of caution due to Sinkov's past drug use (L:53,54, 71-75). At the time, Sergeant Lapolla had not seen the Suicide Prevention Screening Form (V:159) nor did Vasaturo ever advise   the Sergeant of the results (V:172-176,230; L: 70-71).

5

After being placed in his cell, fifteen minute checks were made of Sinkov throughout the night, without incident (V: 206, 220; L: 62).

## SPENCER SINKOV'S SUICIDE

Officer Michael Oliver reported for a 7:30 a.m. shift on May 20, 2006 (O: 77). Sergeant LaPolla, who was leaving the facility, gave a standard briefing indicating that Spencer Sinkov was on a fifteen minute watch (O: 77-78). After Officer Oliver began his shift, he recalled serving Sinkov breakfast (O: 87-88). Sinkov took the tray of food, which consisted of a bagel and yogurt, and ate some of it (O: 87-88).

At approximately 10:49 a.m., Sinkov's parents and brother came to visit him (O: 107). Officer Oliver advised Sinkov that he had a fifteen minute initial visit and that he should get dressed (O: 89, 90). Sinkov inquired whether he had to go to the visit (O: 89, 90). Officer Oliver responded that he did not have to go but that he would not be entitled to any other visits until he was classified, which could take a couple days (O: 90). Upon being advised of same, Sinkov agreed to go for the visit and was escorted out of his cell by Officer Oliver who then turned him over to Correction Officer Wendover (W:48).

Correction Officer Wendover recalled picking up Sinkov in the North Housing Unit and that he seemed fine (W:49-51). Wendover was present in the visiting room when Sinkov met with his mother, father and brother and could hear some of the conversation (W:52). As he stood there, Wendover overheard the family talking about hiring an attorney and Spencer Sinkov indicated that Legal Aid would take care of him (W: 55). The correction officer also overheard the father advising Spencer to cooperate with the police and give up the names and information that they needed (W: 55). Wendover observed Sinkov and his younger brother laughing and joking and recalled one parent admonishing that this was not a joke (W: 55, 56). Spencer's

6

father asked Spencer whether he was withdrawing and his son replied that he "had done drugs last night" but was "not too bad right now" (W: 56). At no time did Spencer's family claim to anyone that Spencer had seemed suicidal or had expressed that intent.

After the visit, Wendover brought Sinkov down to the area of the medical department where Officer Oliver met them outside the nurses' station (W: 59-60). Initially, Americor nurse Susan Waters thought that Sinkov was a female because of his long hair and she was expecting to see somebody from the female housing unit and she made a comment, "is this the girl?" (O: 94-96). Sinkov laughed and smiled at the remark (O:95). Officer Oliver also joked with Sinkov that he looked like the lead singer from Megadeath, a hard rock band (O: 96-97). Sinkov replied that he used to listen to the band when he was in high school (O: 97). Wendover advised Oliver that the visit with the family went okay and Sinkov was returned to his cell (O: 97).

Officer Oliver continued to make his fifteen minute checks and spoke to Sinkov again at lunch time when he gave him a tray with hamburgers (O: 97-98). Sinkov said "thank you" and Oliver recalled that he ate the tops of the buns (O: 98). Sinkov seemed normal and was lying down on his bed most of the time (O: 99).

Throughout the early afternoon, Officer Oliver did not observe anything unusual as Sinkov was lying in his bed (O: 99). At about 1:42 p.m., a group came into the housing unit for a bible study program (O: 112-114). Oliver assisted the group in setting up in a nearby room (O: 112-114). Then, during his check at 1:49 p.m., Officer Oliver observed Sinkov hanging by his sweatshirt from the bars of his cell (O: 123). The officer immediately radioed for assistance and Correction Officer Blanchard and Sergeant Jackson responded (O: 123). Blanchard obtained a pair of scissors which Officer Oliver used to cut Sinkov down (O: 123-124). Attempts to revive him were unsuccessful.

7

**THE COMMISSION'S INVESTIGATION OF SINKOV'S DEATH**

Following Sinkov's death, and as normal protocol, the State Commission of Correction conducted an investigation of the suicide (S: 111-112; Exh. N).

While there is a distinction between the Commission's Suicide Prevention Screening form and the one which was in use at the PCCF as to the institution of a constant watch, Sheriff Smith believes that the action to be taken was the same  (S: 42).  Regardless, the Commission's report failed to identify any problems with the language set forth on the PCCF form (Exh. N).  In fact, within the Commission's findings, it wrote: "Officer J.V. administered the ADM 330 Suicide Screening Guidelines" (Exh. N at p. 3, ¶7).

 The Commission found that defendant Vasaturo's failure to institute constant supervision of Sinkov based upon the results of the suicide screening form was a failure to follow PCCF policy (Exh. N at pp. 3-4) and made two recommendations to Sheriff Smith:  i) Vasaturo should be disciplined for his failure to adhere to PCCF policies regarding high risk inmates; and ii) LaPolla should be disciplined for his failure to review Sinkov's intake forms after learning of the institution of a fifteen minute watch (Exh. N at pp. 5-6).

8

## ARGUMENT

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(d). A material fact is genuinely disputed, only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.,* 844 F. 2d 42, 45 (2nd Cir. 1988).

As the moving party here, defendant bears the initial burden of informing the court of the basis for their motion and identifying the matter they believe demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Upon movants' satisfying this burden, the onus then shifts to the nonmoving party (here plaintiff) to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250. The plaintiff, however, "must do more than simply show that there is some metaphysical doubt as to the material facts", *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986), "but must set forth specific facts showing that there is a genuine issue of fact for trial". *First Nat'L Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253, 288 (1988). While summary judgment is less likely to occur when a defendant's state of mind is at issue, *Clements v. Nassau County,* 835 F. 2d 1000, 1005 (2nd Cir. 1987), in order to raise a fact issue regarding state of mind, however, there must be solid circumstantial evidence to prove the plaintiff's case. Id.

9

Finally, the nonmoving party, here, the plaintiff, may not defeat a motion for summary judgment by relying "simply on conclusory statements or contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. New York*, 996 F. 2d 522 (2nd Cir. 1993); *SEC v. Research Automation Corp.*, 525 F. 2d 31, 33 (2nd Cir. 1978).

## POINT I

### NEITHER JOSEPH VASATURO NOR LOUIS LAPOLLA WERE DELIBERATELY INDIFFERENT TO THE MEDICAL NEEDS OF SPENCER SINKOV; THUS PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS MUST BE DISMISSED.

It is well settled that an arrestee has the right to care and protection, including protection from suicide. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005)("[P]retrial detainees like [plaintiff] plainly have a Fourteenth Amendment due process right 'to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide'")(quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994).  In the pretrial detainee suicide context, the relevant inquiry is whether defendants were deliberately indifferent to the medical need of the detainee to be protected from himself. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); see also, Cuocco v. Mositsugu, 222 F. 3d 99, 106 (2d Cir. 2000) (noting that standards from Eighth Amendment context apply to claims brought by pretrial detainees under the Fourteenth Amendment).

The deliberate indifference standard embodies both an objective and a subjective prong. First, the deprivation must be, in objective terms, 'sufficiently serious,' [and] second, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63,

66 (2d Cir. 1994) (applying the standard under the Eighth Amendment to prisoner plaintiff) (citations omitted). For the first prong, a sufficiently serious medical need "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). To meet the second prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005). The subjective element of deliberate indifference "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835.

Indeed, not only does deliberate indifference describe a mental state more blameworthy than negligence, it is the equivalent of criminal recklessness, Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) *quoting* Farmer v. Brennan, 511 U.S. 825, 835; Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003)( "Negligence is not deliberate indifference"), and involves unnecessary and wanton infliction of pain, or other conduct that shocks the conscience. Hathaway v. Coughlin, 99 F.3d 550, 553 (2nd Cir. 1996). Ordinarily, a prison official does not violate the Eighth Amendment (or the Fourteenth Amendment) when he should have been aware of a risk that harm would befall an inmate but was not actually subjectively aware of that risk. See Farmer, 511 U.S. at 838.

Further, since defendants are sued in their individual capacities, the liability of each depends on a showing that he acted with deliberate indifference. See Wright v. Smith, 21 F. 3d 496, 501 (2nd Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §

11

1983.'" (quoting Moffitt v. Town of Brookfield, 950 F. 2d 880, 885 (2nd Cir. 1991)); see also

Brock v. Wright, 315 F. 3d at 164 (stating that plaintiff must show deliberate indifference on the

part of a "particular defendant").

When measured against these touchstone principles, it is clear that summary judgment

should be granted in defendants' favor on plaintiffs' 42 U.S.C. §1983 claims because no jury

could reasonably find that Joseph Vasaturo or Louis LaPolla acted with deliberate indifference to

the safety needs of the decedent.

Based upon his observations and answers given by Spencer Sinkov on the suicide

prevention screening form, Officer Vasaturo determined to place Sinkov in a cell where he was

checked every fifteen minutes. During the intake process, Sinkov had joked around with Officer

Vasaturo, claiming that he was the "healthiest junkie you'll ever meet" (V: 137); he had told

Vasaturo that he had something to look forward to because he was in a band and was going to

college (V: 132, 168); and although Sinkov had used heroin in the past, he denied having a

problem with withdrawal (L: 58, 61). In short, despite the reported score on the screening form,

the correction officer did not feel like Sinkov was going to hurt himself (V:174). While Officer

Vasaturo admittedly made a mistake on the screening form and failed to notify his supervisor of

the screening results, same certainly does not amount to deliberate indifference.

Indeed, the purported failure of Vasaturo to follow PCCF procedures would amount to

nothing more than common law negligence. Novack v. County of Wood, 226 F. 3d 525 (7th Cir.

2000). It is not as though Vasaturo took no action. The fifteen minute checks reflect concern for

Sinkov and considering that he did not subjectively believe that Sinkov posed any risk of danger

to himself and most certainly did not draw an inference that a substantial risk of serious harm

existed, as a matter of law Vasaturo did not act with the requisite deliberate indifference. c.f., Farmer , 511 U.S. at 837; Rhyne v. Henderson County, 973 F. 3d 386 (5th Cir. 1992).

With respect to Sergeant LaPolla, he was simply unaware that Sinkov posed any threat to commit suicide. In fact, his interaction with the prisoner revealed quite the opposite. Further, it is undisputed that he never saw the suicide screening form and Vasaturo never advised him of the results. At most, LaPolla failed to review the form during the night or to inquire further after being advised that Sinkov was being placed in a cell different then what the Sergeant initially directed. However, these mere omissions certainly do not rise to the high level of deliberate indifference. To be sure, the evidence has failed to indicate any awareness by LaPolla of facts from which the inference could be drawn that a substantial risk of suicide existed or that LaPolla had drawn that inference. It is insufficient to merely establish that a defendant should have known of the risk. Farmer, 511 U.S. at 837.

In Kelsey v. City of New York, 2006 U.S. Dist. LEXIS 91977 (E.D.N.Y., December 18, 2006), the Court stated "[W]here officers take affirmative and deliberate steps to protect inmates from suicide, other circuits have generally found deliberate indifference lacking, even in the face of potentially negligent actions by the officers and/or a failure to comply with standard policies or procedures.

In Rellergert by Rellergert v. Cape Girardeau County, Mo, 924 F.2d 794, 797-98 (8th Cir. 1991), an officer had let an inmate out of his sight with a bed sheet, notwithstanding the fact that the inmate was on suicide watch, and despite these facts, the Eighth Circuit affirmed the district court's judgment notwithstanding the verdict, noting that while "the jury might reasonably conclude that [the defendant officer] acted imprudently, wrongly, or negligently," the evidence could not support a finding of deliberate indifference as a matter of law.

13

In <u>Brown v Harris</u>, 240 F.3d 383, 390-391 (4th Cir. 2001), the Court held that even where an officer is aware of the substantial risk of serious harm, he or she may avoid liability "if he responded reasonably to the risk of which he knew." The Fourth Circuit noted that the defendant officer had responded to the decedent's medical needs-volatility from drug withdrawal and a suicide risk of some kind-by placing him under "medical watch," which involved constant video surveillance. Although it was noted that the officer failed to place the inmate in a paper gown, as was the ordinary custom with suicidal detainees, the court stated that the officer's failure to take certain precautions do not create a jury issue as to deliberate indifference "if his actions were nonetheless reasonable in response to the risk of which he actually knew." The officer "simply took less action than he could have, and by his own admission, should have ... at most [the defendant officer's] failure to take additional precautions was negligent, and not deliberately indifferent, because by placing [the decedent] on constant video surveillance, he simply did not 'disregard [ ] an excessive risk to [decedent's] health or safety.' " Accordingly, the Fourth Circuit concluded that there was no basis for a reasonable finder of fact to conclude that the defendant officer acted with deliberate indifference.

In <u>Liebe v. Norton</u>, 157 F.3d 574 (8th Cir. 1998), the Eighth Circuit held that prison officials did not demonstrate deliberate indifference and were entitled to qualified immunity where a detainee classified as a suicide risk was able to hang himself on a metal-framed electrical conduit in a temporary holding cell. In affirming the district court's decision to grant summary judgment for the defendants, the Eighth Circuit recognized the high burden imposed by the deliberate indifference standard and emphasized that the court must closely examine the actions taken by the officials to prevent suicide, even if other steps were omitted.

14

In <u>Rhyne v. Henderson County</u>, supra, the Fifth Circuit held that, as a matter of law, a jury could not find deliberate indifference where officials checked suicidal inmates only every ten minutes. The Fifth Circuit noted that, although under the facts of the case, periodic checks may have been in fact inadequate and could form the basis of a sound negligence claim, the periodic checks reflected concern, rather than apathy for inmate safety, and no evidence indicated that frequent periodic checks were obviously inadequate.

In <u>Belcher v. Oliver</u>, 898 F.2d 32, 36 (4th Cir. 1990), an officers' failure to follow the instruction of the police chief to remove shoelaces and belts from prisoners resulted in a prisoner's suicide. In reversing the district court's denial of summary judgment, the Fourth Circuit noted that "a failure to carry out established procedures, without more, does not constitute 'deliberate disregard for the possibility' that [the prisoner] 'would take his own life.' "

In sum, there is no evidence of a deliberate disregard for the possibility that Spencer Sinkov would commit suicide. Accordingly, the federal claims should be dismissed.

## POINT II

### JOSEPH VASATURO AND LOUIS LAPOLLA ARE ENTITLED TO QUALIFIED IMMUNITY.[2]

It is well settled that an officer may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." <u>Mandell v County of Suffolk</u>, 316 F.3d 368, 385 (2d Cir. 2003) "The availability of the defense [of

---

[2] While the court's individual rules normally require the issue of qualified immunity to be resolved at the outset, after plaintiff's limited deposition, in this particular case, plaintiffs had no direct knowledge of what occurred inside the correctional facility. As such, and since all depositions have been completed , the defense is being raised in the context of this motion, on a full record.

qualified immunity] depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." Weyant v. Okst, 101 F.3d 845, 858 (2d Cir. 1996).

Thus, when a qualified immunity defense is raised, a court must conduct a two-fold inquiry. First, the court must ascertain whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right[.]" Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, even if a constitutional right has been violated, the court should still find qualified immunity exists " 'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that this action did not violate such law.' " Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)).

Under the second part of the qualified immunity test, "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.' "Anderson v. Recore, 317 F.3d at 197 (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998),   Moreover, the right must be clearly established "in light of the specific context of the case." Saucier v. Katz, 533 U.S. at 201.

As noted earlier, the Second Circuit has found that pretrial detainees have the right to medical treatment for serious medical needs under the Fourteenth Amendment, which would clearly include treatment to prevent suicide. Thus, a pretrial detainee's right to be free from deliberate indifference by corrections officers to suicide, while in custody, is a clearly established right. However, defendants are still shielded by qualified immunity because it was

objectively reasonable for them to believe that their conduct was not deliberately indifferent to Spencer Sinkov's needs. McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004)("[T]o establish their qualified immunity defense, the defendants must show that it was 'objectively reasonable' for them to believe that they had not acted with the requisite deliberate indifference.")

The key decision being challenged is the failure to place Spencer Sinkov on a constant watch. Against the backdrop of the deliberate indifference standard, that decision cannot be viewed as objectively unreasonable in light of the other evidence in the case. See Rellergert, 924 F.2d at 797("While we conclude that the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be.")

**JOSEPH VASATURO**

After completing the intake process, Correction Officer Vasaturo took substantial steps to ensure Spencer Sinkov's safety by placing him on a fifteen minute watch. Under the circumstances herein, the decision not to place him under constant supervision should not deprive the defendant of qualified immunity. This type of judgment call in an extremely difficult situation is exactly the type of decision, within the bounds of objectively reasonable conduct under the deliberate indifference standard, which should be protected under the doctrine of qualified immunity.

Indeed, while the crux of plaintiff's claim is that since Sinkov's score on the suicide screening form was higher than eight and thus he should have been placed on a constant watch, because that is what is set forth on the Commission of Correction form, it is undisputed that Vasaturo was not even aware of the requirement because the form that was in use at the PCCF did not require such. Absent knowledge of such a requirement, Vasaturo's failure to place

17

Sinkov on a constant watch based upon his score on the screening form does not violate the

Fourteenth Amendment. <u>Farmer,</u> 511 U.S. at 844.


Moreover, Vasaturo's failure to advise his supervisor of the screening results

constitutes nothing more then a violation of procedure which also does not rise to the level of a

federal constitutional violation such that a reasonable defendant would have understood that this

conduct was unlawful. c.f. <u>Novack v. County of Wood</u>, supra.

To be sure, to the extent that plaintiff's claim of deliberate indifference is premised upon

the fact that Sinkov should have been placed on a constant watch because of his score or

responses on the suicide prevention screening form, suffice to say that neither the Supreme Court

or the Second Circuit has ever determined that a failure to do so under similar circumstances is

tantamount to deliberate indifference. Absent same, it cannot be seriously argued that the law

was clearly established that the failure to take such a measure constitutes deliberate indifference.

To the contrary, the Fifth Circuit has held that to check on suicidal inmates every ten minutes

does not rise to the level of deliberate indifference. <u>Rhyne v. Henderson County.</u>, supra.

Minimally, it was objectively reasonable for Vasaturo to believe that his decision did not

violate clearly established law.

**LOUIS LAPOLLA**

As set forth at Point I, the conduct of Sergeant LaPolla does not even arguably rise to the

level of a constitutional violation. He was unaware that Sinkov posed any threat of suicide and

as a result, could not have been deliberately indifferent to Sinkov's medical needs. It is not

enough to establish that LaPolla should have been aware of the risk of harm, <u>Farmer</u>, 511 U.S. at

837, and it is uncontradicted that he was not.

18

Accordingly, even if plaintiffs could establish that Spencer Sinkov's constitutional rights were violated, the defendants would be entitled to dismissal of the claims under the doctrine of qualified immunity.

### POINT III

**PLAINTIFFS HAVE FAILED TO ESTABLISH THE EXISTENCE
OF AN OFFICIALLY ADOPTED POLICY OR CUSTOM THAT
CAUSED INJURY AND A CAUSAL CONNECTION BETWEEN
THAT POLICY OR CUSTOM AND THE DEPRIVATION OF SINKOV'S
CONSTITUTIONAL RIGHTS; THUS, ALL CLAIMS AGAINST
THE COUNTY OF PUTNAM MUST BE DISMISSED.**

It is well established that a municipality may not be held liable under § 1983 for actions of its employees based on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish municipal liability for unconstitutional acts by its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom, policy or practice. Id. at 694, 98 S.Ct. 2018.

A plaintiff may satisfy the "a custom, policy or practice" requirement in one of four ways. He may establish the existence of: (1) a formal policy officially endorsed by the municipality. *Monell*, 436 U.S. at 690, 98 S.Ct. 2018; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials. *Monell*, 436 U.S. at 690, 98 S.Ct. 2018; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with

19

the municipal employees. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Additionally, a plaintiff must show a casual link between an official policy or custom and the plaintiff's injury in order for the court to find liability against the municipality. *Batista v. Rodriguez*, 702 F. 2d 393, 397 (2nd Cir. 1983).

Even if it were to be determined that Sinkov's suicide itself was a result of allegedly unconstitutional conduct, a single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24, 85 L. Ed 2d 791, 105 S. Ct. 2427 (1985). ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy").[3]

While the PCCF suicide prevention screening form differs from that of the Commission, this state law violation (if it is that) does not form the basis for imposing § 1983 liability. It is only when municipal policy fails to meet federal constitutional or statutory standards that § 1983 liability may be imposed. Tuttle, 471 U.S. at 816. Section 1983 provide no remedy for failure to meet the state law requirements. Novack v. County of Wood, 226 F. 3d at 531-32.

As set forth at length supra, and in the joint Rule 56.1 statement, there were policies in place which should have resulted in a constant watch being implemented. In fact, plaintiffs themselves have alleged that the suicide was the result of the individual defendants failing to follow the established policies and procedures (complaint, ¶ 22, 23), which is also what the

---

[3] While plaintiffs reference the suicide of Norberto Rivera at PCCF in 2003, it cannot be seriously argued that that incident put PCCF on notice that its policies and practices posed a substantial risk to the safety of PCCF inmates. None of the procedures found to be inadequate by the State Commission of Correction after that investigation were responsible for Sinkov's failure to be placed on a constant watch (Exh. A, ¶ 14, Exh. K).

Commission of Correction found (Exh. N). Thus, plaintiff cannot now be heard to complain that the policies themselves are what caused the constitutional violation.

Even if a jury could conclude that Putnam County's policy did not involve continuous observation of suicidal inmates, there is no evidence that such a policy was deliberately indifferent. Rhyne . Henderson County, supra. Put another way, a reasonable juror could not find that Putnam County adopted policies creating an obvious risk that a pre-trial detainees' constitutional rights would be violated.

**POINT IV**

**THE COURT SHOULD DECLINE TO
EXERCISE SUPPLEMENTAL
JURISDICTION OVER THE STATE LAW
CLAIMS.**

If this Court grants summary judgment and dismisses plaintiffs' federal claims, the only remaining claim is plaintiffs' negligence claim arising under state law. Under 28 U.S.C. §1367(c)(3), this Court must consider whether it should continue to exercise jurisdiction over the remaining state claim. In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness and comity. *See* Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191 (2d Cir. 1996) Although a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Baylis v. Marriott Corp., 848 F.2d 658 (2d Cir. 1988)("When all bases for federal jurisdiction

21

have been eliminated from a case so that only pendent state claims remain, the federal court

should ordinarily dismiss the state claims.")

In the instant case, the Court should exercise its discretion and decline jurisdiction over

the remaining state claims.

## Conclusion

Based upon the foregoing, it is respectfully requested that this Court grant defendants'

motion for summary judgment and dismiss the complaint.

Dated: Hawthorne, New York
        May 5, 2008

SANTANGELO, RANDAZZO & MANGONE LLP

By: JAMES A. RANDAZZO (JAR-0156)
Attorney for Defendants: Louis G. LaPolla,
Joseph A. Vasaturo and County of Putnam
151 Broadway
Hawthorne, NY 10532
(914) 741-2929

TO:    LOVETT & GOULD, LLP
       Attorneys for Plaintiffs
       222 Bloomingdale Road
       White Plains, NY 10605
       (914) 428-8401

       MIRANDA SOKOLOFF SAMBURSKY SLONE & VERVENIOTIS, LLP
       Attorneys for Defendant-Donald B. Smith
       240 Mineola Blvd.
       Mineola, NY 11501
       (516) 741-7676

       WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
       Attorneys for Defendant-Americor Inc.
       3 Gannett Drive
       White Plains, NY 10604
       (914) 323-7000

22