# EXHIBIT K

NEW YORK STATE COMMISSION OF CORRECTION

---

In the Matter of the Death                :

of Norberto Rivera, an inmate of :
the Putnam County Jail                     :

---

FINAL REPORT OF THE
NEW YORK STATE COMMISSION
OF CORRECTION

TO:    Sheriff Donald B. Smith
       Putnam County Sheriff's Office
       Three County Center
       Carmel, New York 10512

EXHIBIT

P 1 f

14

FINAL REPORT OF NORBERTO RIVERA                    PAGE 2

GREETINGS:

> WHEREAS, the Medical Review Board has reported to the NYS Commission of Correction pursuant to Correction Law, section 47(1)(d), regarding the death of Norberto Rivera who died on November 15, 2003 while an inmate in the custody of the Putnam County Sheriff's Office, the Commission has determined that the following final report be issued.

FINDINGS:

1.  Inmate Norberto Rivera was a 41 year old male who died from an apparent suicidal hanging on 11/15/03 while incarcerated at the Putnam County Jail. He had been incarcerated since 11/10/03 when arrested on Robbery 1st charges.

2.  Rivera was born on 3/18/58 in Puerto Rico and lived most of his life in the Bronx, New York area. His immediate family included his parents and a wife. Little else is known of Rivera's social history.

3.  Rivera's criminal history began in 1980 with an arrest for Criminal Possession of a Controlled Substance 3rd. Rivera had a long history of drug related offenses which accumulated to twelve misdemeanor and felony arrests, seven jail terms and one term in state prison. In the instant offense, he was arrested on Robbery 1st charges after committing a home invasion break in.

4.  ████████████████████████████████████████
    ████████████████████████████████████████
    ███████████████

5.  On 11/10/03, Rivera was committed to the Putnam County Jail. His suicide screening form showed a score of six with affirmative answers for having a history of drug abuse, depression and currently being under the influence. Given the period of abstinence prior to jail admission and the signs of withdrawal at jail admission, the Board found that Mr. Rivera was not under the influence of heroin upon admission to jail. A risk assessment and medical screening were completed. He appeared to be entering withdrawal. He was placed on a fifteen minute watch and had a referral made out to mental health by the shift sergeant.

6.  Upon his admission, Rivera was assessed by medical staff. ████████



    ██████████████████████ His medical assessment revealed he was in active withdrawal from heroin. He was placed on a detox program which included Librium 50 mg q8h for seven days and Reglan 10 mg for

FINAL REPORT OF NORBERTO RIVERA                                    PAGE 3

associated nausea.  A Clonidine patch was added to control his blood pressure.

7.   Rivera was seen by medical staff at minimum every eight hours for medication administration and monitoring.  On 11/13/03, it was noted that Rivera had a sharp increase in his blood pressure.  Per the jail physician, Rivera was given an additional dose (20 mg) of Librium as it was suspected his hypertension was related to increased anxiety.  No other significant medical events occurred with Rivera until the terminal event.

8.   ████████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████████████  According to medical staff, this was observed to be a regular and reoccurring policy of the psychiatrist, i.e., to not see patients who were intoxicated or in withdrawal.  This was a deliberate refusal to provide services and represents inadequate mental health care. ████████████████████  The Commission investigation revealed this to be untrue.  (See Finding #9.)  Dr. P.S. stated to Commission investigators that he could not recall who on the medical staff made such a statement to him.

9.   Rivera was housed in the north housing unit in cell 11.  He remained on a 15 minute watch his entire course of incarceration.  Based upon a review of records and interviews of medical and security staff, no changes in behavior or unusual incidents were noted between the time of admission up to the date of the terminal event.  Rivera's demeanor and behavior gave no indication that he was in a violent or agitated state.

10.  On 11/15/03, Rivera began the day with normal facility routine.  He ate his breakfast meal at approximately 7:30 a.m. and was seen by the nurse at approximately 9:30 a.m.

11.  At approximately 10:45 a.m., Rivera began banging on his cell wall.  During his 11:00 a.m. round, the housing unit officer witnessed Rivera still banging on his cell wall.  He informed Rivera that if he didn't quit banging on the walls, his bedding would be removed.  Rivera complied but kept asking the officer when he was going to get his "psychiatric meds."  The officer said he would check with the nurse and get back with him.

12.  After completing the 11:00 a.m. round, the housing area officer heard Rivera banging on his cell walls again.  He contacted his supervisor and advised her that he was going to remove Rivera's bedding items due to his disruptive behavior.  The sergeant arrived in the area at approximately 11:17 a.m. and approved the measure.  At 11:25 a.m., two officers entered Rivera's cell and removed his

bedding.   Rivera was compliant and did not offer any resistance.
A disciplinary report was then filed by the housing unit officer.

13.   Upon entering Rivera's cell, the housing area officer discovered
Rivera had broken the glass light fixture. Another officer entered
his cell and replaced the light fixture and bulb.   Rivera was
instructed to lock back in his cell which he compliantly did. At
approximately 11:35 a.m., lunch was served on the unit. Inmate was
let out of his cell to obtain his meal and then was re-secured in
his cell.

14.   The housing area officer recorded making his next rounds at 11:45
a.m., 12:00 p.m., 12:15 p.m., 12:30 p.m., 12:45 p.m., 1:00 p.m.,
1:30 p.m. and 1:45 p.m.   On his 1:45 p.m. round, he stated he
recalled seeing inmate Rivera standing over his sink area. At the
completion of the 1:45 p.m. round, the housing area officer stated
he returned to his desk to make a log book entry. He then entered
the recreation yard which door is adjacent to the desk post. From
there, he stated he met with the sergeant who needed to speak with
an inmate on the other side of the North Housing area. He stated
he escorted the sergeant to the inmate's cell and then returned to
walking the housing area.

15.   At approximately 1:55 p.m., the housing area officer discovered
inmate Rivera in a kneeling position with his sweatshirt tied off
around his neck and affixed to the front cell bars. He called for
immediate assistance and the sergeant and three other officers
immediately responded. One officer opened the door control panel
while two officers tried to enter Rivera's cell.  The officer had
difficulty entering the cell due to the fact that Rivera had tied
of to both parts of the cell slider door.

16.   The two officers got the cell door open enough to enter and began
to untie Rivera.  Once untied, they laid him down on the cell bunk
and began CPR.  The sergeant brought a response kit with an oxygen
respirator and the facility nurse also responded.  The nurse took
over CPR along with another officer.  CPR was continued until the
arrival of EMS units.

17.   At approximately 2:03 p.m., a paramedic unit arrived on the scene.
The paramedic switched the oxygen delivery from a simple face mask
to a bag value resuscitator and attached Rivera up to a cardiac
monitor.  The cardiac monitor showed asystole in three different
leads.   The paramedic contacted medical control at the Putnam
Hospital Center and requested an order to cease resuscitation.
After conferring with the medical control doctor, the paramedic was
given the order to cease the resuscitation and Rivera was pronounced
dead at 2:20 p.m.

18.   Part II of the inmate death notification (form M1-87) received at
the Commission contained a statement from Dr. P.S., the
psychiatrist, stating he could not see Rivera due to his being

FINAL REPORT OF NORBERTO RIVERA                    PAGE 5

"violent and agitated and withdrawing from heroin." The psychiatrist could not substantiate the information in his written statement. He could not confirm who had informed him that Rivera's behavior was violent and he himself had not seen him. In contrast, Rivera was seen regularly by medical and nursing staff without any record of violent conduct or agitation observed. Dr. P.S. also wrote in Part II of the M1-87 that he asked if Rivera could be seen the following week and was told yes. The psychiatrist could not substantiate who informed him of this other than "it was one of the nurses." Dr. P.S.'s documented reasons for not evaluating Rivera are without justification and, as cited in Finding #8, constituted a deliberate refusal to provide services and represents inadequate mental health evaluation and treatment.

19. The North Housing area is a 16 cell linear housing unit that has one officer assigned to it. The officer maintains a post right outside the block door. In addition to supervising the housing unit, the officer also has responsibilities to supervise a program area down the hall, movement into the adjacent recreation yard and a separate 4 cell housing unit approximately 100 feet away. The additional duties added to this post prevent an officer from being able to maintain active supervision adequately and should be reviewed as part of an updated staffing analysis.

RECOMMENDATIONS:

TO THE SHERIFF OF PUTNAM COUNTY:

1. The Sheriff should question the housing area officer for the North Housing area for the accuracy of his documented times he completed rounds. Policy should be in place to have officers document the actual time they complete rounds and not rounded off to the nearest half or quarter hour.

2. Re-evaluate available first aid equipment for emergency medical response situations. If oxygen and respirator equipment is available, training should be provided to assure proper usage and deployment with a non-breathing person.

3. The Sheriff should request an updated staffing analysis be completed with particular attention to the North Housing area post and its adjacent responsibilities.

TO THE PRESIDENT OF AMERICOR, INC.:

A peer review inquiry of the responding nurse on 11/15/03 should be conducted in regards to the use of a simple oxygen face mask delivery device on a non-breathing patient. Additional training on CPR and resuscitation should be provided if found to be necessary.

TO THE DIRECTOR OF PUTNAM FAMILY SERVICES:

1. Dr. P.S., the psychiatrist who provides services to the Putnam County Jail, should be disciplined for filing false information on

Part II of the Inmate Death Notification form (M1-87), an official instrument of the State Commission of Correction, regarding why he did not evaluate Rivera.

2.   Dr. P.S., the psychiatrist, should be disciplined for instituting a policy to not evaluate any newly admitted inmate who may be detoxing.   Each case should be evaluated individually as such blanket policies fall below the community standard of care and represent inadequate care.

TO THE NYS DEPARTMENT OF HEALTH, OFFICE OF PROFESSIONAL MEDICAL CONDUCT:

Conduct an inquiry into the conduct of Dr. P.S., a psychiatrist employed by Putnam Family Services, who falsely documented information on a patient who he never saw.

*Note: In a letter to the Medical Review Board dated October 29, 2004, Sheriff Donald Smith made a wholly satisfactory response to the findings and recommendations made to the Office of the Sheriff, including affirmatively addressing the staffing issues in this case and appropriate administrative action concerning the documentation of security checks.   In addition, the Sheriff has taken the initiative to open a dialogue on the quality and availability of mental health services at the Putnam County Jail.*

*In letters to the Medical Review Board dated October 21, 2004, Michael Piazza, the Putnam County Commissioner of Mental Health, Social Services and Youth Bureau, and Edythe S. Schwartz, Executive Director of Putnam Family and Community Services, both defended the actions of Dr. P.S. in failing to see Norberto Rivera while falsely claiming that Rivera was agitated, violent and withdrawing from opiates.  Both suggested there was no basis for complaint against Dr. P.S. even though the investigation of this case clearly showed that Mr. Rivera was not agitated or violent when Dr. P.S. was asked to see him and no one on the medical or security staff informed Dr. P.S. that Mr. Rivera was agitated or violent.   The fact that Mr. Rivera was withdrawing from opiates was irrelevant to Dr. P.S.'s refusal to see and assess him.  Executive Director Schwartz went on to suggest that Dr. P.S. could have been prevailed upon to see this patient if in effect someone else had assessed him in advance, something the nursing staff who referred him indeed did. Commissioner Piazza went on to incorrectly state that there are no standards for forensic mental health services, no guidelines and no funding.   Apart from being wrong on all accounts, the Board found the attitude evinced by such statements to be dismissive of Mental Hygiene Law, public policy and biomedical ethics, serving only to heighten the concerns of the Commission and Board in this case, which categorically rejected both responses.*

**FINAL REPORT OF NORBERTO RIVERA**                                    **PAGE 7**

WITNESS, HONORABLE FREDERICK C. LAMY, Commissioner, NYS Commission of Correction, 80 Wolf Road, 4th Floor, in the City of Albany, New York 12205 this 11th day of January, 2005.

Frederick C. Lamy
Commissioner

FCL:mj
03-M-212
9/04

cc:  Commissioner Michael J. Piazza, Putnam County
     Departments of Mental Health, Social Services
     and Youth Bureau
     Edythe Schwartz, Executive Director, Putnam
     Family and Community Services
   — Kevin Duffy, President & CEO, Americor, Inc.
     Richard Miraglia, Bureau of Forensic
     Services, NYS Office of Mental Health

# EXHIBIT L



P-1

PLAINTIFF'S
EXHIBIT NO. 10
FOR IDENTIFICATION
DATE: 1-30-08    RPTR: 15

## PUTNAM COUNTY SHERIFF'S DEPARTMENT
### INTER-OFFICE MEMORANDUM

**Date:** September 28, 2004

**TO:**       Captain Robert LeFever

**FROM:**    Undersheriff Peter H. Convery

**SUBJECT:**  New York State Commission of Corrections Recommendations
Norberto Rivera -- 11/15/03

Reference is made to the above subject; please prepare a written response to the following statements by Tuesday, October 5, 2004.

1. The Sheriff should review policy and procedure for performing suicide prevention screening. Policy should be in place to recognize that the screening tool is only valid for up to 72 hours and not on any inmate who is under the influence of alcohol or drugs. Procedures should be developed to re-screen any inmate who at the time of admission was under the influence as part of regular classification and risk assessment.

2. The Sheriff should question the housing area officer for the North Housing area for the accuracy of his documented times he completed rounds. Policy should be in place to have officers document the actual time they complete rounds and not rounded off to the nearest half or quarter hour. The reason for his absence from his assigned post when he entered the recreation yard should be determined and evaluated.

3. Re-evaluate available first aid equipment for emergency medical response situations. If oxygen and respirator equipment is available, training should be provided to assure proper usage and deployment with a non-breathing person.

4. The Sheriff should request an updated staffing analysis be completed with particular attention to the North Housing area post and its adjacent responsibilities.

# EXHIBIT M



PLAINTIFF'S
EXHIBIT NO. 39
FOR IDENTIFICATION
DATE: 1.30.08    RPTR: DR
PENGAD 800-631-6989

P-1

### PUTNAM COUNTY SHERIFF'S DEPARTMENT

### INTER - OFFICE MEMORANDUM

Date: October 4, 2004
memos

TO:        Sheriff Donald Smith
           ATT: Undersheriff Peter Convey

FROM:      Captain Robert Le Fever

SUBJECT:   NEW YORK STATE COMMISSION OF CORRECTION
           RECOMMENDATIONS NORBERTO RIVERA DEATH
           NOVEMBER 15, 2003

In response to your memorandum regarding the above subject, based on the information in your memorandum the following is provided;

1.   The polices and procedures in place are consistent with the training for suicide prevention. The training teaches that a suicide prevention screening is only good for 72 hours and should re-screen persons under the influence of alcohol or drugs.

     Inmate Rivera was referred to the medical unit for medical and mental health evaluation. The medical staff then referred inmate Rivera to the mental health provider, Doctor Sadler. Once this was done there was no basis for a Correction Officer to re-screen an inmate who was referred to the psychiatrist. At this point the care of the inmate was in the hands of Dr. Sadler, the mental health provider's psychiatrist.

2.   The Correction Officer on duty during the incident was counseled regarding his "rounding" of the times of his security checks. A review of his logbook entries other dates showed that he entered the "actual" time her conducted checks. As part of the training in August the recording of the actual time the security check was conducted into the logbook was covered.

3.   Correction Officers are Certified First Responder trained, which includes the administering of oxygen. There would be no additional training that would be appropriate. A review of the oxygen units in the Facility found the number to be sufficient and their placement strategically located throughout

the Facility. The training of the medical personnel would be at the discretion of the medical provider.

4. The Sheriff has already obtained a new Correction Officer position for the post of Program Officer. This was requested for the 2004 budget and most recently the position filled. Recently the process had begun to assign this post. Additionally, it was discussed with Mr. Keith Zobel, COC, Field Evaluator, that 2005 would be used for data gathering for a detail and concise staffing analysis.

Recommend that no response be sent to the Commission without meeting on this matter.

CC:    Lt P. O'Malley
       Sgt. K. Jackson

# EXHIBIT N

NEW YORK STATE COMMISSION OF CORRECTION

```
-----------------------------------
In the Matter of the Death       :      FINAL REPORT OF THE
                                 :      NEW YORK STATE COMMISSION
of Spencer Sinkov, an inmate of  :      OF CORRECTION
the Putnam CJ                    :
                                 :
-----------------------------------
```

TO:   Sheriff Donald B. Smith
      Putnam County Sheriff's Office
      Three County Center
      Carmel, NY 10512

EXHIBIT
P1 F

FINAL REPORT OF SPENCER SINKOV                    PAGE 2

GREETINGS:

WHEREAS, the Medical Review Board has reported to the NYS Commission of Correction pursuant to Correction Law, section 47(1)(d), regarding the death of Spencer Sinkov who died on May 20, 2006 while an inmate in the custody of the Putnam County Sheriff's Office, the Commission has determined that the following final report be issued.

FINDINGS:

1.    Spencer Sinkov was a 21 year old male who died on 5/20/06 from a suicidal hanging while incarcerated at the Putnam County Jail. Sinkov was discovered hanging by his shirt affixed to cell bars by an officer at approximately 1:49 p.m.  Sinkov's death could have been prevented had proper suicide prevention precautions been taken and had department policy and procedures been properly followed.

2.    Spencer Sinkov was reportedly born on 4/22/85 in Peekskill, NY.  He lived with his parents and his younger brother in Putnam County. Sinkov graduated from high school in 2003 and went on to study music in college.  Sinkov was an accomplished musician and played bass guitar in a local band.  In addition, he had recently completed an associates degree at Westchester Community College and was looking to complete his bachelors.

3.    Sinkov had a recent history of heroin use.  He reportedly was using heroin daily by injecting.  Sinkov had also begun to deal heroin and other drugs as a way of supporting his habit.  Sinkov had no prior criminal record.  In the instant offense, he was charged with five counts of Criminal Possession of a Controlled Substance 3rd and five counts of Criminal Sale of a Controlled Substance 3rd after a month long investigation by the Putnam County Sheriff's Narcotics Enforcement Unit.

4.    There was no significant medical history for Sinkov other than taking Lunesta for sleep.  He had no chronic conditions and was not under any physician's care.  There was no reported mental health history for Sinkov.

5.    On 5/19/06, Spencer Sinkov was arrested by members of the Putnam County Sheriff's Department's Narcotics Enforcement Unit.  Sinkov was charged with five of both Criminal Possession of a Controlled Substance and Criminal Sale of a Controlled Substance.  Bail was set at $50,00 or $100,000 bond.  It was his first criminal arrest as an adult.

FINAL REPORT OF SPENCER SINKOV                    PAGE 3

6.   At approximately 12:30 a.m. on 5/20/06, Spencer Sinkov was received
     into the Putnam County Jail booking area. Officer J.V. was assigned
     to booking and processed Sinkov into the jail. Officer J.V.
     proceeded through the booking and medical screening questions.
     Sinkov reported current heroin use stating his last use was 24 hours
     earlier.

7.   Officer J.V. administered the ADM 330 Suicide Screening Guidelines.
     Sinkov scored a 10 with affirmative answers to:

     #3 Detainee has experienced significant loss in last six months:
     reported his mother has cancer

     #4 Detainee is very worried about major problems other than legal:
     stated he was worried about his mother and girlfriend

     #5 Detainee's family member or significant other attempted or
     committed suicide: answered that both his brother and girlfriend had
     attempted in the past

     #6 Detainee has a history of drug or alcohol abuse: affirmative for
     current heroin addiction

     #7 Detainee has history of counseling or mental health treatment:

     #8 Detainee expresses extreme embarrassment, shame, or feeling of
     humiliation due to charge:

     #11 Detainee is expressing feeling of hopelessness:

     #12 Detainee's first incarceration in jail lockup: This was Sinkov's
     first detention

     #16a Detainee is apparently under the influence of alcohol or drugs:
     answered yes as to his reported use of heroin 24 hours earlier

     #16b Detainee is showing signs of withdrawal or mental illness:
     answered yes stating Sinkov was "very laid back"

8.   Officer J.V. placed Sinkov on a 15 minute supervisory check instead
     of constant supervision. The shift supervisor was not informed of
     Sinkov's suicide screening score. Officer J.V. failed to initiate
     constant supervision on an identified high risk inmate.
     Additionally, Officer J.V. failed to follow Putnam County Jail's
     policy and procedures which state:

FINAL REPORT OF SPENCER SINKOV                          PAGE 4

*15-2 Admissions/Screening Policy*
*3.  Immediately notify the tour supervisor whenever a prisoner (a)*
*scores in the high risk (score of 8 in column A) or immediate*
*referral categories on the Suicide Prevention Screening Form.*

*(e) Appears to be significantly under the influence of alcohol or*
*drugs.*

*4.  All such notifications will be completed by forwarding a copy*
*of the prisoner's screening form to the tour supervisor prior to*
*cell assignment.*

*6.  Assign appropriate housing based upon the results of completed*
*form ADM #330 and other classification determination*

9.    At the jail, Sinkov was under the care of Americor, Inc., a business
      corporation holding itself out as a medical care provider. Business
      corporations are not permitted by law to engage in the practice of
      medicine in New York. Sinkov was evaluated by jail RN P.C. A brief
      clinical encounter note was written in the chart stating "*Received*
      *in booking. A & O (alert and oriented). Normal gait non tremulous.*
      *Good spirits. States feels fine. Last used heroin 24 hrs. ago.*
      *Will monitor.*" The RN's assessment of Sinkov is inadequate. There
      were no recorded vital signs, no documented physical exam and no
      documented history. Although Sinkov was not displaying active signs
      and symptoms of withdrawal at the time of admission, his reported
      history of recent heroin use warranted more detailed attention than
      was provided. Additionally the physical exam is not in comportment
      with the intentions of 9 NYCRR §7010.1(b), Health Services Policy:

      *Prompt screening is essential to identify serious or life-*
      *threatening medical conditions requiring immediate evaluation and*
      *treatment. Appropriate medical appraisal of inmates is necessary*
      *to reduce the risk that a serious physical deficiency or medical*
      *emergency will be obscured by drug or alcohol ingestion.*

10.   Shift Supervisor, Sgt. L.L., ordered Officer J.V. to place Sinkov
      in cell #29 once booking was completed. Officer J.V. placed Sinkov
      in cell 007 of the North Housing Unit to conduct the 15 minute
      supervisory watch. Sgt. L.L. was advised by radio that Sinkov was
      placed on a 15 minute check but was not informed about the suicide
      screening results. Sgt. L.L. failed to properly supervise jail
      staff as he did not inquire about the reason for Sinkov's cell
      reassignment and why the 15 minute watch was instituted.

11.   Sinkov was checked every 15 minutes through the rest of the shift
      and was observed sleeping. Shift change occurred at 7:30 a.m. and
      Officer M.O. assumed supervision of the North Housing Unit. Sinkov

FINAL REPORT OF SPENCER SINKOV                    PAGE 5

remained on the 15 supervisory hecks.   Sinkov was documented as sleeping throughout the morning.

12.   At approximately 10:50 a.m., Sinkov received a visit from his parents at the jail.  Sinkov visited for approximately 15 minutes and discussed with his parents about hiring an attorney.  Sinkov's father asked if he had used drugs and was withdrawing.  Sinkov was overheard saying he was withdrawing but was not experiencing ill effects.  Sinkov's visit ended at approximately 11:05 a.m. and he was returned to his cell.

13.   Sinkov was fed lunch at approximately 11:30 a.m. and then had his meal tray collected at 12:09 p.m.  Officer M.O. documented doing rounds in the North Housing Unit at 1:13 p.m., 1:25 p.m. and 1:39 p.m.

14.   At 1:49 p.m., Officer M.O. found inmate Sinkov hanging from the cell bars by his sweatshirt.  Sinkov had tied the shirt at the top of the front cell bars and sat down.  He was found facing the back of the cell with one foot on the floor and one foot on the bunk.  Officer M.O. called for immediate assistance.  Officer K.B. from the South Housing Unit arrived next and retrieved a pair of scissors to help cut Sinkov down.  Sgt. K.J., RN S. W. and Officers R.B. and R.W. arrived next.  Officer M.O. entered the day space and cut the shirt away from Sinkov.  Sinkov had to be cut down first as the ligature would block the cell from opening.  Once cut down, Sinkov fell to the floor.

15.   RN S.W. entered the cell and checked Sinkov for vitals.  He had no pulse or respirations and CPR was begun.  Officer R.B. assisted RN S.W. with CPR by administering oxygen.  Officer R.W. had left to retrieve a bag valve resuscitator from the officer's post, however, when he returned the RN stated she wouldn't need it as they had terminated CPR efforts.

16.   At approximately 2:00 p.m., a paramedic from Alamo Ambulance arrived on the scene.  He found no pulse or respirations on Sinkov and no CPR was in progress.  A cardiac monitor was attached and showed asystole in all three cardiac leads.  A determination was made not to continue resuscitation efforts at approximately 2:07 p.m.  The Putnam County Coroner arrived and pronounced Sinkov dead at 3:01 p.m.

RECOMMENDATIONS:

TO THE SHERIFF OF PUTNAM COUNTY:

1.   The booking officer who administered the suicide screening guidelines to Sinkov on 5/20/06 should be disciplined for failing to following the Putnam County Jail's policy and procedures for admissions and screening whereby he:

FINAL REPORT OF SPENCER SINKOV                    PAGE 6

  –     failed to notify the shift supervisor of a high suicide risk
        inmate
  –     failed to initiate constant supervision of a high risk inmate

2.    The shift supervisor assigned to the 11:30 p.m. to 7:30 a.m. tour
      should be disciplined for failing to properly supervise staff and
      failing to review Sinkov's medial/risk assessment after being
      informed Sinkov was being placed on a 15 minute supervisory watch
      as per department policy and procedure.


      TO THE PRESIDENT OF AMERICOR, INC.:

      The nurse who conducted the intake assessment for Sinkov on 5/20/06
      should be disciplined for failing to conduct a proper assessment
      including, but not limited to, recording of vital signs, physical
      exam findings, and pertinent medical history.  Additionally, all
      inmates should be given a medical assessment when sufficient medical
      staff is available to provide such.


      WITNESS, HONORABLE FREDERICK C. LAMY, Commissioner, NYS Commission
of Correction, 80 Wolf Road, 4th Floor, in the City of Albany, New York
12205 this 22nd day of December, 2006.


                                    _____
                                    Frederick C. Lamy
                                    Commissioner

FCL:mj
06-M-84
9/06

cc:  Kevin Duffy, President and CEO,
          Americor, Inc.

# EXHIBIT O

Form 330 ADM (CC) (4/01)

State of New York
COMMISSION OF CORRECTION
Office of Mental Health

# SUICIDE PREVENTION SCREENING GUIDELINES

| DETAINEE'S NAME | SEX | DATE OF BIRTH | MOST SERIOUS CHARGE(S) | DATE | TIME |
|---|---|---|---|---|---|
| NAME OF FACILITY | | NAME OF SCREENING OFFICER | | Detainee showed serious psychiatric problems during prior incarceration ,    YES ____    NO ____ | |

*Check appropriate column for each question*

| | Column A **YES** | Column B **NO** | General Comments/Observations All "YES" Responses Require Note to Document |
|---|---|---|---|
| **OBSERVATIONS OF ARRESTING/TRANSPORTING OFFICER** | | | |
| 1. Arresting or transporting officer believes that detainee may be a suicide risk. **If YES, notify supervisor.** | ▓▓ | | |
| **PERSONAL DATA** | No Family Friends | | |
| 2. Detainee lacks support of family or friends in the community. | | | |
| 3. Detainee has experienced a significant loss within the last six months (e.g., loss of job, loss of relationship, death of close family member). | | | |
| 4. Detainee is very worried about major problems other than legal situation (e.g., serious financial or family problems, a medical condition or fear of losing job). | | | |
| 5. Detainee's family member or significant other (spouse, parent, close friend, lover) has attempted or committed suicide. | | | |
| 6. Detainee has history of drug or alcohol abuse. (Note drug and when last used.) | | | |
| 7. Detainee has history of counseling or mental health evaluation/treatment. (Note current psychotropic medications and name of most recent treatment agency.) | | | |
| 8. Detainee expresses extreme embarrassment, shame, or feelings of humiliation as result of charge/incarceration (consider detainee's position in community and shocking nature of crime). **If YES, notify supervisor.** | ▓▓ | | |
| 9. Detainee is thinking about killing himself. **If YES, notify supervisor.** | ▓▓ | | |
| 10a. Detainee has previous suicide attempt. (Explore method and check for scars.) | ▓▓ | | |
| b. Attempt occurred within last month. **If YES, notify supervisor.** | ▓▓ | | |
| 11. Detainee is expressing feelings of hopelessness (nothing to look forward to). **If YES, notify supervisor.** | ▓▓ | | |
| 12. This is detainee's first incarceration in lockup/jail. | | | |
| **BEHAVIOR/APPEARANCE** | | | |
| 13. Detainee shows signs of depression (e.g., crying, emotional flatness). | | | |
| 14. Detainee appears overly anxious, panicked, afraid or angry. | | | |
| 15. Detainee is acting and/or talking in a strange manner (e.g., cannot focus attention; hearing or seeing things which are not there). | | | |
| 16a. Detainee is apparently under the influence of alcohol or drugs. | | | |
| b. If YES, is detainee incoherent, or showing signs of withdrawal or mental illness? **If YES to both a & b, notify supervisor.** | ▓▓ | | |

**TOTAL Column A** _____

Officer's Comments / Impressions

**ACTION**
If total checks in Column A are 8 or more, or any shaded box is checked, or if you feel it is necessary, notify supervisor and institute constant watch.

Supervisor Notified:           YES _____           NO _____

Constant Supervision Instituted:    YES _____    NO _____

| | EMERGENCY | NON-EMERGENCY |
|---|---|---|
| Detainee Referred to Medical/Mental Health: | If YES: | |
| YES _____    NO _____ | medical _____ | medical _____ |
| | mental health _____ | mental health _____ |

Signature and Badge Number of Screening Officer: _____

Medical/Mental Health Personnel Actions: (To be completed by medical/MH staff)

EXHIBIT
631-6989
F1F

Form 330 ADM (CC) (4/01) page 2

State of New York
COMMISSION OF CORRECTION
Office of Mental Health

# INSTRUCTIONS FOR COMPLETING
## SUICIDE PREVENTION SCREENING GUIDELINES – FORM 330 ADM

### GENERAL INFORMATION

It is recommended that the form be completed in triplicate for all detainees prior to cell assignment and be distributed as follows: top copy in detainee's file, second copy to medical or mental health personnel at referral, and the third copy for use according to facility's procedures.

| | |
|---|---|
| Comment Column: | All "YES" responses require note to document: |
| |     1. information about the detainee that officer feels is relevant and important; |
| |     2. information specifically requested in questions; |
| |     3. information regarding detainee's refusal or inability to answer questions. |
| Detainee's Name: | Enter detainee's first and last name and middle initial. |
| Sex: | Enter male (m) or female (f). |
| Date of Birth: | Enter month, day and year. |
| Most Serious Charge(s): | Enter the most serious charge or charges (no more than two [2]) from this arrest. |
| Date: | Enter month, day and year form was completed. |
| Time: | Enter the time of day the form was completed. |
| Name of Facility: | Enter name of jail or lock-up. |
| Name of Screening Officer: | Print name of officer completing form. |
| Psychiatric Problems During Prior Incarceration: | The screening officer should check facility files to determine if the inmate had attempted suicide or was referred for mental health services during prior incarceration. NOTE: Persons with a diagnosis of schizophrenia or major depression should be referred immediately to mental health as they are generally more at risk for suicide than persons with other psychiatric disorders. |

### INSTRUCTIONS FOR ITEMS 1–16

#### General Instructions

Check the appropriate YES or NO for items 1–16.

If information required to complete these questions is unknown to screening officer, such information should be obtained by asking detainee to answer questions. However, detainee has the right to refuse to answer.

If detainee refuses to answer questions 2–12, enter RTA (refused to answer) in the Comment Column next to each question. In addition, complete the YES or NO boxes only if information is known to you.

If during an otherwise cooperative interview, detainee refuses to answer one or two question: Check YES in the box(es) next to the unanswered question(s) and enter RTA in the comment box next to each unanswered question.

If detainee is unable to answer all questions 2–12, enter UTA (unable to answer) in the Comment Column next to each question. Also enter reason (e.g., not English speaking) for not answering these questions in the Comment Column next to Question 2. In addition, complete the YES or NO boxes only if information is known to you.

#### Observation of Transporting Officer

ITEM (1)    Check YES or NO based upon the written/verbal report of the arresting/transporting officer or upon the screening form completed by the arresting agency. If YES, notify supervisor.

NOTE: The following questions and observations should not be read word for word but restated in your own words.

#### Personal Data Questions

ITEM (2)    Family/friends: Check NO if someone other than a lawyer or bondsman would (1) be willing to post detainee's bail, (2) visit detainee while he/she is incarcerated, or (3) accept a collect call from detainee.

ITEM (3)    Significant loss: Ask all three components to this question—loss of job, loss of relationship and death of close friend or family member.

ITEM (4)    Worried about problems: Ask about such problems as financial, medical condition or fear of losing job. Check YES if detainee answers YES to any of these.

ITEM (5)    Family/significant other attempted suicide: Significant other is defined as someone who has an important emotional relationship with detainee.

ITEM (6)    Alcohol or drug history: Check YES if detainee has had prior treatment for alcohol/drug abuse or if prior arrests were alcohol/drug related.

ITEM (7)    History of counseling or mental health evaluation/treatment: Check YES if detainee (1) has ever had psychiatric hospitalization, (2) is currently on psychotropic medication, or (3) has been in outpatient psychotherapy during past six months. Note current psychotropic medication and name of most recent treatment agency.

ITEM (8)    Check YES if detainee expresses extreme shame as result of arrest or feels that arrest/detention will cause humiliation to self/significant others. If YES, notify supervisor.

ITEM (9)    Suicidal: Check YES if detainee makes suicidal statement or responds YES to direct question, "Are you thinking about killing yourself?" If YES, notify supervisor.

ITEM (10a&b)    Previous attempt: Check YES if detainee states he has attempted suicide. If YES or NO, explore method and note scars. Obtain as much information as possible re method and time of attempt. If YES to 10b, notify supervisor.

ITEM (11)    Hopeless: Check YES if detainee states feeling hopeless, that he has given up, that he feels helpless to make his life better. If YES, notify supervisor.

ITEM (12)    Criminal History: Ask detainee or check files to determine if this is detainee's first incarceration.

#### Behavior/Appearance Observations

YES or NO must always be checked for each of these items. They are observations made by the screening officer. They are not questions.

ITEM (13)    Depression: Indicators include behavior such as crying, emotional flatness, apathy, lethargy, extreme sadness, unusually slow reactions.

ITEM (14)    Overly anxious, afraid, panicked, or angry: Indicators include behavior such as handwringing, pacing, excessive fidgeting, profuse sweating, cursing, physical violence, etc.

ITEM (15)    Acting in strange manner: Check YES if you observe unusual behavior or speech such as hallucinations, severe mood swings, disorientation, withdrawal, etc. If detainee is hearing voices telling him to harm himself, make an immediate referral to mental health services.

ITEM (16a)    Under influence: Check YES if detainee is apparently intoxicated on drugs or alcohol.

ITEM (16b)    Incoherence, withdrawal, or mental illness: Means physical withdrawal from substance. If YES to both a & b, notify supervisor.

COMMENTS/IMPRESSIONS: Note any "gut" feelings or general impression re suicide risk.

### SCORING

Count all checks in Column A. Enter total. Notify supervisor if (1) total is 8 or more, (2) any shaded area is checked, (3) if you feel notification is appropriate.

### BOOKING OFFICER SIGNATURE AND BADGE NUMBER

Sign form and enter badge number.

### DISPOSITION

| | |
|---|---|
| Corrections Personnel: | Supervisor notified: check YES or NO. Notification should be made prior to cell assignment. |
| | Note if constant supervision instituted. |
| | Note emergency/non-emergency referral to medical and/or mental health personnel. |
| Medical/Mental Health Personnel: | Medical/mental health staff should note recommendations and actions taken. |

# EXHIBIT   P

SOJ 32 PAGE 7
rev 06/01
SECTION 4

**PUTNAM COUNTY CORRECTION FACILITY**
**SUICIDE PREVENTION SCREENING GUIDELINES**

| NAME | | | JAIL # | SEX | DOB | | DATE | | TIME |
|------|--|--|--------|-----|-----|--|------|--|------|
| MOST SERIOUS CHARGE | | Facility Origin Other Than PCCF | | | Detainee showed serious psychiatric problems during prior incarceration YES ____ NO ____ | | | | |

| | Column A YES | Column B NO | General Comments/observations All "YES" responses require written comment here |
|--|--------------|-------------|-----------------------------------------------------------------------------------|
| **OBSERVATIONS OF ARRESTING/TRANSPORTING OFFICER** 1. Arresting or transporting officer believes that detainee may be a suicide risk. If YES, notify shift supervisor. | | ✗ | |
| **PERSONAL DATA** 2. Detainee lacks support of family or friends in the community. | No Family Friends | ✗ | |
| 3. Detainee has experienced a significant loss within the last six months. (e.g., loss of job, loss of relationship, death of close family member) | ✗ | | mother has cancer |
| 4. Detainee is very worried about major problems other than legal situation. (e.g., serious financial or family problem, a medical condition or fear of losing job) | ✗ | | mother, worried about girlfriend |
| 5. Detainee's family member or significant other (spouse, parent, close friend, lover) has attempted to or has committed suicide. | ✗ | | Brother was successful Brother, girlfriend |
| 6. Detainee has history of drug or alcohol abuse. (Note drug and when last used.) | ✗ | | |
| 7. Detainee has history of counseling or mental health evaluation/treatment. (Note current psychotropic medications and name of most recent treatment agency) | ✗ | | |
| 8. Detainee expresses extreme embarrassment, shame, or feeling of humiliation as a result of current charge or this incarceration. ( consider detainee's position in the community and shocking nature of crime) | ✗ | | |
| 9. Detainee is thinking of killing himself/herself. If YES, notify Shift Supervisor immediately. | | ✗ | |
| 10a. Detainee has previous suicide attempt. (Explore method and check for scars.) b. Attempt occurred in the last month. | | ✗ | |
| 11. Detainee is expressing feelings of hopelessness (nothing to look forward to) | | ✗ | |
| 12. This detainee's first incarceration in lockup/jail. | | ✗ | |
| **BEHAVIOR/APPEARANCE** 13. Detainee shows signs of depression (e.g., crying, emotional flatness). | | ✗ | |
| 14. Detainee appears overly anxious, panicked, afraid or angry. | | ✗ | |
| 15. Detainee is acting and/or talking in a strange manner. e. g., cannot focus attention, hearing or seeing things which are not there) | | ✗ | |
| 16a. Detainee is apparently under the influence of alcohol or drugs. | ✗ | | 24 hours ago |
| b. If YES, is detainee incoherent, or showing signs of withdrawal or mental illness. If YES to BOTH 16a and 16b notify Shift Supervisor immediately. | ✗ | | very laid back |

**TOTAL of Column A**  ☆10☆

**ACTION TO BE TAKEN BY SCREENING OFFICER**
If total in Column A is 8 or more, or any shaded box is checked, or if the screening officer feels it necessary, notify shift supervisor.

Shift Supervisor notified YES _____ NO _____ Shift Supervisor _____ Shift Supervisor Signature _____

Mental health Supervision instituted: Routine _____ 15 Min. Supervisory Visit ✗ Constant _____

Mental Health referral: NO _____ YES _____, complete referral form. Emergency _____ Non-Emergency _____

Screening Officer Name _Venturo_ Screening Officer Signature _____

Inmate Signature _____ Date _05/09/06_

Officer's comments/Impressions:

Medical Staff and/or Mental Health Provider actions:

| CLASSIFICATION REVIEW |
|------------------------|
| OFFICER _____ |
| NURSE _____ |
| DATE _____ |

EXHIBIT
P1F

CELL 57

SOJ 32 page 1
rev 06/01

## PUTNAM COUNTY CORRECTION FACILITY
## INMATE MEDICAL INTAKE RECORD

**SECTION 1**

| DATE 05-2006 | TIME | NAME Sinkov, Spencer E | JAIL # 81506 | DOB 04-12-85 | Age 21 |
|---|---|---|---|---|---|

| Sex M | Height 6.01" | Weight 135 | Hair B/C | Eyes B/G | Mustache N | Beard N | Skin Lgh | Race White |
|---|---|---|---|---|---|---|---|---|

| FACILITY of origin PCCF | Marital Single | Language English | Ethnicity Non Hsp | Education C-01 | read/write Yes | Religion |
|---|---|---|---|---|---|---|

| Place of Birth Peekskill | Year entered U.S. CIT | Last Incarceration Ø | Soc. Sec. Num 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 |
|---|---|---|---|

| Commitment Charge CSCS 3rd | Home Address 31 Boswell Rd Putnam Valley 10579 914-512-7840 | Occupation N/A |
|---|---|---|

EMPLOYER - Address - Telephone Number - Immediate Supervisor

PERSONAL PHYSICIAN - Address - Telephone
Atdoo Ø

EMERGENCY NOTIFICATION - Relationship - Address - Telephone Number
Mother hara sinkov          845 538 365-4

INSURANCE COMPANY - Address - Telephone - Policy Number
Fathers

**SECTION 2**          **TUBERCULOSIS SCREENING AT INTAKE**
Ask the following questions , circling the response YES or NO in Column 1 or 2.

| | Column 1 | Column 2 | ReRead |
|---|---|---|---|
| Do you currently have a cough with: | | | |
| Fever? | N | Y | |
| Bloody sputum? | N | Y | |
| Night sweats? | N | Y | |
| Weight loss? | N | Y | |
| Cough for two weeks or more ? | N | Y | |
| Have you lived with or had close contact with anyone with TB? | N | Y | |
| Have you currently immigrated from Asia, Africa, Latin America or South America? | N | Y | |
| Have you ever had TB? | N | Y | |
| If yes; Did you take medication without interruption? | Y | N | |
| If yes; How long did you take medication? | Y | N | |
| Have you had a TB skin test on your arm? | N | N | |
| If yes; Was it positive? | N | N | |
| If yes; Did you take medication for TB prevention? | Y | N | |
| Have you been incarcerated in the past 5 years? | N | Y | |
| OFFICER: Does the inmate look sick? | N | Y | |

TOTAL  0

If there is three (3) or more answered in Column 2 the inmate SHALL BE kept in segregation until a medical
evaluation is completed. MEDICAL STAFF; a chest X-ray and medical consultation SHOULD BE obtained
as soon as possible. SHIFT SUPERVISOR; must sign when, 3 or more in Column 2: _____

CORRECTION OFFICER Ventura _____ DATE 05/16/06
                        PRINT              SIGN

MEDICAL STAFF, if 3 or more _____ DATE _____

CLASSIFICATION OFFICER _____ DATE _____
                        PRINT        SIGN

MEDICAL STAFF, review w/ classification _____ DATE _____

REREAD INITIALS
DATE 5/22/06



EXHIBIT

SOJ 32 PAGE 2
REV 06/01
SECTION 3

## PUTNAM COUNTY CORRECTION FACILITY
## MEDICAL SCREENING AT INTAKE

| NAME | JAIL # | SEX | DOB | DATE | TIME |
|---|---|---|---|---|---|
| | | | | | |

This inmate was previously incarcerated in the Putnam County Correction Facility.    YES _____    NO _____

| DO YOU CURRENTLY HAVE OR HAVE YOU HAD: | Column A YES | Column B NO | Answers given by inmate/ General Comments/Observations All "YES" responses require written comment here |
|---|---|---|---|
| A. IMMEDIATE MEDICAL PROBLEM | | ✗ | |
| B. EMERGENCY TREATMENT | | ✗ | |
| C. CURRENT MEDICATION | ✗ | | Lunesta |
| D. INJURIES OBSERVED | | ✗ | |
| 1. ASTHMA | | ✗ | |
| 2. BREATHING PROBLEMS | | ✗ | |
| 3.a. HEART TROUBLE | | ✗ | |
| b. HIGH BLOOD PRESSURE | | ✗ | |
| 4. DENTAL PROBLEMS/DENTURES | | ✗ | |
| 5. DIABETES | | ✗ | |
| 6. EPILEPSY/SEIZURES | | ✗ | |
| 7. HEPATITIS    A    B    C    D | | ✗ | |
| 8. LIVER OR KIDNEY DISEASE | | ✗ | |
| 9. STOMACH PROBLEMS/ULCERS | | ✗ | |
| 10. STD | | ✗ | |
| 11. left blank intentionally | | | |
| 12. PREGNANCY | | | |
| 13. ALLERGIES to food, meds, envir | | ✗ | |
| 14. ILLNESS | | ✗ | |
| 15. FRACTURES | | ✗ | |
| 16. SCARS/TATTOOS/AMP/TATTS | ✗ | | |
| 17. PHYSICAL DISABILITY | | ✗ | |
| 18.a. EAR OR EYE PROBLEM | | ✗ | |
| b. PRESCRIPTION LENSES | | | |
| 19. ALCOHOL/ ALCOHOLIC | ✗ | | Socially |
| 20. PRIOR MEDICAL TREATMENT | | | |
| 21. HOSPITAL  Where? When? What? | ✗ | | DeTox  PuTnm hosp.   6 months ago |
| 22. SURGERY  Where?  When?  What? | | | |
| 23. REHAB    What? When? | ✗ | | 6 monts  ago |
| 24. ILLEGAL DRUG USE | ✗ | | 24 hous  heroin |
| 25. SMOKE  What? How much? | ✗ | | Cigrs ① Pack day |

**ACTION TO BE TAKEN BY SCREENING OFFICER**
Immediate Medical Problem requires the notification of the Shift Supervisor.
If total of boxes checked is excessive, or if the screening officer feels it necessary, notify shift supervisor.

Shift Supervisor notified  YES _____  NO _____  Shift Supervisor Name _____  Shift Supervisor Signature _____

Medical Supervision instituted:   Routine ✗     15 Min. Supervisory Visit _____     Constant _____

Medical referral:  NO _____  YES _____, complete referral form.  Emergency _____    Non-Emergency _____

Screening Officer Name  VacuTcro        Screening Officer Signature _____

Inmate Signature _____     Date  03/20/06

CLASSIFICATION REVIEW
OFFICER _____
NURSE _____
DATE _____

# EXHIBIT Q





**PUTNAM COUNTY**
**OFFICE OF THE SHERIFF**
THREE COUNTY CENTER
CARMEL, NEW YORK 10512

DONALD B. SMITH
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000

PETER H. CONVERY
UNDERSHERIFF
(845) 225 - 1460

March 2, 2005

Mr. Alan Croce, Chairman
New York State Correction of Correction
80 Wolf Road, 4th Floor
Albany, New York 12205

Dear Chairman Croce,

I am writing to request an updated staffing analysis for the Putnam County Correctional Facility. The ability to effectively and efficiently supervise a correctional facility is paramount for any Sheriff, regardless of mandates or constitutional requirements. There are basic principles by which we operate by in the Putnam County Sheriff's Department: do the right thing in enforcing the laws (operating the correction facility in accordance with correction law and achieving all appropriate standards); do the right thing for the citizens of the county (operate the facility effectively and efficiently within the law); and do the right thing for the corrections staff (providing our correction officers and staff with the proper staffing, leadership, equipment, training, compensation, etc., to effectively operate the facility).

Since I took the oath of office there have been a multitude of changes in the operation of the correctional facility, striving to meet all appropriate standards while taking the organization to the next level. We believe that following improvements in medical care and positive steps in improving mental health services, that our facility should now have an updated staffing analysis. Additionally, we are in the planning stages of changes to the physical plant of the correctional facility. Your field supervisors have been most helpful in reviewing plans in identifying the future staffing needs based on the proposed designs.

In January we received the final report from the Medical Review Board regarding the suicide of an inmate in the Facility. The Board's report recommended a staffing analysis to address issues in a particular area of the Correctional Facility. Although this has already been addressed in part by the assignment of staff to a position supervising facility programs prior to the Board's investigation, an all encompassing analysis is necessary to achieve a holistic review of the Facility operations.    For all the above reasons, I hereby request a staffing analysis of the Putnam County Correctional Facility be conducted by the Commission of Correction.

In closing, I thank you, your fellow Commissioners, and your staff for all of your hard work in helping us make the Putnam County Correctional Facility achieve the highest possible standards while providing constitutional treatment to our inmates. Best wishes and thank you again for all of your help and support. Keep the faith.

Sincerely,

Donald B. Smith
Sheriff

DBS/rl/jm