# EXHIBIT R

# NEW YORK STATE
# COMMISSION OF CORRECTION



## October 2006

## Revised Staffing Analysis
## for
## Putnam County Jail
## in
## Carmel,  New York

### Daniel L. Stewart
*Chairman/Commissioner*

### Frederick C. Lamy
*Commissioner*

### Frances T. Sullivan
*Commissioner*

**NEW YORK STATE COMMISSION OF CORRECTION**
**ALBANY, NEW YORK**
**Primary Supervision**
**Putnam County Jail**
**Revised October 2006**

| TASK ANALYSIS | 7:30am - 3:30pm | 3:30pm-11:30pm | 11:30pm -7:30am | 8:00am-4:00pm | TOTAL |
|---|---|---|---|---|---|
| Chief Officer | | | | 1.00 | 1.00 |
| Assistant Chief Officer | | | | 2.00 | 2.00 |
| Tour Supervisor | 1.00 | 1.00 | 1.00 | | 3.00 |
| Unit Supervisor | See Narrative | | | | |
| Control Room | 2.00 | 2.00 | 1.00 | | 5.00 |
| Admission/Discharge | 1.00 | 1.00 | 1.00 | | 3.00 |
| Classification | | | | 1.00 | 1.00 |
| Records | See Narrative | | | | |
| General Housing | 4.00 | 4.00 | 3.00 | | 11.00 |
| Special Housing | See Narrative | | | | |
| Medical/Security | See Narrative | | | | |
| Laundry Services | See Narrative | | | | |
| Legal Services | See Narrative | | | | |
| Food Services | See Narrative | | | | |
| Religious Services | See Narrative | | | | |
| Mail/Packages | See Narrative | | | | |
| Discipline Program | See Narrative | | | | |
| Visitation | | | | 1.00 | 1.00 |
| Physical Exercise | | | | 1.00 | 1.00 |
| Inside Work Program | See Narrative | | | | |
| Outside Work | | | | 1.00 | 1.00 |
| Transportation | | | | 1.00 | 1.00 |
| Training | See Narrative | | | | |
| Library Services | See Narrative | | | | |
| Grievance Program | See Narrative | | | | |
| Commissary Program | See Narrative | | | | |
| Program Supervision | 1.00 | | | | 1.00 |
| Miscellaneous | 2.00 | 2.00 | 1.00 | | 5.00 |
| TOTALS | 11.00 | 10.00 | 7.00 | 8.00 | 36.00 |

| Position Analysis | 7:30am - 3:30pm | 3:30pm - 11:30pm | 11:30pm - 7:30am | 8:00am-4:00pm | Total |
|---|---|---|---|---|---|
| Chief Officer | | | | 1.00 | 1.00 |
| Assistant Chief Officer | | | | 2.00 | 2.00 |
| Tour Supervisor | 1.00 | 1.00 | 1.00 | | 3.00 |
| Unit Supervisor | | | | | |
| Task Supervision | 10.00 | 9.00 | 6.00 | 5.00 | 30.00 |
| TOTALS | 11.00 | 10.00 | 7.00 | 8.00 | 36.00 |

**Planning Base**

7 Day Coverage

| | |
|---|---|
| Regular Days Off | 104 |
| Holidays | 10 |
| Vacation Leave | 15 |
| Sick Leave | 12 |
| Personal Leave | 4 |
| Other Leave | 10 |
| Total Off Duty Days | 155 |
| Full Coverage Calc. | 210 |

| | | | Total |
|---|---|---|---|
| Full Coverage Factor:  365 divided by total number of working days (210) = | | | 1.74 |
| Five Day Coverage Factor: 210 Divided by 7 and multiplied by 5 = | | | 1.24 |
| Multiplier for no coverage factor positions = | | | 1.00 |
| Multiplier for Tour Supervisors = | | | 2.00 |

| Staffing Analysis | 7:30am - 3:30pm | 3:30pm - 11:30pm | 11:30pm - 7:30am | 8:00am-4:00pm | Total |
|---|---|---|---|---|---|
| Chief Officer | | | | 1.00 | 1.00 |
| Assistant Chief Officer | | | | 2.00 | 2.00 |
| Tour Supervisor | 1.74 | 1.74 | 1.74 | | 5.21 |
| Unit Supervisor | | | | | |
| Task Supervision | 16.88 | 15.64 | 10.43 | 5.97 | 42.96 |
| FT Equivalent Positions | 18.62 | 17.38 | 12.17 | 8.97 | |

**PUTNAM COUNTY JAIL**
**REVISED OCTOBER 2006**

A fundamental requirement in operating the jail is that it be staffed with a sufficient number of qualified employees to perform all duties and discharge all responsibilities. Jail salaries and fringe benefits should be comparable to those in other law enforcement and social service agencies in the community in order to attract and retain qualified employees.

## TASK ANALYSIS

### CHIEF OFFICER

**Rationale:**
The Jail Division should be headed by a single administrative officer appointed by and responsible only to the sheriff. This individual should have full authority and responsibility for the management of personnel, inmates and programs of the facility. The chain of command should extend directly from the head of the department to the head of the facility. All facility employees should be responsible to this individual.

**Justification:**
One (1) Chief Officer has been allocated for this category on the 8am-4pm tour.    No coverage factor has been provided for this position.

### ASSISTANT CHIEF OFFICER

**Rationale:**
The jail division is large enough to require additional administrative positions to assist the Chief Officer. The Assistant Chief's primary responsibility will be  providing direction and making decisions that pertain to the overall safety and security of the facility. Additional duties may include matters relating to personnel, staff assignments and scheduling, community and media liaison, and the coordination of civilian correctional staff. Additional responsibilities may include ensuring the effective operation of the inmate grievance and disciplinary programs, inmate educational programs, computer data and tracking systems, food service, staff training as well as any and all administrative assignments as directed by the Sheriff and/or Chief Administrative Officer.

**Justification:**
Two (2) staff positions have been allocated for the 8am-4pm tour . No coverage factor has been provided for these positions.

## TOUR SUPERVISOR

**Rationale:**
Each tour of duty should be directly supervised by an individual of appropriate rank who has a working knowledge of jail operations and acceptable correctional practices. At a minimum, safe operation of the facility requires that staff in command of the facility on any given tour hold rank commensurate with command authority and responsibility. **Consequently, staff below the rank of sergeant <u>cannot</u> serve as Tour Supervisor in the facility.**

**Justification:**
One (1) staff position has been allocated for the 7:30am-3:30pm, 3:30pm-11:30pm, and 11:30pm-7:30am tours.

## UNIT SUPERVISOR

**Rationale:**
In some facilities it is appropriate to have unit supervisors responsible for particular functions. Depending upon the size of a particular facility, these functions may include the overall supervision of individual areas that require the coordinated efforts of several line staff. Such areas may include: supervision of housing units, supervision of control areas, new admissions to units, inmate discharges from units, program services; and supervision of other specific functions that require the coordinated efforts of several line staff.

**Justification:**
Not Applicable.

## CONTROL ROOM

**Rationale:**
Every facility requires a control room that is staffed on a twenty-four-hour basis and serves as the nerve center of the jail's custodial operations. Depending upon the particular facility, the control room officer performs the following functions: maintains telephone and/or intercom communications with all areas of the jail; serves as a repository for all keys in the jail security area; monitors and controls inmate, personnel and public movement within the facility; maintains a jail log book; maintains a roster of inmates and of the custodial force on duty; coordinates transportation for court appearances, hospital visits, etc.

**Justification:**
Staffing allocations for this category are listed on the next page:

| POST LOCATION | 7:30am - 3:30pm | 3:30pm - 11:30pm | 11:30pm - 7:30am |
|---|---|---|---|
| Main Control Room | 1 | 1 | 1 |
| East/West Housing Control | 1 | 1 | 0 |
| TOTALS | 2 | 2 | 1 |

NOTE:     **The facility's Main Control Room has the ability to take over the systems and functions of the East/West Housing Control Room. Accordingly, in an emergency situation, the facility would be allowed to implement a short-term reassignment of the staff in the East/West Housing Control Room. Any such actions taken by the facility must be documented and such documentation must be made available to Commission staff upon request.**

## ADMISSION/DISCHARGE

**Rationale:**
The admission and discharge process is a necessary function of all correctional facilities. Depending on the size and physical structure of a given facility, provisions must be made for duties including, but not limited to the following: searching, fingerprinting, photography, personal hygiene and clothing issue, personal property, medical screening, and admissions phone calls. Also, coordinating inmate transportation in and out of the facility (e.g., court appearance, medical visit) originates at the intake/discharge area. All movement in and out of the jail is done through the admissions area. Staff will also be responsible for supervising inmates housed in the admissions area holding cells. Staff will also assist in the inmate classification program. When there are no inmates in the booking area and no ongoing related activity are occurring (in the booking area), the officers can be assigned to other duties within the correctional facility.

**Justification:**
Staff allocations for this position are as follows:

| POST LOCATION | 7am - 7pm | 7pm - 7am | 11pm-7am |
|---|---|---|---|
| Admissions/Discharge | 1 | 1 | 1 |
| TOTALS | 1 | 1 | 1 |

## CLASSIFICATION

**Rationale:**
Classification is essential for the effective management of inmate populations. Classification provides for a safe and secure correctional environment. The classification system provides a mechanism for inmate screening, assessment and classification review to identify the special needs and security and supervision requirements of inmates in order to determine appropriate housing assignments. Functions performed in this area include, but are not

limited to the following: initial classification assessment, assigning inmates to housing areas, when necessary performing re-classification duties, monitoring inmate movement to housing units, and providing input prior to the relocation of inmates.

**Justification:**
One (1) staff position has been allocated for the 8am-4pm tour. This is a five-day post.

## RECORDS

**Rationale:**
The facility must assign staff to oversee all inmate record files. Such responsibilities include, but are not limited to: establishment of new files upon admission, inclusion of new information, photocopying relevant files for inmate transports to court, medical visits, and transfer to other county correctional facilities and state facilities.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## GENERAL HOUSING

**Rationale:**
Active supervision must be maintained when prisoners are confined in facility areas but not secured in their individual housing units. The term "Active Supervision", is defined as the immediate availability of inmates to facility staff members responsible for the care and custody of such inmates, including the uninterrupted ability of staff members to communicate orally with and respond to each inmate unaided by any electronic or other artificial amplifying device. Active supervision is required whenever inmates are allowed to commingle for the purpose of prevention of incidents which commonly occur in local correctional facilities resulting from situations whereby the stronger inmates are able to exert control over the rest of the inmate population. General supervision visits are to be conducted at intervals not to exceed one-half hour when inmates are secured in their individual housing units. The task analysis provides for active supervision in each housing section during the hours that inmates should be allowed out of their individual cells and provide sufficient staff to ensure half-hour visits during the hours when they are locked in their individual cells (General Supervision).

<u>Justification</u>:
Staffing allocations for housing posts are depicted on the next page:

| HOUSING UNIT | 7am - 3pm | 3pm - 11pm | 11pm-7am |
|---|---|---|---|
| East Housing Unit | 1 | 1 | 1 |
| West Housing Unit | 1 | 1 | 1 |
| North 1 Housing Unit | 1 | 1 | .50 |
| South Housing Unit | 1 | 1 | .50 |
| TOTALS | 4 | 4 | 3 |

## SPECIAL HOUSING

<u>Rationale</u>:
The chief administrative officer or the facility physician may determine that additional supervision is required for inmates whose condition, illness or injury requires such supervision. Such additional supervision may include: constant supervision, more frequent supervisory visits than would normally be required, or less frequent supervisory visits.

<u>Justification</u>:
The North 2 Housing Unit consists of four (4) 100 sq. ft. cells that are not utilized on a consistent basis. The use of this area is to be limited to the following instances:
1.    Constant watch
2.    Medical/Mental Health Observation
3.    Pre-classification

NOTE:    **When any inmates are housed in this unit, the facility shall create and maintain a staff post within this housing unit at all times. If used for General Housing purposes, the facility must maintain a staff post on the 7:30am - 3:30pm and 3:30pm - 11:30pm tours. On the 11:30pm - 7:30am tour, required supervisory tours can be accomplished by staff assigned to the North/South Housing post during that tour.**

## MEDICAL SERVICES

**Rationale:**
Supervision of medical services is required in every correctional facility. The amount of time allotted is naturally determined by the size of the facility. Time is allotted for supervision of sick call, medical holding or housing areas, distribution of medications, escorting of medical staff and other miscellaneous medical functions and tasks.

**Justification:**
Supervision of medical services can be accomplished by staff allocations under the "Miscellaneous" category.

## LAUNDRY SERVICES

**Rationale:**
The facility is required by Minimum Standards to provide laundry services to the inmate population.

**Justification:**
Supervision of inmates assigned to perform laundry-related duties will be accomplished by staff allocated under the "Miscellaneous" category.

## LEGAL SERVICES

**Rationale:**
The constitutional right of access to the courts requires access to legal counsel, legal reference materials, and a notary public. Legal reference materials must be provided within a reasonable time after request. The services of a notary public must be made available by the facility within one business day after request. Most facilities operate law libraries where reference material is maintained. Access to legal counsel requires special phone calls to engage counsel, visits between inmates and their legal counsel telephone calls and correspondence with counsel. In the smaller facilities, this time is usually consolidated under the miscellaneous category.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## FOOD SERVICES

**Rationale:**
The food services operation differs drastically from each facility. Food preparation is usually accomplished by civilian personnel who are not included in a primary supervision staffing analysis. Control of eating utensils, supervisory checks of the food service area, food cart

deliveries and food service deliveries, may require a time allocation.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category

## RELIGIOUS SERVICES

**Rationale:**
The constitutional right to exercise one's religious beliefs requires the opportunity to congregate for the purpose of religious worship or other religious activity, and confidential consultation with representatives of recognized religious groups or organizations. Some large facilities may require staff allocation for this category, however, this time is usually consolidated under the miscellaneous category.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## MAIL SERVICES/PACKAGES

**Rationale:**
The pick-up and delivery, inspection of mail and packages, and the recording of pieces of correspondence is a necessary function at all correctional facilities which requires a certain amount of time. In the larger facilities, a reasonable amount of time is allotted for this purpose.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## DISCIPLINE PROGRAM

**Rationale:**
A disciplinary program is essential for the regulation of everyday life in a correctional facility. A designated supervisory staff person should coordinate disciplinary hearings and appeals process. In the larger facilities, a ranking staff person should be designated to investigate major violations facilities rules and inmate conduct.

**Justification:**
Functions related to the inmate discipline program will be performed by supervisory staff and administrative staff.

## VISITATION PROGRAM

**Rationale:**
The visitation program functions generally include the screening, processing of visitors. The program involves the notification, searching, and supervision of inmates. Additional duties may include the acceptance of packages and money, and searches of the visitation room. The time allotted for visitation is based upon the requirement that each inmate receive a minimum of two one-hour visits per week. The extremely high turnover of inmates in local correctional facilities is taken into account in determining the total number of staff required.

**Justification:**
One (1) staff position has been allocated on the 8am-4pm Tour and is designated as a five-day post. Times (for inmate visitation) other than the 8am-4pm tour can be established by the facility, but staffing requirements as outlined above must be observed.

## PHYSICAL EXERCISE

**Rationale:**
Each inmate confined in a local correctional facility is entitled to a physical exercise period of at least one hour each day or one and one-half hours five days per week. Staff are responsible for searching exercise areas prior and subsequent to each exercise period. They are also responsible for searching inmates and escorting inmates to the areas, and supervising them during the periods.

**Justification:**
One (1) staff position has been allocated on the 8am-4pm tour and is designated as a five-day post.

## INSIDE WORK PROGRAM

**Rationale:**
Work details are a natural and necessary part of any correctional facility. They may include supervising work in the facility laundry and mess hall as well as custodial work. The number of hours allotted for these purposes are determined by the actual details that are performed in any given facility.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## OUTSIDE WORK PROGRAM

**Rationale:**
Correctional facilities often operate an outside work program in which work such as lawn mowing, raking, and snow removal is completed. Supervision of inmates participating in this program must be provided by security staff.

**Justification:**
One (1) staff position has been allocated on the 8am-4pm tour. No coverage factor has been applied to this position.

## TRANSPORTATION

**Rationale:**
Transportation requirements vary drastically between facilities. In facilities where inmate transportation is a regular part of facility operations, it is usually included in the staffing analysis. Transport duties may frequently require staff resources and can often be difficult to predict in terms of time of day, frequency, duration, and destination.

**Justification:**
One (1) staff position has been allocated on the 8am-4pm tour and is designated as a five-day post.

## TRAINING

**Rationale:**
Training and staff development is an integral function of jail operations. A qualified training supervisor should have responsibility for planning and implementing the facility's training program.

**Justification:**
The Assistant Chief Officer and other administrative staff  will be responsible for the coordination of the staff training program.

## LIBRARY SERVICES

**Rationale:**
The time allotted for library services varies considerably with the size and operation of the facility. Staff are generally responsible for supervising inmates while in the library and escorting inmates to and from the library.

**Justification:**
Functions performed under this category can be accomplished by staff allocated under the "Miscellaneous" category.

## GRIEVANCE PROGRAM

**Rationale:**
Each county correctional facility is required by Minimum Standards to maintain a formal inmate grievance program. A grievance program provides an administrative mechanism for resolving inmate problems, complaints, and grievances before they result in untoward incidents and/or judicial intervention into facility operations and management. A designated supervisory staff person should coordinate the grievance program with provisions for advisory review and appeal. In the larger facilities, a ranking staff person should be designated to investigate the causes and circumstances of grievances.

**Justification:**
Functions under this area of operation will be accomplished by supervisory staff, administrative staff, and the Assistant Chief Administrative Officer.

## COMMISSARY PROGRAM

**Rationale:**
Commissary is another function which differs greatly between facilities. Staff may be responsible for processing inmate commissary orders, delivering commissary items to inmates and maintaining bank accounts for the program. Some jurisdictions contract with vendors to operate the commissary program. In such instances, staff allocations, if any, would be minimal.

**Justification:**
Functions performed under this category when necessary can be accomplished by staff allocated under the "Miscellaneous" category.

## PROGRAM SUPERVISION
## (EDUCATIONAL, VOCATIONAL AND COUNSELING PROGRAM)

**Rationale:**
Every correctional facility should have as a major objective constructive programs to assist inmates with family and personal problems through supportive guidance and professional assistance. The scope of such programs are dependent upon such factors as community involvement, availability of volunteers, arrangements with other public and private community agencies, etc. In terms of primary supervision, it may not be necessary to allocate time to these programs if the service providers are properly trained in security/supervision policies and procedures. In the larger facilities with extensive programs, it will be necessary to allocate time for supervision of inmate participating in these programs.

**Justification:**
One (1) staff position has been allocated for the 7:30am-3:30pm tour and has been designated as a five-day post.

## MISCELLANEOUS

**Rationale:**
Every facility has a number of duties, responsibilities, and functions that cannot be specifically provided for or categorized. Therefore, provisions are made under the miscellaneous category in order to assure sufficient flexibility to provide for all staff relief, special assignments, assistance in other areas during peak activities, emergencies, and other unpredictable chores.

**Justification:**
Staff allocations for this post are listed on the following page:

| POST LOCATION | 7am - 7pm | 7pm - 7am | 11-7 |
|---|---|---|---|
| *Duties include inmate escorts, emergency response support, supervision of the various inmate program and service activities such as legal, library, laundry, and religious services.* | 2 | 2 | 1 |
| TOTALS | 2.00 | 2.00 | 1.00 |

## FULL COVERAGE FACTOR

**Planning Base:** Pursuant to 9 NYCRR, Section 7041.3, the State Commission of Correction shall determine the full coverage factor designed to ensure that a sufficient number of persons are employed to perform facility functions 365 days per year. On page 2 of the spreadsheet of this analysis the full coverage factor has been formulated. The planning base used for this determination includes the following estimated off-duty days; regular days off; holidays; personal leave; vacation leave; generally accepted sick leave days; and other short term leave. Other short term leave ("other leave") includes five training days, military leave; bereavement leave, and any other short term leave. Leave under General Municipal Law, Section 207-c, is not calculated in the full coverage factor.

# EXHIBIT S



**PUTNAM COUNTY**
**OFFICE OF THE SHERIFF**
THREE COUNTY CENTER
CARMEL, NEW YORK 10512



**DONALD B. SMITH**
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000

**PETER H. CONVERY**
UNDERSHERIFF
(845) 225 - 1460

January 20, 2005

Honorable Robert J. Bondi
    County Executive
Honorable Robert McGuigan, Jr.
    Chairman, Putnam County Legislature
40 Gleneida Avenue
Carmel, New York  10512

Re:  State Commission of Correction Report on Norberto Rivera

Dear County Executive Bondi and Chairman McGuigan:

There is an issue that needs the immediate attention of the County Executive and Legislature. We have received and reviewed the final report of the New York State Commission of Correction regarding the death of inmate Norberto Rivera in the Putnam County Jail on November 15, 2003. I enclose a copy of the report together with the accompanying correspondence.

At page 3, paragraph 8 the Commission makes a finding that Mr. Rivera was provided "inadequate mental health care". As you know, AmeriCor Inc. provides inmate *medical care* under contract directly with the Sheriff. *Mental health care* is provided through the Department of Mental Health under contract with Putnam Family and Community Services. Both Commissioner Michael Piazza and I find this arrangement less than satisfactory. Here is why:

The New York State Office of Mental Health oversees the Putnam County Department of Mental Health. Community mental health services, including services to our jail population, are provided under protocols established by that agency. The New York State Commission of Correction (COC) oversees the Putnam County Correctional Facility and all other county jails in the State. Commissioner Piazza advises me that there is a lack of consensus between OMH and COC concerning the care and treatment of jail inmates undergoing alcohol or narcotics withdrawal.

County Executive Bondi
Chairman McGuigan
January 20, 2005
Page 2

After receiving the draft COC report, Commissioner Piazza and I separately responded by sending lengthy comments to the COC. I have also had numerous meetings with Commissioner Piazza, my confidential advisor, and senior correctional staff. As Commissioner Piazza can more fully explain, our entire community has undergone a profound change over the last ten years. The rapid de-institutionalization of the 1970s and 1980s, increased use of psychotropic drugs, demographic shifts, and population growth have severely strained mental health services. These factors are mirrored in our inmate population.

Commissioner Piazza, Executive Director of Putnam Family and Community Services Edythe Schwartz, correctional facility staff and I have met many times in the past three years as we struggled together to meet the needs of our inmates within a system that was not constructed to meet those increasing needs. One of the results of these meetings has been an increase in the time spent by mental health providers in the jail, but even that has proved to be inadequate. At the same time, the increased services in the jail have tapped into the limited mental health resources being shared with the community as a whole, diminishing the services available to other populations. Since the death of inmate Norberto Rivera and before the receipt of the preliminary COC report, more enhancements were made by the mental health agency; however, we are still in the situation of having inmates experience psychiatric emergencies without psychiatric staff available to respond.

Even before the receipt of the final COC report, Commissioner Piazza and I jointly requested the New York State Office of Mental Health to review our county's system of forensic care. Our research has already revealed other models of care that are offered in other counties with success. One model is for counties to establish and operate fulltime forensic clinics in the jail. Another provides for direct contract between the provider and the Sheriff, which allows the Sheriff better control and oversight of mental health services for the inmates under his care. The Sheriff cannot likewise control and oversee the work of another agency, which has its own standards and guidelines. Direct contracting for mental health care and medical health care, in addition to being cost effective, provides greater assurance that all inmate care will conform to the same set of standards, those promulgated by the Commission of Correction, which would also meet the standards of the National Commission on Corrections Health Care (NCCHC).

County Executive Bondi
Chairman McGuigan
January 20, 2005
Page 3


Commissioner Piazza and I have spent a lot of effort reviewing the system as it is now and researching how it can be improved in the future. Our discussions have been expansive and have not focused solely on the jail alone but on the mental health needs of the entire community. We are prepared to discuss options that will provide the jail with the discrete mental health services that are needed to ensure effective treatment and to ensure that future conflicts between the OMH and the COC systems are avoided.

We would like to discuss these important issues with you in greater detail as soon as possible.

Sincerely,

Donald B. Smith
Sheriff

DBS/jm
Enclosure
cc:  Commissioner Michael Piazza
     County Attorney Carl Lodes
     Confidential Advisor William Spain

P. 01

TRANSACTION REPORT

JAN-21-05 FRI 11:57 AM

FOR: PUTNAM CO. SHERIFF          8452254581

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE |
|------|-------|----------|---------|-------|------|------|
| JAN-21 | 11:55 AM | 2786033 | 2'17" | 3 | SEND | OK |

# EXHIBIT T





**PUTNAM COUNTY**
**OFFICE OF THE SHERIFF**
THREE COUNTY CENTER
CARMEL, NEW YORK 10512

DONALD B. SMITH
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000

PETER H. CONVERY
UNDERSHERIFF
(845) 225 - 1460

February 16, 2005

Honorable Robert J. Bondi
County Executive
40 Gleneida Avenue
Carmel, New York   10512

Dear County Executive Bondi:

   We are writing to you to report that we have obtained an acceptable approach to the mental health challenge facing our inmate population in the Putnam County Correctional Facility.

   As you know from previous correspondence and discussions, the mental health support for the Putnam County Correctional Facility has not met the needs of the inmate population and the standards of the New York State Commission of Correction.  Furthermore, you are aware that Ms. Edythe Schwartz, Executive Director of Putnam Family & Community Services, has served notice that her organization will not provide services to the inmate population at the Putnam County Correctional Facility after March 5, 2005.

   The undersigned have worked this challenge over the past several weeks and we are able to report that we have come up with an acceptable approach to meet the mental health needs of the jail, working within current budgetary constraints, by reallocating resources.  Our approach involves Americor, Inc. providing the essential services as an addendum to their medical contract. The contract has already been approved and processed through the Law Department and is attached at Enclosure 1 for your review, approval and signature.

County Executive Bondi
February 16, 2005
Page 2

The funding of the contractual support, as stated earlier, will be accomplished by reallocation of current resources. Commissioner Piazza has identified $60,000 that he will reallocate through a budgetary transfer which is included as Enclosure 2. Sheriff Smith has identified $44,994.17 through a reallocation pertaining to the pharmaceutical line in a budgetary amendment which is included at Enclosure 3. The bottom line is that under the proposed contract, Putnam County inmates will have three hours of psychiatric support per week; twelve hours of mental health counseling per week; have all medications to include psychotropic medications provided under the contract; 24 hour relief consideration provided; laboratory testing; diagnostic testing; on-call availability; and weekend and holiday on-call coverage. In addition, the proposal will meet the National Commission of Correctional Health Care (NCCHC) standards, American Jail Association (AJA ) standards, and will also meet the standards of the New York State Commission of Correction.

Bob, we believe that this is the best option available to meet the mental health needs in our jail under the present resource constraints. Thank you for your help and prompt action on this matter as time is of the essence since Ms. Schwartz has served notice that she is terminating her services as of March 5, 2005.

Sincerely,

Michael J. Piazza, Jr.
Commissioner

Donald B. Smith
Sheriff

DBS/jm
Enclosures
cc: Honorable Robert McGuigan
    Chairman, Putnam County Legislature

    Honorable Terry Intrary
    Chairman, Protective Services Committee

    Honorable Sam Oliverio, Jr.
    Chairman, Health, Social, Educational & Environmental Committee

# REQUEST FOR CONTRACT PREPARATION/DATA SHEET

**TO EXPEDITE THE CONTRACT PREPARATION PROCESS, THIS FORM MUST BE COMPLETED IN FULL. INCOMPLETE FORMS WILL BE RETURNED.**

Updated: 6/1/04

| | |
|---|---|
| DEPARTMENT REQUESTING CONTRACT: | Putnam County Office of the Sheriff |
| DEPARTMENT HEAD: | Donald B. Smith |
| NAME OF CONTRACTOR: | Americor, Inc. |
| OFFICIAL AND/OR BUSINESS ADDRESS: | 3105 Videre Drive Wilmington, DE 19808 |
| Is Contractor a Corporation? | Yes    X                     No |
| If **ADDENDUM** original contract number Needed. | 05-0026- + 04-0097 |
| CONTACT PERSON FOR CONTRACTOR: | Lieutenant Patrick O'Maley |
| OFFICIAL AND/OR BUSINESS TELEPHONE # | (302) - 366-1655 |

LIST **ALL** DUTIES TO BE PERFORMED BY CONTRACTOR (***In Detail***):

| |
|---|
| See Addendum 04-097 |
| 04-0288 |
| 05-0026 |

Attached letter dated January 25, 2005 from Americor, Inc.

| | |
|---|---|
| TERM OF CONTRACT: | Begin:March 01, 2005  End: December 31, 2005 |
| COMPENSATION (terms & amounts): | $104,944.17 |
| MAXIMUM COMPENSATION FOR THE TERM OF THE CONTRACT: | $104,994.17 |
| MAXIMUM HOURS TO BE WORKED UNDER CONTRACT: | N/A |
| BUDGET LINE(S): | 01.13.5.3150.11.4454 |

Lt. Patrick O'Malley  (845) 225-5255 Ext 316

| | | |
|---|---|---|
| Name & title of person preparing request form. | Phone Number & Extension | Date Prepared |

## ADDENDUM
## To Contract # 05-0026

THIS ADDENDUM, made this ____ day of _____, 2005, by and between the COUNTY OF PUTNAM, by its Sheriff's Department, having its principal place of business at 40 Gleneida Avenue, Carmel, New York (hereinafter, the "COUNTY") and AmeriCor, Inc., doing business as a corporation, having a principle place of business at 3105 Videre Drive, Wilmington, Delaware 19808 (hereinafter, "CONTRACTOR").

WHEREAS, the parties entered into this Agreement dated the 9th day of December 2004 wherein CONTRACTOR was retained to provide Health Care Services at the Putnam County Jail; and

WHEREAS, the parties wish to add mental health services as described in CONTRACTOR'S letter of January 25, 2005; and

NOW THEREFORE, in consideration of the terms and conditions contained herein and in the original Agreement, the parties agree as follows:

FIRST:  The CONTRACTOR agrees provide mental health services as described in CONTRACTOR'S letter of January 25, 2005 attached to and made a part of this Agreement as Schedule "A".

SECOND:    These additional services will be provided beginning on March 1, 2005 and will terminate on December 31, 2005.

THIRD:    For the additional mental health services referenced above and detailed in the attached Schedule "A", CONTRACTOR will be paid $104,994.17.  Should the additional services not begin on March 1, 2005, CONTRACTOR will be paid a prorated $10,499.42 per

1

month.

FOURTH:     All other terms and conditions of the original Agreement will remain the

same.

Budget Line:  01-13-5-3150-11-4454


IN WITNESS WHEREOF, the parties have executed this ADDENDUM in Carmel,

New York, on the date hereinabove set forth.

**READ & APPROVED:**                    **THE COUNTY OF PUTNAM:**

_____ Date 2/14/05            _____ Date _____
Richard B. Honeck                       Robert J. Bondi
Risk Manager                            County Executive


_____ Date 2/14/06            _____ Date 02/15/05
Carl F. Lodes                           Donald B. Smith
County Attorney                         Sheriff


_____ Date 2/16/05            _____ Date 2/15/05
William J. Carlin, Jr.                   AmeriCor, Inc.
Commissioner of Finance                 3105 Videre Drive
                                        Wilmington, DE 19808-3648


                                        By: KEVIN DUFFY  PRESIDENT
                                        Please Print name & title

month.

    <u>FOURTH</u>:    All other terms and conditions of the original Agreement will remain the same.

Budget Line:  01-13-5-3150-11-4454

    IN WITNESS WHEREOF, the parties have executed this ADDENDUM in Carmel, New York, on the date hereinabove set forth.

**READ & APPROVED:**

_____ Date 2/14/05
Richard B. Honeck
Risk Manager

_____ Date 2/14/06
Carl F. Lodes
County Attorney

_____ Date 2/14/05
William J. Carlin, Jr.
Commissioner of Finance

**THE COUNTY OF PUTNAM:**

_____ Date _____
Robert J. Bondi
County Executive

_____ Date 02/15/05
Donald B. Smith
Sheriff

_____ Date 2/15/05
AmeriCor, Inc.
3105 Videre Drive
Wilmington, DE 19808-3648

By: _KEVIN DUFFY_ , _PRESIDENT_
    Please Print name & title

2

*ACKNOWLEDGMENT OF PUTNAM COUNTY:*

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF PUTNAM    )

On this _____ day of _____, 2005 before me personally came **ROBERT J. BONDI** to me known, who being by me duly sworn, did depose and say that he resides at Mahopac, New York; that he is the County Executive of Putnam County, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; and the same was affixed to said instrument under authority of the Putnam County Charter and that he signed his name thereto under the same authority.

                                           _____
                                           Notary Public

*ACKNOWLEDGMENT OF CONTRACTOR:*

STATE OF NEW YORK           )
                           ) ss.:
COUNTY OF _PUTNAM_    )

On this _15 th_ day of ____*FEBRUARY*____, 2005 before me personally came _KEVIN DUFFY_____ to me known and known to me to be the person described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

                                      Notary Public

PATRICIA A. ROMANYCH
Notary Public, State of New York
01RO4817892
Qualified in Dutchess County
Commission Expires May 31, 2006

3

SCHEDULE "A"

# AmeriCor, Inc.

January 25, 2005

Sheriff Donald B. Smith
Putnam County Sheriff's Department
Three County Center
Carmel, NY 10512

Re: Mental Health Services Proposal

Dear Sheriff Smith,

AmeriCor has developed the following mental health staffing and services proposal for the Putnam County Correctional Facility per your request in our conference cal this afternoon. The staffing hours are based on staff hours per thousand inmates' formulae common to the corrections field while other services are based on actual experience in Putnam County.

Current services (based on our understanding of your existing arrangement and provided for comparison purposes only) include a psychiatrist on site for approximately 2 hours each week, a mental health case worker on site for approximately 6 to 8 hours each week and a psychiatric nurse practitioner approximately 2 hours per week. There is no on call coverage by the psychiatrist. No services of any kind are available between 5:00 PM on Fridays and 8:00 AM on Mondays or on holidays. The Sheriff's Department is responsible for the cost of all psychotropic (mental health) medications, laboratory tests, diagnostic studies and all other non-staffing expenses.

AmeriCor will provide a psychiatrist on site for 3 hours per week. The psychiatrist, like our physician and dentist will be on call (i.e. available by phone) 24 hours per day, 7 days per week. A mental health counselor (MSW) will be provided on site for 12 hours per week. AmeriCor will be responsible for all other program costs – medications. laboratory testing, diagnostic studies, etc. As is the case with your current provider, AmeriCor will not be responsible for the cost of inpatient psychiatric hospitalizations.

Should Putnam County choose to accept this proposal, mental health services can be added to the current health care contract as an addendum at a cost of $125, 993 per year for the 2005 contract year. If services are started on March 1, the ten month cost for the calendar/contract year would be prorated to $104,994.17. Should some other start date be necessary, the cost could be prorated to $10,499.42 per month.

Normally, services would be implemented within 60 days of notification to proceed. On an emergency basis, this start up period may be able to be shortened to accommodate a March start date.

A table showing current services as we understand them compared to our proposed service program is provided for "comparison at a glance" purposes.

<u>Putnam County Correctional Facility</u>

<u>Mental Health Services Comparison Chart</u>

| Service | Current | Proposed |
|---------|---------|----------|
| Psychiatrist | 2 hrs/wk | 3 hrs/wk |
| MH Case Worker | 6 – 8 hrs/wk | 0 |
| Nurse Practitioner | 2 hrs/wk | * |
| MH Counselor | 0 | 12 hrs/wk |
| Total Staffing | 12 hrs/wk | 15 hrs/wk |
| Relief Coverage Provided | No | Yes |
| Medications | No | Yes |
| Laboratory Tests | No | Yes |
| Diagnostic Tests | No | Yes |
| On Call Availability | No | Yes |
| Weekend Coverage | No | Yes |
| Holiday Coverage | No | Yes |

* Registered Nurse coverage is already provided 24 hours per day, 7 days per week through the health care contract.

We believe the proposed mental health services program will:

1. Meet the mental health needs of inmates in the County's care;
2. Meet National Commission on Correctional Health Care (NCCHC) Standards;
3. Meet American Jail Association (AJA) Standards;
4. Meet Putnam County's budgetary considerations; and
5. Provide the Sheriff's Department with a program that contains multiple "value added" elements and which is professional, reliable and cost effective.

Please let me know if you have any questions or require any additional information.

Sincerely,

Kevin Duffy
President & Chief Executive Officer

12/23/2013 12:51 FAX                                                    ☑002/004

# ▐▌ EVANSTON INSURANCE COMPANY
**MARKEL®**

| | |
|---|---|
| Policy No. | SM-828825 |
| Prev. No. | SM-821811 |
| Prod. No. | 31242 |

## DECLARATIONS · PROFESSIONAL LIABILITY INSURANCE
### FOR SPECIFIED MEDICAL PROFESSIONS

Claims Made Coverage: The coverage afforded by this policy is limited to liability for only those claims that are first made against the insured during the policy period or the optional extension period, if purchased.

In consideration of the payment of premium, in reliance upon the statements in the application attached hereto and made a part hereof and subject to all the terms of this policy, the Company agrees with the Named Insured as follows:

1.  **NAMED INSURED:** AMERICOR, INC.

    The Named Insured is a Corporation

2.  **BUSINESS ADDRESS OF THE INSURED:**
    3105 VIDERE DR.
    WILMINGTON, DE 19808

3.  **PROFESSION OF THE INSURED:** Medical Clinic

4.  **POLICY PERIOD:** From July 1, 2004 to July 1, 2005
    12:01 A.M. Standard Time at address of insured stated above.

5.  **RETROACTIVE DATE:** July 1, 2003

6.  **LIMITS OF LIABILITY:**
    The liability of the Company for each claim including claim
    expenses shall not exceed:                                              $ 1,000,000

    and, subject to that limit for each claim, the total limit of the
    Company's liability for all claims including claims expenses
    shall not exceed in the aggregate:                                      $ 2,000,000

7.  **DEDUCTIBLE:**
    Applicable to each claim, including claim expenses:                     $    10,000

8.  **PREMIUM FOR POLICY PERIOD:**                                          $    44,129.00

    2% DE Surplus Lines Tax                                                      882.58

9.  **OPTIONAL EXTENSION PERIOD:** 12 months at 150% of the full annual premium; 24 months for 175% of the full annual premium; or 36 months at 200% of the full annual premium hereunder

10. The Insured is not a proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, or any business enterprise not named in item 1 hereinabove, except as follows:

    None

 **EVANSTON INSURANCE COMPANY**

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  SM-828825 |
| AMERICOR, INC. | Endorsement No.:  6 |
| | Effective Date:  July 1, 2004 |

### AMENDMENT OF DECLARATIONS

In consideration of the premium paid, it is hereby understood and agreed that Item 6. of the Declarations, LIMITS OF LIABILITY, is deleted and replaced with the following:

6.  LIMITS OF LIABILITY:

The liability of the Company for each claim including claim
Expenses shall not exceed:                                                        $1,000,000

and, subject to that limit for each claim, the total limit of the
Company's liability for all claims including claims expenses
Shall not exceed in the aggregate:                                           $3,000,000

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

ZZ-46006-01

12/23/2013 12:51 FAX                                                                          004/004

 **EVANSTON INSURANCE COMPANY**

MARKEL

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  SM-828825 |
| AMERICOR, INC. | Endorsement No.:  3 |
| | Effective Date:  July 1, 2004 |

### ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that the following is an Additional Insured solely as respects professional services rendered or that should have been rendered by the Named Insured:

County of Putnam
40 Glencida Avenue
Carmel, New York

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

EIC 3098

C O U N T Y   O F   P U T N A M

FUND TRANSFER REQUEST

TO:      Commissioner of Finance

FROM:   Grace Balcer

DATE:   2/16/05

I hereby request approval for the following transfer of funds:

| From<br>Acct.# & Name | To<br>Acct.# & Name | Amount | Purpose |
|---|---|---|---|
| 01-17-5-4322-19-4647<br>(Sub Contractors) | 01-17-5-4322-19-5646<br>(Chgbk Contract) | $60,000 | To provide Mental Health County Tax Funds to the Sheriff's Department for the purpose of contracting for mental health services in the Correctional Facility |

_____
Signature

AUTHORIZATION:

_____  _____
Date        Department of Finance – Under $1,000.00


_____  _____
Date        County Executive – Between $1,000.01 – $5,000.00


_____  _____
Date        Chairperson/Designee – Between $5,000.01 – $10,000.00


_____  _____
Date        Audit & Administration – Between $10,000.01 – $25,000.00

C O U N T Y   O F   P U T N A M

FUND TRANSFER REQUEST

TO:     Commissioner of Finance

FROM:   UNDERSHERIFF PETER H. CONVERY

DATE:   FEBRUARY 16, 2005

I hereby request approval for the following transfer of funds:

| From<br>Acct.# & Name | To<br>Acct.# & Name | Amount | Purpose |
|---|---|---|---|
| 01-13-5-3150-11-4323<br>JAIL PHARMACY | 01-13-5-3150-11-4454<br>JAIL MENTAL HEALTH | $44,994.17 | TO TRANSFER FUNDS TO COVER<br>MENTAL HEALTH SERVICES AND<br>PHARMACEUTICALS FOR INMATES<br>INCARCERATED PER COUNTY CONTRACT |

_US Putter Convery 2/6-05_

Signature

AUTHORIZATION:

_2/16/05_
Date

_William J Carl_
Department of Finance — Under $1,000.00

_____
Date

County Executive — Between $1,000.01 – $5,000.00

_____
Date

Chairperson/Designee — Between $5,000.01 – $10,000.00

_____
Date

Audit & Administration — Between $10,000.01 – $25,000.00