UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
DONNY SINKOV, as Administrator of the Estate of Spencer E.     Docket No.: 07-CIV-2866
Sinkov, deceased, DONNY A. SINKOV, and HARA SINKOV,                      (CLB)

                                        Plaintiffs,

            -against-

DONALD B. SMITH, individually and in his official capacity as
Sheriff of Putnam County, JOSPEH A. VASATURO,
individually, LOUIS G. LAPOLLA, individually, THE COUNTY
OF PUTNAM, New York, and AMERICOR, INC.,

                                        Defendants.
-------------------------------------------------------------------------------x


# MEMORANDUM OF LAW


> MIRANDA SOKOLOFF SAMBURSKY
> SLONE VERVENIOTIS LLP
> Attorneys for Defendant
> DONALD B. SMITH
> The Esposito Building
> 240 Mineola Boulevard
> Mineola, New York 11501
> (516) 741-7676
> Our File No.: 07-730


Of Counsel:
        Adam I. Kleinberg
        Melissa Holtzer

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY STATEMENT........................................................................1

STATEMENT OF FACTS................................................................................3

ARGUMENT......................................................................................................4

POINT I

PLAINTIFFS CANNOT ESTABLISH THE REQUISITE
DELIBERATE INDIFFERENCE TO SUPPORT THEIR
FEDERAL CLAIMS.......................................................................................4

POINT II

PLAINTIFFS CANNOT MAINTAIN THEIR
DUPLICATIVE OFFICIAL CAPACITY CLAIM
AGAINST SHERIFF SMITH.......................................................................12

POINT III

SHERIFF SMITH IS ENTITLED TO QUALIFIED IMMUNITY......................13

POINT IV

PLAINTIFFS CANNOT SUSTAIN THEIR STATE
LAW CLAIMS AGAINST SHERIFF SMITH.............................................15

POINT V

IN THE ABSENCE OF FEDERAL CLAIMS, THIS COURT
SHOULD REFRAIN FROM EXERCISING ITS PENDENT JURISDICTION...............16

CONCLUSION.................................................................................................16

## TABLE OF AUTHORITIES

Cases

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ........................................................ 13

*Barr v. County of Albany,* 50 N.Y.2d 247, 257, ........................................................ 15

*Blue v. Koren, et al.*, 72 F.3d 1075, 1084 (2d Cir. 1995) ........................................................ 14

*Burke v. Warren County Sheriff's Dept.*, 890 F.Supp. 133, 139 (N.D.N.Y., 1995) ...................... 15

*Bowman v. Campbell,* 193 A.D.2d 921, 597 N.Y.S.2d 772 (3d Dept. 1993). .............................. 15

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). ........................................................ 5

*Crews v. County of Nassau*, 2007 WL 4591325 (E.D.N.Y. 2007). ............................................... 12

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994). ........................................................ 4

*Gaston v. Ploeger*, 229 Fed.Appx. 702 (10th Cir.  2007), ........................................................ 9

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). ........................................................ 13

*Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996) ........................................................ 4

*Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) ........................................................ 4

*Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). ........................................................ 4

*Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir. 2005) ........................................................ 4

*Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991). ........................................................ 13

*Kelsey v. City of New York*, 2006 WL 3725543 ........................................................ 4, 10

*Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir. 1998) ........................................................ 10

*Malley v. Briggs*, 475 U.S. 335, 345 (1986). ........................................................ 13

*Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998) ........................................................ 16

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). ........................................................ 14

*Rellergert v. Cape Girardeau County, Mo.,* 924 F.2d 794, 796 (8th Cir. 1991) .......................... 10

*Rhyne v. Henderson County,* 973 F.2d 386, 393-94 (5th Cir. 1992) ........................................... 10

*Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996). ....................................................................... 4

## PRELIMINARY STATEMENT

The plaintiffs have brought this federal action alleging violations of their rights under the Fourteenth Amendment of the United States Constitution, as well as state law claims of negligence and wrongful death. Defendant Donald B. Smith (hereinafter referred to as "Sheriff Smith") respectfully submits this Memorandum of Law in support of his motion pursuant to Rules 12 (c) and 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the Complaint against him in its entirety.[1]

Briefly stated, this lawsuit arises out of the suicide of Spencer Sinkov ("Sinkov"), who was a 20 year old male inmate of the Putnam County Correctional Facility ("PCCF"). In May of 2006, Sinkov was received and booked at the PCCF after an undercover narcotics operation lead to his arrest for the possession and sale of heroin. Sinkov faced multiple felony counts in connection with his arrest. Approximately 13 hours after arriving at the PCCF, Sinkov committed suicide while incarcerated in his cell.

As set forth below, plaintiffs' federal claims require a showing of deliberate indifference on the part of the defendants. Courts have consistently held that such a showing requires more than mere negligence. Rather, plaintiff must demonstrate that the defendant knew of, and disregarded, an excessive risk of serious harm to the inmate. This is a high burden of proof, and one which plaintiffs cannot satisfy in this case.

Here, upon Sinkov's arrival, the PCCF booking officer administered a set of suicide prevention screening guidelines that were inherently designed to identify inmates with a high risk of

---

1 Mindful of Your Honor's Individual Rules governing the submission of qualified immunity motions, we respectfully submit that the circumstances of the subject prison suicide precluded the plaintiffs' depositions from revealing any

committing suicide while incarcerated. The deposition testimony of the booking officer, defendant Joseph Vasaturo, and the tour supervisor, defendant Louis Lapolla, demonstrates that, had the officers followed the PCCF written policies in place for high risk inmates, there would have been a constant watch instituted on Sinkov. It follows that Sheriff Smith was not personally involved in either the arrest, booking, or monitoring of Sinkov while he was in the custody of the PCCF.

The New York State Commission on Correction (the "Commission") performed an investigation into Sinkov's death and found that the PCCF officers failed to comply with several PCCF written policies. However, there was no issue taken with the policies themselves. Accordingly, dismissal of the federal claims against Sheriff Smith is warranted as a matter of law.

To the extent that plaintiffs seek to link this unfortunate event to a 2003 jail suicide of Norberto Rivera, the Record before the Court demonstrates that Sheriff Smith addressed each recommendation proffered by the Commission's subsequent investigation. None of the Commission's recommendations pertained to the use or administration of the PCCF's Suicide Prevention Screening Guidelines. While plaintiffs' Complaint cites to the Commission's recommendations towards the jail psychiatrist (who was employed by a separate public agency at the time), the Record demonstrates that Sheriff Smith subsequently sought and obtained substantial funding from the County legislature to replace the jail's reliance on the public agency and procure a contract with a private entity, defendant Americor, Inc., to obtain increased mental health services at the jail. The Commission did not recommend that Sheriff Smith take this proactive step towards improving mental health care at the jail, and the evidence further belies plaintiffs' claim of deliberate indifference towards Sheriff Smith.

---

information that would be probative on the issue of qualified immunity. Accordingly, we submit the issue for

Similarly, plaintiffs cannot make out their state law claims against Sheriff Smith and, to the extent that the federal claims against the Sheriff are duplicative of those against the County, dismissal is also warranted.

## STATEMENT OF FACTS

A full recitation of the relevant facts is set forth in the accompanying Statement of Undisputed Facts Pursuant to Local Rule 56.1.[2]

---

determination along with the instant motion for summary judgment.

2 For the Court's convenience, and so as not to burden the Court with duplicate sets of exhibits, we have submitted a Joint Statement of Undisputed Facts with the County defendants.

3

<u>ARGUMENT</u>

<u>POINT I</u>

**PLAINTIFFS CANNOT ESTABLISH THE REQUISITE DELIBERATE INDIFFERENCE TO SUPPORT THEIR FEDERAL CLAIMS.**

The United States Supreme Court has held that prison officials who know of or should know of a potential suicide risk to an inmate have an obligation to protect that inmate from self-inflicted injury. *See Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). In the pre-trial detainee suicide context, "the relevant inquiry is whether defendants were deliberately indifferent to the medical need of the detainee to be protected from himself." *See Kelsey v. City of New York,* 2006 WL 3725543 at p. 5 (E.D.N.Y. 2006) *citing Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996).

Courts have found the deliberate indifference standard "describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the 'very purpose of causing harm or with knowledge that harm will result.'" *Id.* It has been described as "a state of mind that is the equivalent of criminal recklessness," *see Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003), and involving "unnecessary and wanton infliction of pain, or other conduct that shocks the conscience." *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996).

Thus, in order for a plaintiff to satisfy the burden to show deliberate indifference, he/she must demonstrate that each charged official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir. 2005) *quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the case

4

at bar, plaintiffs cannot satisfy their burden of demonstrating the requisite deliberate indifference towards defendant Sheriff Smith.

As the Sheriff of Putnam County, Sheriff Smith sets broad policies for his staff to implement on a day-to-day basis. *See* Exh. E at p. 5.3 He had no personal involvement in the arrest, booking, or monitoring of Spencer Sinkov during the relevant period, and there no allegations in the Complaint or evidence in the Record to the contrary. *See* Exh. A. As such, plaintiff cannot demonstrate that Sheriff Smith had any personal knowledge of any excessive risk to Sinkov's safety.

The Second Circuit has held that, when supervisory liability is alleged, the requisite personal involvement can be demonstrated in one or more of the following manners:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff cannot demonstrate any of these factors as towards Sheriff Smith.

The Record before the Court demonstrates that, when Sheriff Smith took over his position in 2002, he reviewed all of the policies of the PCCF, including those relating to suicide prevention. *See* Exh. E at pp. 8-9, 19. In this regard, the PCCF had utilized a set of Suicide Prevention Screening Guidelines that its booking officers administered to each new inmate who arrived at the facility. *See*

---

3 All referenced exhibits are attached to the accompanying Declaration of Adam I. Kleinberg submitted in support of the instant motion.

Exh. E at pp. 8-9, 19. The administration of the Suicide Prevention Screening Guidelines was a proactive act towards the goal of preventing inmate suicide. Based on his discussions with jail officials who had worked under the prior administration, Sheriff Smith believed that the New York State Commission on Correction had performed routine annual inspections of the PCCF, during which times the Commission reviewed the PCCF Suicide Prevention Screening Guidelines. *See* Exh. E at pp. 10-12; 38-39. In sum, Sheriff Smith was not aware of any distinction between the Commission's ADM-330 Suicide Prevention Screening Guidelines and the PCCF's version which was part of a single intake packet including medical forms. *See* Exh. E at pp. 13-14; Exh. F at pp. 64-65, 142-43.

After PCCF inmate Norberto Rivera committed suicide in 2003, the Commission performed a complete investigation of the matter. *See* Exh. K. As part of its investigation, the Commission reviewed the PCCF's intake forms for the decedent. *See* Exh. K at p. 2. The Commissioner's resulting report did not contain any mention of inadequacies regarding the contents or use of the PCCF Suicide Prevention Screening Guidelines. *See* Exh. E at p. 28; Exh. K. As such, there was no reason for Sheriff Smith to believe there was ever a problem with the use of a form which predated him and had consistently been met with approval from the governing State authority.

The Commission did make three recommendations to Sheriff Smith following the Rivera suicide, each of which was fully addressed by the Sheriff. Specifically, these were: i) a policy should be in place directing corrections officers to document the actual times of their checks, rather than rounding off the times; ii) a re-evaluation of first aid equipment and, if such equipment was available, the provision of related training; iii) an updated staffing analysis should be requested with

6

particular attention to the North Housing area post and its adjacent responsibilities. *See* Exh. K at p. 5. None of these recommendations from the Commission involved changing the PCCF Suicide Prevention Screening Guidelines, discontinuing their use, or revising any of the PCCF policies relating to suicide prevention. In any event, it is irrefutable that Sheriff Smith acted promptly with regard to each of the three recommendations. *See* Exh. E at pp. 134-35, 168-70, 173-74, 176-78, 182; Exh. F at pp. 261-62; Exh. L; Exh. M; Exh. Q; Exh. R.

Further, although not required to, Sheriff Smith (who is also a Co-President of the Mental Health Association of Putnam County), took the opportunity to seek out additional mental health support for the PCCF inmates. *See* Exh. E at pp. 85-86, 88-91, 93; Exh. S; Exh. T. Toward this end, Sheriff Smith sought and obtained funding from the County Legislature to contract for increased mental health services through defendant Americor. *See* Exh. S; Exh. T. Thus, to claim that Smith was deliberately indifferent to the issue of mental health or inmate safety is entirely unsupported in the Record before the Court.

In connection with this litigation, Smith learned for the first time that there was a distinction between the PCCF Suicide Prevention Screening Guidelines and the ADM-330 form. *See* Exh. E at pp. 13-14. A cursory review of the two forms reveals that the questions to be posed and observations to be made by the booking officer are the same in number and content. *Compare* Exhs. H and O. However, the lower section of ADM-330 form, entitled "Action," directs a screening officer as follows: "If total checks in Column A are 8 or more, or any shaded box is checked, or if you feel it is necessary, notify supervisor and institute constant watch." *See* Exh. O. The comparable section of the PCCF form, entitled "Action To Be Taken By Screening Officer," directs a screening officer as

7

follows: "If total in Column A is 8 or more, or any shaded box is checked, or if the screening officer

feels it is necessary, notify shift supervisor." *See* Exh. H.

However, while the PCCF form does not expressly direct the booking officer to institute a

constant watch, the same result is achieved through the PCCF's written policies. In this regard, each

PCCF Corrections Officer receives a policy book, commonly referred to as the "Red Book." *See*

Exh. F at pp. 60-61.    Article 15 of the Red Book, entitled "Mental Health Evaluation & Service,"

requires a Booking Officer to:

> Immediately notify the tour supervisor whenever a prisoner:
>
> a.    Scores in the high risk (score of 8 in Column
> A) or immediate referral categories on the
> Suicide Prevention Screening Form; . . .

*See* Exh. I at p. 15.2; *see also* Exh. F at pp. 72-74, 76; Exh. G at pp. 30-31.

Thus, in the instant case, where Spencer Sinkov scored a 10 on the Suicide Screening form

and there were affirmative answers in the immediate referral areas (the shaded areas on the form),

defendant Vasaturo should have notified defendant Lapolla, the tour supervisor, of the results. *See*

Exh. P; *see also* Exh. E at p. 48; Exh. F at pp. 72-74, 76, 157, 160; Exh. G at pp. 31-32, 37-38.

Section 15-4 (B) (3) of the Red Book then directs the Tour Supervisor, in turn, to make sure

that a constant watch, which involves one to one direct supervision, is immediately implemented for

the suicidal prisoner. *See* Exh. I at p. 15.6; Exh. E at pp.69, 71; Exh. F at pp. 16-17, 55, 58, 105-06,

113-14. Thus, had Vasaturo notified Lapolla of Sinkov's screening results, Lapolla was required to

institute a constant watch for Sinkov, which would have remained in place until a mental health

professional directed otherwise. *See* Exh. E at p. 74.

In sum, the policy in place was designed to ensure that a constant watch would be instituted when an inmate scored an 8 or higher on the Suicide Prevention Screening Guidelines or there was an affirmative answer in a shaded area of the form. *See* Exh. E at p. 29. This is consistent with the directives set forth on the Commission's form and achieves the same result. It follows that the Commission's investigation into the death of Spencer Sinkov did not raise a problem with the PCCF's form. *See* Exh. N. In fact, the Commission's investigation noted that the ADM-330 form was actually used. *See* Exh. N at p. 3. This allows for an inference that the Commission did not object to the PCCF form, or that the above-described distinction in the language of the form was not a cause for concern. Nonetheless, the Commission's report cited that the PCCF suicide prevention policies called for a constant watch of Spencer Sinkov, and cited the officers' failure to adhere to the policies. *See* Exh. N.

In the case of *Gaston v. Ploeger*, 229 Fed.Appx. 702 (10th Cir. 2007), the Tenth Circuit examined a similar matter wherein the Estate of a pretrial detainee who committed suicide commenced a § 1983 action against a number officials and staff within the prison system, including the Sheriff of the County, Lamar Shoemaker. As in the instant case, the Court in *Gaston* found that the Sheriff had no personal role in the events leading up to the suicide. Thus, to impose liability on Sheriff Shoemaker, the Tenth Circuit employed the deliberate indifference standard and stated that the record "must contain evidence from which a jury could infer that Sheriff Shoemaker knew that his policies were insufficient to protect inmates from the risk of suicide." *See Gaston*, 229 Fed.Appx. at 713. Accordingly, the Court in *Gaston* dismissed the claims against Sheriff Shoemaker finding that nothing in the sheriff's training or experience put him on notice that his policy was

9

inadequate. *Id.* at 713. The Court took note that, "While, in hindsight, it is clear that Sheriff Shoemaker could have better trained and supervised his subordinates, there is no evidence that he was deliberately indifferent to the risk of inmate suicide." *Id.*

The deliberate indifference standard is a high burden for a plaintiff to meet and courts will closely examine the steps taken by prison officials to prevent suicide, even where other steps were omitted. *See Kelsey v. City of New York*, 2006 WL 3725543 at p. 6 *citing Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). The Fifth Circuit, in *Rhyne v. Henderson County*, 973 F.2d 386, 393-94 (5th Cir. 1992), held that, as a matter of law, a jury could not find deliberate indifference where officials checked suicidal inmates only every ten minutes. The Fifth Circuit noted that, although periodic inmate checks may have been inadequate and could form the basis of a sound negligence claim, the periodic checks reflected concern, rather than apathy for inmate safety, and no evidence indicated that frequent periodic checks were obviously inadequate. *Id.*

Similarly, the Eighth Circuit, in *Rellergert v. Cape Girardeau County, Mo.*, 924 F.2d 794, 796 (8th Cir. 1991), found deliberate indifference to have been lacking where the officers also took affirmative and deliberate steps to protect inmates from harm. *See Rellergert*, 924 F.2d at 797; *see also Kelsey v. City of New York*, 2006 WL 3725543 at p. 5-6.

In the instant case, Spencer Sinkov was received at the PCCF just after midnight on May 20, 2006. *See* Exh. N at p. 3. The booking officer on duty administered the PCCF Suicide Prevention Screening Guidelines and placed Sinkov on a heightened, albeit not constant, supervision. *See* Exh. N at p. 3. This involved an officer checking on Sinkov every 15 minutes as opposed to the standard officer checks every 30 minutes. *See* Exh. E at pp. 23-24; Exh. F at pp. 56-57. The booking officer

did not feel that Sinkov was a danger to himself, but instituted the heightened supervision based on Sinkov's past drug use. _See_ Exh. F at pp. 130-32, 147-49, 173. We note that Section 15-4 (B) (3) of the Red Book requires a Tour Supervisor to make sure that an inmate who appears to be intoxicated, but does not appear to be a danger to themselves or others, receive 15 minutes watches, also known as active supervision. _See_ Exh. I at p. 15.6; Exh. E at p. 71; Exh. F at pp. 16-17.

Unfortunately, the booking officer's assessment as to the risk of Sinkov committing suicide was incorrect and Sinkov committed suicide approximately 13 hours later. However, for purposes of this analysis, the end result alone is not dispositive. Rather, defendants Vasaturo and Lapolla sought to exhibit care for Sinkov's well-being by employing a heightened level of supervision, even if it was not a constant watch. Their personal observations were that Sinkov appeared to be in relatively good spirits and health. As such, plaintiffs cannot demonstrate the requisite deliberate indifference. While the corrections officers' impressions ultimately proved incorrect, this is insufficient to impose federal liability on Sheriff Smith.

Finally, we note that, contrary to the allegations of the complaint, the PCCF's policy is that suicidal or other high risk inmates who receive constant supervision are issued paper clothing. _See_ Exh. F at p. 55; Exh. G at p. 106. Thus, had the officers adhered to the PCCF suicide prevention policies, paper clothing would have been issued to Sinkov. Again, there is no basis to hold Sheriff Smith responsible for the implementation of this policy.

Based on all of the aforementioned, Sheriff Smith respectfully requests that the Court dismiss plaintiff's First and Third Causes of Action against him as a matter of law.

11

## POINT II

### PLAINTIFFS CANNOT MAINTAIN THEIR DUPLICATIVE OFFICIAL CAPACITY CLAIM AGAINST SHERIFF SMITH.

With respect to the official capacity claim against Sheriff Smith, courts will dismiss an official capacity claim where it is duplicative of the claim against the municipality. *See Crews v. County of Nassau*, 2007 WL 4591325 (E.D.N.Y. 2007). Here, Sheriff Smith was not personally involved with the arrest, intake, or monitoring of Spencer Sinkov. As such, plaintiffs' arguments are related to the policies in effect and the communication of such policies. This is the same claim that is alleged towards the County.

Accordingly, based on all of the aforementioned, defendant Smith respectfully requests that the Court dismiss plaintiff's First and Third Causes of Action against him as a matter of law.

## POINT III

### SHERIFF SMITH IS ENTITLED TO QUALIFIED IMMUNITY

Public officials are shielded by qualified immunity from liability for damages related to their performance of discretionary official functions, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). The availability of the defense turns on the "objective legal reasonableness" of the allegedly unlawful action, "asserted in light of the legal rules that were 'clearly established' at the time it was taken." *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) *quoting Harlow*, 457 U.S. at 818-19. Even if the constitutional question is clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *See Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

The relevant question is whether the official believed his or her conduct to be lawful. *See Anderson*, 483 U.S. at 641. A reasonable, competent official must be able to determine in advance that the actions were unconstitutional. *Id.* at 640. If reasonably competent officials would have taken the challenged action or could disagree on the issue, the defendant is entitled to qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 345 (1986). In *Malley*, the Supreme Court held that qualified immunity protected all officials except those who knowingly violate the Constitution or those who are plainly incompetent. *Id.*

The principle of qualified immunity is "an immunity from suit rather than a mere defense to liability; and like absolute immunity it is effectively lost if the case is erroneously permitted to go to

13

trial." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In *Anderson*, the United States Supreme Court found that it is inevitable that officials will in some cases reasonably, but mistakenly, take actions that are later found to be improper and, in such a case, those officials who act in ways they reasonably believe to be lawful should not be held personally liable. *See Anderson*, 483 U.S. at 641.

In the case at bar, Sheriff Smith reasonably relied on the representations of his staff members and his own review of the subject suicide screening form. *See* Exh. E at pp. 8-12, 19, 38-39. The Commission's reviews and investigations of the PCCF facilities and policies further support a finding of reasonableness as respects Sheriff Smith's actions pertaining to suicide prevention. *See* Exh. E at pp. 8-12, 19, 38-39; Exh. K; Exh. N.

Further, Sheriff Smith acted promptly and completely in response to the Commissions' recommendations following the Rivera suicide and even went further than recommended in seeking and obtaining additional mental health services for the PCCF inmates. *See* Exh. E at pp. 134-35, 168-70, 173-74, 176-78, 182; Exh. F at pp. 261-62; Exh. L; Exh. M; Exh. Q; Exh. R; Exh. S; Exh. T.

Where as here, a public official's conduct is objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat a qualified immunity motion. *See Blue v. Koren, et al.*, 72 F.3d 1075, 1084 (2d Cir. 1995). As the Second Circuit held in *Blue*, "Otherwise, the qualified immunity defense would be hollow indeed." *Id.* Here, plaintiffs cannot meet this standard.

Based on all of the aforementioned, defendant Smith respectfully requests that the Court dismiss plaintiff's First and Third Causes of Action against him as a matter of law.

## POINT IV

### PLAINTIFFS CANNOT SUSTAIN THEIR STATE LAW CLAIMS AGAINST SHERIFF SMITH.

A Sheriff has a non-delegable duty to keep prisoners safe. *See Burke v. Warren County Sheriff's Dept.*, 890 F.Supp. 133, 139 (N.D.N.Y., 1995) *citing Bowman v. Campbell,* 193 A.D.2d 921, 597 N.Y.S.2d 772 (3d Dept. 1993). However, as a matter of law, a Sheriff cannot be held vicariously liable for the tortious conduct of corrections officer arising out of the performance of their criminal justice functions. *See Burke*, 890 F.Supp. at 139 (N.D.N.Y., 1995) *citing Barr v. County of Albany,* 50 N.Y.2d 247, 257, 406 N.E.2d 481, 485, 428 N.Y.S.2d 665, 670 (1980). Nor can a Sheriff be held personally liable for the acts or omissions of his officers. *See* NY County Law § 54.

Thus, to the extent that plaintiffs seek to impose a claim sounding in negligence upon Sheriff Smith, such claim must be premised upon the Sheriff's own acts or omissions. *See Burke*, 890 F.Supp. at 139 (N.D.N.Y. 1995) *citing Barr,* 50 N.Y.2d at 257, 406 N.E.2d at 485, 428 N.Y.S.2d at 670. As set forth *supra*, the testimony of defendants Vastauro and Lapolla, along with the subject Red Book policies and training manuals, establish that the officers should have instituted a constant watch of Sinkov. Thus, no liability can attach to the Sheriff.

Based on all of the aforementioned, defendant Sheriff Smith respectfully requests that the Court dismiss plaintiffs' Second and Fourth Causes of Action against him as a matter of law.

## POINT V

### IN THE ABSENCE OF FEDERAL CLAIMS, THIS COURT SHOULD REFRAIN FROM EXERCISING ITS PENDENT JURISDICTION.

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). As discussed above, plaintiffs' federal claims fail as a matter of law.

Since the state law claims are before this Court solely under the supplemental jurisdiction provided by 28 U.S.C. § 1367, to the extent that the Court liberally construes the allegations and does not dismiss the state law claims on substantive grounds, the state law claims should be dismissed in absence of viable federal claims.

### CONCLUSION

For all of the foregoing reasons, defendant Sheriff Smith respectfully requests that this Court grant summary judgment in his favor and dismiss this action against him in its entirety, along with granting such other relief as the Court may deems just, proper, and equitable.

Dated: Mineola, New York
     May 6, 2008

                            MIRANDA SOKOLOFF SAMBURSKY
                            SLONE VERVENIOTIS LLP
                            Attorneys for Defendant
                            DONALD B. SMITH

                            Adam I. Kleinberg (AIK-0468)
                            Melissa Holtzer (MH-6636)
                            The Esposito Building
                            240 Mineola Boulevard
                            Mineola, New York 11501
                            (516) 741-7676
                            Our File No.: 07-730

TO:   Kim Berg, Esq.

16

LOVETT & GOULD, LLP
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, NY 10605
(914) 428-8401

James Randazzo, Esq.
SANTANGELO, RANDAZZO & MANGONE, LLP
Attorneys for the County Defendants
151 Broadway
Hawthorne, NY 10532
(914) 741-2929

Timothy Paul Coon, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Defendant Americor, Inc.
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000