**FINAL REPORT OF NORBERTO RIVERA**                    **PAGE 5**

"violent and agitated and withdrawing from heroin." The psychiatrist could not substantiate the information in his written statement. He could not confirm who had informed him that Rivera's behavior was violent and he himself had not seen him. In contrast, Rivera was seen regularly by medical and nursing staff without any record of violent conduct or agitation observed. Dr. P.S. also wrote in Part II of the M1-87 that he asked if Rivera could be seen the following week and was told yes. The psychiatrist could not substantiate who informed him of this other than "it was one of the nurses." Dr. P.S.'s documented reasons for not evaluating Rivera are without justification and, as cited in Finding #8, constituted a deliberate refusal to provide services and represents inadequate mental health evaluation and treatment.

19.   The North Housing area is a 16 cell linear housing unit that has one officer assigned to it. The officer maintains a post right outside the block door. In addition to supervising the housing unit, the officer also has responsibilities to supervise a program area down the hall, movement into the adjacent recreation yard and a separate 4 cell housing unit approximately 100 feet away. The additional duties added to this post prevent an officer from being able to maintain active supervision adequately and should be reviewed as part of an updated staffing analysis.

RECOMMENDATIONS:

TO THE SHERIFF OF PUTNAM COUNTY:

1.   The Sheriff should question the housing area officer for the North Housing area for the accuracy of his documented times he completed rounds. Policy should be in place to have officers document the actual time they complete rounds and not rounded off to the nearest half or quarter hour.

2.   Re-evaluate available first aid equipment for emergency medical response situations. If oxygen and respirator equipment is available, training should be provided to assure proper usage and deployment with a non-breathing person.

3.   The Sheriff should request an updated staffing analysis be completed with particular attention to the North Housing area post and its adjacent responsibilities.

TO THE PRESIDENT OF AMERICOR, INC.:

A peer review inquiry of the responding nurse on 11/15/03 should be conducted in regards to the use of a simple oxygen face mask delivery device on a non-breathing patient. Additional training on CPR and resuscitation should be provided if found to be necessary.

TO THE DIRECTOR OF PUTNAM FAMILY SERVICES:

1.   Dr. P.S., the psychiatrist who provides services to the Putnam County Jail, should be disciplined for filing false information on

FINAL REPORT OF NORBERTO RIVERA                              PAGE 6

Part II of the Inmate Death Notification form (M1-87), an official instrument of the State Commission of Correction, regarding why he did not evaluate Rivera.

2.   Dr. P.S., the psychiatrist, should be disciplined for instituting a policy to not evaluate any newly admitted inmate who may be detoxing. Each case should be evaluated individually as such blanket policies fall below the community standard of care and represent inadequate care.

TO THE NYS DEPARTMENT OF HEALTH, OFFICE OF PROFESSIONAL MEDICAL CONDUCT:

Conduct an inquiry into the conduct of Dr. P.S., a psychiatrist employed by Putnam Family Services, who falsely documented information on a patient who he never saw.

*Note: In a letter to the Medical Review Board dated October 29, 2004, Sheriff Donald Smith made a wholly satisfactory response to the findings and recommendations made to the Office of the Sheriff, including affirmatively addressing the staffing issues in this case and appropriate administrative action concerning the documentation of security checks. In addition, the Sheriff has taken the initiative to open a dialogue on the quality and availability of mental health services at the Putnam County Jail.*

*In letters to the Medical Review Board dated October 21, 2004, Michael Piazza, the Putnam County Commissioner of Mental Health, Social Services and Youth Bureau, and Edythe S. Schwartz, Executive Director of Putnam Family and Community Services, both defended the actions of Dr. P.S. in failing to see Norberto Rivera while falsely claiming that Rivera was agitated, violent and withdrawing from opiates. Both suggested there was no basis for complaint against Dr. P.S. even though the investigation of this case clearly showed that Mr. Rivera was not agitated or violent when Dr. P.S. was asked to see him and no one on the medical or security staff informed Dr. P.S. that Mr. Rivera was agitated or violent. The fact that Mr. Rivera was withdrawing from opiates was irrelevant to Dr. P.S.'s refusal to see and assess him. Executive Director Schwartz went on to suggest that Dr. P.S. could have been prevailed upon to see this patient if in effect someone else had assessed him in advance, something the nursing staff who referred him indeed did. Commissioner Piazza went on to incorrectly state that there are no standards for forensic mental health services, no guidelines and no funding. Apart from being wrong on all accounts, the Board found the attitude evinced by such statements to be dismissive of Mental Hygiene Law, public policy and biomedical ethics, serving only to heighten the concerns of the Commission and Board in this case, which categorically rejected both responses.*

**FINAL REPORT OF NORBERTO RIVERA**                    **PAGE 7**

WITNESS, HONORABLE FREDERICK C. LAMY, Commissioner, NYS Commission of Correction, 80 Wolf Road, 4th Floor, in the City of Albany, New York 12205 this 11th day of January, 2005.

Frederick C. Lamy
Commissioner

FCL:mj
03-M-212
9/04

cc:    Commissioner Michael J. Piazza, Putnam County
       Departments of Mental Health, Social Services
       and Youth Bureau
       Edythe Schwartz, Executive Director, Putnam
       Family and Community Services
    —  Kevin Duffy, President & CEO, Americor, Inc.
       Richard Miraglia, Bureau of Forensic
       Services, NYS Office of Mental Health

**EXHIBIT 23**

| | | |
|---|---|---|
| 2949 | 0228 | NHU checked, 13 males secure |
| 2950 | 0245 | 15 min sup/v check, cells 10,11 +12 |
| 2951 | 0300 | NHU checked 13 males all secure |
| 2952 | 0315 | NHU checked 13 males all secure |
| 2953 | 0330 | NHU checked 13 males all secure |
| 2954 | 0337 | NHU Area checked — All Secure |
| 2955 | 0341 | 15 min sup/v check, cells 10, 11 +12 |
| 2956 | 0400 | NHU checked, 13 males secure |
| 2957 | 0413 | 15 min sup/v check, cells 10, 11 + 12 |
| 2958 | 0430 | NHU checked, 13 males secure |
| 2959 | 0440 | Recieved 1, male Qureshi, Shahram |
| 2960 | 0445 | NHU, 15 min check, cells 10, 11, +12 |
| 2961 | 0500 | NHU checked, 14 males secure |
| 2962 | 0513 | NHU, 15 min check, cell 10, 11 +12 |
| 2963 | 0514 | Nurse Medicated, Hachenberge |
| 2964 | 0528 | NHU Checked, 14 males secure |
| 2965 | 0545 | 15 min sup/v check, cell, 10, 11 +12 |
| 2966 | 0558 | NHU checked, 14 males secure |
| 2967 | 0613 | Brought Tanvir to nurse for Sugar Test |
| 2968 | 0619 | 15 min sup/v check, cells 10,11 +12 |
| 2969 | 0628 | NHU checked, 14 males secure |
| 2970 | 0643 | 15 min sup/v check, cells 10,11 +12 |
| 2971 | 0700 | NHU checked 14 males secure |
| 2972 | 0714 | 15 min sup/v check, 14 males secure |
| 2973 | 0725 | C/O Morgante off duty, All Secure |
| 2974 | 0726 | Fire + Safety Devices checked, All Secure |

OFFICER (19) - ON DUTY - N/a HU HOUSING UNIT
- KEYS - LOGBOOK REVIEWED - INSPECTED SUPPLIES -
- POST EQUIPMENT - LOCKS-GATES-BARS-SCREENS-
- SECURITY WINDOWS - DOORS - FIRE FIGHTING EQUIPMENT -
(19) MALES/FEMALES IN UNIT _____ MALES/FEMALES OUT OF UNIT
(19) INMATES TOTAL - ALL SECURE -

| | | |
|---|---|---|
| | | Active Super vision |
| 2975 | 0730 | N/m checked (14) males secure |
| 2976 | 0731 | inmates fed @ Refused Atwood |
| 2977 | 0745 | N/m checked (14) males secure |
| 2978 | 0800 | N/m checked (14) males secure |
| 2979 | 0815 | N/m checked (14) males secure |
| 2980 | 0830 | N/m checked (14) males secure |
| 2981 | 0831 | Trays collected |
| 2982 | 0845 | N/m checked (14) males secure |
| 2983 | 0900 | N/m checked (14) males secure |

92

| 2984 | 0905 | Rec'd ④ males Soto, moore, sgamotto, lushaun | Vasaturo |
| 2985 | 0915 | N/m checked 18 males secure | Vasaturo |
| 2986 | 0925 | Med's by Nurse | Vasaturo |
| 2987 | 0930 | N/m checked ⑱ males secure | Vasaturo |
| 2988 | 0945 | N/m checked ⑱ males secure | Vasaturo |
| 2989 | 0950 | Relsd ① male To visit Rodriguez | Vasaturo |
| 2990 | 1000 | N/m checked ⑰ males secure | Vasaturo |
| 2991 | 1015 | N/m checked ⑰ males secure | Vasaturo |
| 2992 | 1030 | N/m checked ⑰ males secure | Vasaturo |
| 2993 | 1045 | N/m checked ⑰ males secure | Vasaturo |
| 2994 | 1100 | N/m checked ⑰ males secure | Vasaturo |
| 2995 | 1115 | N/m checked ⑰ males secure | Vasaturo |
| 2996 | 1117 | Rec'd① males Rodriguez, amamo cell⑯ 10143 | Vasaturo |
| 2997 | 1125 | Removed Rivera's bedding cell#1 20154 | Vasaturo |
| 2998 | 1130 | N/m checked ⑲ males secure | Vasaturo |
| 2999 | 1131 | Relsd ④ males To HC lushaun, Soto, sgamoto, moore | Vasaturo |
| 3000 | 1135 | inmates Fed | Vasaturo |
| 3001 | 1145 | N/m checked ⑮ males secure | Vasaturo |
| 3002 | 1150 | Relsd ① male crawford | Vasaturo |
| 3003 | 1200 | N/m checked ⑭ males secure | Vasaturo |
| 3004 | 1215 | N/m checked ⑭ males secure | Vasaturo |
| 3005 | 1230 | N/m checked ⑭ males secure | Vasaturo |
| 3006 | 1245 | N/m checked ⑭ males secure | Vasaturo |
| 3007 | 1300 | N/m checked ⑭ males secure | Vasaturo |
| 3008 | 1315 | N/m checked ⑭ males secure | Vasaturo |
| 3009 | 1330 | N/m checked ⑭ males secure | Vasaturo |
| 3010 | 1345 | N/m checked ⑭ males secure | Vasaturo |

## November 15, 2003    B-Line

| | | | |
|---|---|---|---|
| 001 | 1355 | Incident North Housing unit - cell #011 Inmate Rivera, | B |
| XXXX | | Norberto # 20154 - See Reports | B |
| 002 | 1400 | NHU checked 13 males total all Secure - Incident | B |
| XXXX | | In cell #011 Continues | B |
| 003 | 1415 | NHU check 13 males total S.C. Incident continues | B |
| XXXX | | in cell #011 | B |
| 004 | 1429 | NHU checked - 13 males Secure - INCIDENT CONTINUES | B |
| XXXX | | In cell #011 | B |
| 005 | 1444 | NHU checked - 13 males Secure - INCIDENT continues | B |
| XXXXX | | In cell #011 | B |
| 006 | 1459 | NHU checked - 13 males Secure - INCIDENT continues | B |
| XXXX | | In Cell #011 | B |
| 007 | 1514 | NHU checked - 13 males Secure - INCIDENT continues | B |
| XXXXX | | In cell #011 | B |
| 008 | 1529 | NHU checked - 13 males Secure - INCIDENT continues | B |
| XXXX | | In Cell #011 | B |
| 009 | 1531 | TOT to Officer Otero | B |
| 010 | 1525 | C/O Otero on duty NHU - 13 males - All secure | Otero |
| 011 | 1530 | NHU Checked 13 males - Investigation cont. - ☺ | Otero |
| 012 | 1545 | NHU Checked (15 min check) 1 male - Invest. cont. | Otero |
| 013 | 1555 | Investigator w/ Inmate (Ivan Rodriguez) - | Otero |
| 014 | 1600 | NHU Checked 13 males investigation continues - | Otero |
| 015 | 1602 | Investigator departs unit inmate returned to progress office | Otero |
| 016 | 1615 | NHU 15 min. check 1 male - A/S Invest. cont. - ☺ | Otero |
| 017 | 1630 | NHU Checked 13 males A/S - Invest. cont. - ☺ | Otero |
| 018 | 1645 | NHU 15 min. Check - 1 male - ☺ Invest. cont. | Otero |
| 019 | 1646 | C/now on unit - ☺ | Otero |
| 020 | 1700 | NHU Checked 13 males - A/S Invest. cont. | Otero |
| 021 | 1715 | NHU (15 min) Check - 1 male - Invest. cont. - ☺ | Otero |
| 022 | 1730 | NHU Checked 13 males - A/S - ☺ | Otero |
| 023 | 1745 | NHU Checked 1 male (15 min. check) A/S | Otero |
| 024 | 1746 | Inmate (Rivera, Norberto) # 21054 (body Removed) (1350 Sign it) | Otero |
| 025 | 1800 | NHU Checked 13 males All secure - ☺ | Otero |
| 026 | 1815 | NHU Checked (1 male) - A/S | Otero |
| 027 | 1830 | NHU Checked 13 males - A/S - ☺ | Otero |
| 028 | 1845 | NHU Checked 1 male - A/S - ☺ | Otero |
| 029 | 1900 | NHU Checked 13 males A/S - ☺ | Otero |
| 030 | 1915 | NHU Checked 1 Male A/S - ☺ | Otero |
| 031 | 1930 | NHU Checked 13 males A/S - ☺ | Otero |
| 032 | 1945 | NHU Checked 1 male A/S - ☺ | Otero |
| 033 | 2000 | Cells 9, 10 11, 12 Cleaned - and Secure - ☺ | Otero |
| 034 | 2015 | NHU Checked 13 males - A/S 15 min ck ☺ | Otero |
| 035 | 2030 | NHU Checked - 13 males ☺ | Otero |
| 036 | 2045 | NHU Checked (15 min check) 2 males - ☺ | Otero |
| 037 | 2100 | NHU Checked 13 males - All Secure - ☺ | Otero |

Saturday O-line 11/15/03

| | | |
|---|---|---|
| 138 | 2115 | NHU Checked 13 Males All Secure ——— ○ |
| 139 | 2130 | NHU Checked (2 males (5min.ck) A/S ——— ○ |
| 140 | 2132 | S.S. memo ck N/units ——————— So |
| 141 | 2144 | NHU Checked 2 males ——All Secure ——— ○ |
| 142 | 2201 | NHU Checked 13 males A/S ——— ○ |
| | | All Inmates locked in w/out incident ——— ○ |
| 243 | 2213 | NHU Checked 2 Males all secure ——— ○ |
| 244 | 2217 | NU Checked 2 Males, all secure ——— ○ |
| 245 | 2231 | NHU Checked 13 males Secure ——— |
| 246 | 2246 | NHU Clerked 2 males, All Scure ——— |
| 247 | 2300 | NHU checked 13 males Secure ——— |
| 248 | 2315 | NHU clerked 2 males —All Secure ——— |
| 249 | 2330 | CO WALSH off duty with 13 males total |

X  X  All Secure —All equipment Accounted for

Sunday 11/16/03 A-Line 2230-0730 ———

**EXHIBIT 24**



**PUTNAM COUNTY**
**OFFICE OF THE SHERIFF**
THREE COUNTY CENTER
CARMEL, NEW YORK 10512



DONALD B. SMITH
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000

PETER H. CONVERY
UNDERSHERIFF
(845) 225 - 1460

**VIA FACSIMILE (518) 485-0016**
**AND REGULAR MAIL**

October 29, 2004

Commissioner/Chairman Frederick C. Lamy
Medical Review Board
State Commission of Correction
4 Tower Place
Albany, New York  12203-3764

     RE: Norberto Rivera
     DOD: 11/15/03
     FAC: Putnam County Jail
     MRB#: 03-M-212

Dear Commissioner/Chairman Lamy:

     We would like to thank the Commission for its thorough preliminary report in the above matter and for the opportunity to comment on it. We respectfully request that the Commission consider the points raised in this letter prior to issuing its final report.

     We accept the Commission's findings with the following comments:

- Paragraph #12 implies that the removal of bedding was a punitive measure. This is not the case. When an inmate becomes agitated or disruptive, all items in his or her cell, including personal effects and county property, are removed as a safety precaution. This is for the protection of the inmate and staff and is intended to prevent items from being thrown, damaged, or used to stop up the cell toilet. The inmate's bedding is always returned at lights out.

- Paragraph #14 terms the housing area officer's entry into the recreation yard an "unauthorized leaving of the housing area post without relief." Under the current COC staffing analysis, however, the recreation yard is considered part of the North Housing Unit. Accordingly, we do not view the officer's entry into the recreation yard as leaving his post.

PLAINTIFF'S EXHIBIT
47
8  5/13/06

Commissioner Lamy
October 29, 2004
Page 2

- Paragraph #19 - The duties of the North Housing Unit post are consistent with original staffing analysis guidelines and those duties have not been enlarged or expanded.

We accept the Commission's recommendations to the Sheriff of Putnam County, with the following comments:

1. The suicide screening policies and procedures in place are consistent with those set forth in the January 2000 *Trainer's Manual for Suicide Prevention and Crisis Intervention*. After the initial inmate screening was done in this case, a medical *and* mental health referral was made. Moreover, after screening by the medical doctor, a *second* mental health referral was made. Facility staff was therefore on notice that proper and necessary referrals had been made and the inmate was in the care of both medical and mental health providers. Immediately after the incident, the department Inspector General conducted a special inspection to ensure that suicide-screening procedures were in compliance with current directives.

2. The correction officer on duty during the incident was counseled regarding his "rounding" of the times of security checks. As part of our training in August, this issue was again covered and the staff was instructed to record actual times. With respect to why the officer entered the recreation yard on the incident date, it was determined that the officer went there to smoke a cigarette, which was permitted in that part of the facility.

3. The Commission's findings show that, as soon as officers gained entry to Mr. Rivera's cell, officers started CPR, a sergeant brought an oxygen respirator to aid the victim, and the facility nurse responded to assist in the rescue efforts. Just *eight minutes* after discovery, a paramedic unit was on scene. There are five oxygen units strategically placed about the facility, with one located at the North Housing Unit officer's desk. All correction officers are Certified First Responders, as a minimum, with many officers trained to an even higher level of certification. We believe that our level of staff training is well above standard and that the efforts of the emergency responders in this particular incident were outstanding.

4. We requested and obtained a new correction officer position for the post of Program Officer in the 2004 jail operating budget. The position has been filled and is awaiting post assignment. Based on an internal review and COC recommendations, we will continue to gather data for a comprehensive staffing analysis, which, we anticipate, will be requested in early 2005.

Commissioner Lamy
October 29, 2004
Page 3

Although not addressed to the Sheriff of Putnam County, we must comment on the Commission's recommendations to the Director of Putnam Family Services.

As the Commission is aware, the Sheriff directly contracts for jail medical services while the Putnam County Commissioner of Mental Health arranges for jail mental health services through a vendor. We are very concerned about the findings of the Medical Board relating to mental health care in the facility. In light of those findings, we have met with the County Mental Health Commissioner to explore ways to improve the level of psychiatric care provided to inmates.

If you have any questions or need any additional information, please do not hesitate to call me directly at (845) 225-3000. We thank the Commission and its staff for assisting us in achieving and maintaining the highest quality standards in our jail, and helping us to provide the very best level of service to our inmate population and to all the citizens of Putnam County.

Sincerely,

Donald B. Smith
Sheriff

DBS/jm

`

**EXHIBIT 25**

SATURDAY MAY 20, 2006 A Line

| | | |
|---|---|---|
| 18872 | 0001 | SHU Checked 6 Female secure |
| 18873 | 0030 | SHU checked 6 females all secure |
| 18874 | 0102 | SHU Checked 6 Female secure |
| 18875 | 0131 | SHU Checked 6 Female secure |
| 18876 | 0201 | SHU Checked 6 Female secure |
| 18877 | 0232 | SHU Checked 6 Female secure |
| 18878 | 0300 | SHU checked 6 Female all secure |
| 18879 | 0330 | SHU checked 6 Female all secure |
| 18880 | 0345 | SHU checked 6 females all secure |
| 18881 | 0400 | SHU checked 6 Female all secure |
| 18882 | 0430 | SHU checked 6 Female all secure |
| 18883 | 0502 | SHU Checked 6 Female secure |
| 18884 | 0531 | SHU Checked 6 female secure |
| 18885 | 0603 | SHU Checked 6 female secure |
| 18886 | 0619 | Shower/Razors offered 6 declined/declined |
| 18887 | 0627 | SHU Checked 6 female secure |
| 18888 | 0700 | SHU Checked 6 Female secure |

18889 0720
Date: 5/20/06 Day: Saturday Shift: A
Correction Officer Stangers on/off duty: SHU housing unit
Keys and logbook checked and reviewed. Inspected: supplies,
Utensils, post equipment, locks, gates, bars, screens, securely windows,
doors, firefighting equipment checked and found operational.
(Deficiencies noted below).
6 males/females counted on unit, 0 males/females off unit, 6 total
males/females assigned to unit, all secure. Unit on close supervision.

18890 0725
Date: May 20 2006 Day: Saturday Shift: B-time
Correction Officer Blanchone on/off duty: SHU housing unit.
Keys and logbook checked and reviewed. Inspected: supplies,
Utensils, post equipment, locks, gates, bars, screens, security windows,
doors, firefighting equipment checked and found operational.
(Deficiencies noted below).
6 males/females counted on unit, 0 males/females off unit, 6 total
males/females assigned to unit, all secure. Unit on ACTIVE supervision.

| | | |
|---|---|---|
| 18891 | 0730 | SHU checked - 6 Females secure |
| XXXXX | | Inmates Fed/ No refusal |
| 18892 | 0800 | SHU checked - 6 Females secure |
| 18893 | 0830 | SHU checked - 6 Females secure |
| 18894 | 0835 | Smoke Break Given at this time |
| 18895 | 0852 | NONE Admin meds at this time |
| 18896 | 0900 | SHU checked - 6 Females secure |
| 18897 | 0929 | SHU checked - 6 Females secure |
| 18898 | 0959 | SHU checked - 6 Females secure |
| 18899 | 1029 | SHU checked - 6 Females secure |
| 18900 | 1059 | SHU checked - 6 Females secure |
| 18901 | 1114 | Smoke Break Given at this time |
| 18902 | 1129 | SHU checked - 6 Females secure |
| XXXXX | | Inmates Fed/ No refusals |
| 18903 | 1159 | SHU checked - 6 Females secure |
| 18904 | 1229 | SHU checked - 6 Females secure |

Saturday May 20, 2006 B-LINE (con.)

| 18905 | 1255 | SHU Area Checked All Secure | B |
| 18906 | 1259 | SHU checked - 6 Females secure | B |
| 18907 | 1329 | SHU checked - 6 Females secure | B |
| 18908 | 1359 | SHU checked - 6 Females secure | B |
| 18909 | 1429 | SHU checked - 6 Females secure | B |
| 18910 | 1459 | SHU checked - 6 Females secure | B |
| 18911 | 1500 | C.O. Blanchard on duty | B |

Saturday May 20, 2006 C-LINE

| 18912 | 1529 | SHU checked - 6 Females secure | B |
| 18913 | 1559 | SHU checked - 6 Females secure | B |
| 18914 | 1629 | SHU checked - 6 Females secure | B |
| 18915 | 1633 | Inmates fed / No refusals | B |
| 18916 | 1659 | SHU checked - 6 Females secure | B |
| 18917 | 1729 | SHU checked - 6 Females secure | B |
| 18918 | 1732 | Smoke Break Given at this time | B |
| 18919 | 1759 | SHU checked - 6 Females secure | B |
| 18920 | 1829 | SHU checked - 6 Females secure | B |
| 18921 | 1859 | SHU checked - 6 Females secure | B |
| 18922 | 1929 | SHU checked - 6 Females secure | B |
| 18923 | 1940 | Smoke Break Given at this time | B |
| 18924 | 1959 | SHU checked - 6 Females secure | B |
| 18925 | 2029 | SHU checked - 6 Females secure | B |
| 18926 | 2059 | SHU checked - 6 Females secure | B |
| 18927 | 2104 | SHU checked - 6 Females secure | B |
| XXXXX | | Nurse Admin. Meds at this time | B |
| 18928 | 2115 | Smoke Break Given at this time | B |
| 18929 | 2129 | SHU checked - 6 Females secure | B |
| 18930 | 2159 | SHU checked - 6 Females secure | B |
| 18931 | 2200 | SHU is on General Supervision | B |
| 18932 | 2210 | S.S. Moran Check SHU | SS |
| 18933 | 2230 | SHU Checked (6) Females All Secure | Sloan |
| 18934 | 2300 | SHU checked - 6 Females secure | B |

| 18935 | 2330 | **Date:** May 20, 2006 **Day:** Saturday **Shift:** B-LINE |
| | | **Correction Officer** Blanchard on/off duty SHU housing unit. |
| | | (X) Keys and logbook checked and reviewed. Inspected supplies. |
| | | (X) Utensils, post equipment, locks, gates, bars, screens, security windows, doors, firefighting equipment checked and found operational. |
| | | (Deficiencies noted below) |
| | | (6) males/females counted on unit, (O) males/females off unit, (6) total males/females assigned to unit, all secure. Unit on Alternal supervision. |

| 18936 | 2330 | **Date:** 5/21/06 **Day:** Sunday **Shift:** A-Line |
| | | **Correction Officer** Giovanniello on/off duty SHU housing unit. |
| | | (X) Keys and logbook checked and reviewed. Inspected supplies. |
| | | (X) Utensils, post equipment, locks, gates, bars, screens, security windows, doors, firefighting equipment checked and found operational. |
| | | (Deficiencies noted below) |
| | | (6) males/females counted on unit, (O) males/females off unit, (6) total males/females assigned to unit, all secure. Unit on general supervision. |

| 18937 | 2331 | SHU checked 6 females secure | SG |

**EXHIBIT 26**





# PUTNAM COUNTY
# OFFICE OF THE SHERIFF
## THREE COUNTY CENTER
## CARMEL, NEW YORK 10512

**DONALD B. SMITH**
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000



STATE OF NEW YORK
**RECEIVED**

OCT 30 2006

STATE COMMISSION
OF CORRECTION

**PETER H. CONVERY**
UNDERSHERIFF
(845) 225 - 1460

**VIA FACSIMILE AND U.S. MAIL**
**(518) 485-2467**

October 25, 2006

Honorable Frederick C. Lamy
Commissioner & Chairman
Medical Review Board
New York State Commission of Correction
80 Wolf Road, 4th Floor
Albany, New York 12205

      RE:  Response to Preliminary Report
      MRB#:  06-M-84

Dear Commissioner Lamy:

    I am writing in response to the Commission's September 25, 2006 preliminary report, MRB#: 06-M-84, pertaining to the death of Inmate Spencer Sinkov at the Putnam County Correctional Facility on May 20, 2006.  In your preliminary report you asked for feedback from me on the findings of the Commission.  I thank you for giving me this opportunity and at the outset, want to thank you and your staff for your diligence in dealing with this matter as both the Commission and the Putnam County Sheriff's Office share a joint commitment and responsibility in ensuring the highest level of constitutional and humane supervision and treatment of all the inmates who are entrusted to our care.

    I have reviewed your preliminary report and respectfully provide the following input and recommendations for your consideration before you submit your final report.

Recommendations:

1.  After conducting our own independent review, I concur with the thrust of your recommendation that the correction officer who administered the suicide screening did not follow the policy and procedures of the Putnam County Jail in that he failed to notify the shift supervisor of a high suicide risk inmate and also failed to initiate constant supervision of a high risk inmate.  This employee is currently pending discipline in accordance with all applicable laws including Civil Service Law, Article 75, and in accordance with administrative and contractual procedures.

2. I concur with your findings that the shift supervisor assigned to the 11:30 p.m. to 7:30 a.m. tour failed to review the inmate's medical/risk assessment, per department policy and procedure, after being informed that the inmate was being placed on a fifteen minute supervisory watch. This supervisor is pending discipline in accordance with all applicable laws including Civil Service Law, Article 75, and in accordance with administrative and contractual procedures.

3. Per your request, I have reviewed your concern pertaining to whether AmeriCor is lawfully engaged in the practice of medicine in the State of New York. My findings in this matter are that while AmeriCor does provide some services and coordinates others, it is not engaged in the practice of medicine. Medical decision making at the Putnam County Correctional Facility is the sole province of Michael J. Nesheiwat, MD. Dr. Nesheiwat is a board certified New York State licensed physician, appointed by the Putnam County Legislature as our jail physician. He directly reports to me as the Sheriff. He functions as medical director and as such is responsible for all medical decision making in our facility. Our system is structured such that no one from my department or AmeriCor can overrule the physician's orders. Further, Dr. Nesheiwat is our police surgeon. He is also a member of the Putnam County Health Department with which we confer on medical matters on a regular basis. Again, the appointment of Dr. Nesheiwat was made by the County Legislature specifically to ensure that he is the jail physician and the AmeriCor contract was reviewed and approved by the County Attorney. I have the highest level of confidence in Dr. Nesheiwat and am grateful that we have a physician with his outstanding abilities serving our inmate population. I, therefore, do not concur with your Recommendation #3 and do not believe it should be contained in the final report.

In closing, I want you to know that we take the custody, care, and treatment of our inmates as one of the highest responsibilities of the Office of Sheriff. As such, we strive to not just achieve minimum standards, but to be a correctional facility of excellence. In that vein we have sought assistance from the National Institute of Corrections (NIC) and are currently conducting a study funded by the NIC that will look at all aspects of suicide prevention going above and beyond just achieving minimum standards in order to make the Putnam County Correctional Facility a model of excellence in this important area.

As always, we are available to work with your staff in continuing to make the Putnam County Correctional Facility the very best it can be in serving the citizens in our great County. Thank you again for your assistance.

Sincerely,

Donald B. Smith
Sheriff

DBS/jm

**EXHIBIT 27**



**EXHIBIT 28**

# AGREEMENT

### Between

## THE COUNTY OF PUTNAM

### And

## THE PUTNAM COUNTY SHERIFF

### And

## THE PUTNAM COUNTY DEPUTY SHERIFF'S BENEVOLENT ASSOCIATION, INC.

### JANUARY 1, 2000 THROUGH DECEMBER 31, 2002

## PREAMBLE

This Agreement by and between the County of Putnam and the Putnam County Sheriff, as joint employers (hereinafter referred to as the "County"), and the Putnam County Deputy Sheriff's Benevolent Association, Inc. (hereinafter referred to as the "Association"), represents the complete and final understanding on all bargainable issues between the County and the Association.

## ARTICLE I

## THE LAW GOVERNING THIS AGREEMENT

The law governing this Agreement shall be the Public Employees' Fair Employment Act, and the local laws of the County of Putnam, which are not inconsistent with the said act and laws.

## ARTICLE II

## RECOGNITION AND ASSOCIATION RIGHTS

A.     The County recognizes the Association as the sole and exclusive representative for employees of the Putnam County Sheriff's Department holding the titles of Corrections Officer, Corrections Sergeant, Cook, Principal Account Clerk, Dispatcher, Senior Office Assistant and Office Assistant and shall exclude the titles of Sheriff, Undersheriff, Chief Criminal Investigator/Inspector, Captain, Lieutenant, Warden, Deputy Warden, Deputy Sheriff, Deputy Sheriff Sergeant, Deputy Sheriff Investigator, Senior Investigator, First Sergeant, Confidential Secretary, Custodian and all other County employees.

B.     The Association shall act as such representative or agent in all negotiations with the County within the scope of this Agreement, and when requested to do so by the employee or employees in question, shall represent employees in grievances for the term of this Agreement.

C.     The County recognizes the right of the employees of the Putnam County Sheriff's

1

**EXHIBIT 29**

PLAINTIFF'S
EXHIBIT NO. _38_
FOR IDENTIFICATION
DATE: 1·30·08    RPTR: JB



# CHAIRMAN'S MEMORANDUM
# NO. 12-2007    October 31, 2007

**TO:** SHERIFFS, JAIL ADMINISTRATORS, POLICE CHIEFS, COMMISSIONERS OF CORRECTION, TRAINING COORDINATORS, DIRECTORS OF COMMUNITY SERVICES, FACILITY MEDICAL DIRECTORS, FACILITY MENTAL HEALTH PROGRAM DIRECTORS

**RE:** Blanket Policies for Use of Suicide Prevention Smocks

**THIS CHAIRMAN'S MEMORANDUM REPLACES NO. 8-2007 ISSUED AUGUST 10, 2007**

Recent audits of correctional facility policy and procedures by Commission Field Operations staff have revealed institutions that have a "blanket policy" regarding the use of suicide prevention smocks for inmates who have been placed on constant supervision or 'suicide watch.' The Commission believes it is important to clarify that such blanket policies violate *Minimum Standards* Part 7005, Prisoner Personal Hygiene and Part 7003, Security and Supervision.

Inmates who are placed on 'suicide' or constant watch need not necessarily be deprived of their clothing and issued a suicide smock. Pursuant to §7003.2 (d) "constant supervision," an inmate must be directly observed by correctional staff who are able to intervene expeditiously in any attempt at self-harm. Inmates are entitled to wear clothes under Part 7005 Prisoner Personal Hygiene, unless clothes, in and of themselves, present a threat to the safety and security of the facility, staff or inmates. When inmates are placed under the constant supervision of correction officers who can immediately intervene, the *need* to deprive *every* such inmate of their clothing, overriding Part 7005, is not valid.

Each inmate placed on suicide watch should be evaluated on an individual basis to determine if in fact removal of clothing and placement in a smock is necessary. Consistent with the requirements of 9 NYCRR Part 7005 pertaining to inmate clothing, facilities should develop a policy and procedure detailing the specific criteria for issuance of suicide prevention smocks in place of street or standard issue clothing. The written policy should include, but not be limited to, the following items:

1       person(s) authorized to evaluate and place an inmate in a smock
2       the reason(s) that may necessitate placement in a smock
3       the duration of time that the individual will wear the smock, and
4       an evaluation process of the inmates wearing the smock on a daily basis by the raking facility authority and/or medical and mental health staff where applicable.


Persons making these determinations shall include providers in authority from the medical or mental health staffs or the ranking facility authority. Identified inmates shall be placed under *constant supervision* for a period of time determined by the appropriate medical or mental health providers or by ranking facility

New York State Commission of Correction        Daniel L. Stewart, Chairman
80 Wolf Road, 4th Floor
Albany, New York 12205                          Frederick C. Lamy, Commissioner
(518) 485-2346                                  Frances T. Sullivan, Commissioner

authority. Determinations made by medical or mental health providers to apply or remove these precautions should be made subject to the endorsement of the ranking facility authority.

The Commission also stresses that placement of inmates in a suicide prevention smock in no way reduces supervision requirements while they are at risk for suicide attempt. No garment issue shall substitute for constant supervision of suicidal inmates as required by 7003.3(h) Additional supervision.

Questions and comments may be directed to Peggy Loffredo, Field Supervisor Forensic Medical Unit, Christopher Ost, Forensic Medical Unit or to the Field Supervisor in charge of the Regional Unit serving your facility.

_____

**Daniel L. Stewart, Chairman**

**New York State Commission of Correction**
**80 Wolf Road, 4th Floor**
**Albany, New York 12205**
**(518) 485-2346**

**Daniel L. Stewart, Chairman**

**Frederick C. Lamy, Commissioner**
**Frances T. Sullivan, Commissioner**

**EXHIBIT 30**



P-1

## PUTNAM COUNTY SHERIFF'S DEPARTMENT
### INTER-OFFICE MEMORANDUM

**Date:** September 28, 2004

**TO:**      Captain Robert LeFever

**FROM:**    Undersheriff Peter H. Convery

**SUBJECT:** New York State Commission of Corrections Recommendations
             Norberto Rivera – 11/15/03

Reference is made to the above subject; please prepare a written response to the following statements by Tuesday, October 5, 2004.

1. The Sheriff should review policy and procedure for performing suicide prevention screening. Policy should be in place to recognize that the screening tool is only valid for up to 72 hours and not on any inmate who is under the influence of alcohol or drugs. Procedures should be developed to re-screen any inmate who at the time of admission was under the influence as part of regular classification and risk assessment.

2. The Sheriff should question the housing area officer for the North Housing area for the accuracy of his documented times he completed rounds. Policy should be in place to have officers document the actual time they complete rounds and not rounded off to the nearest half or quarter hour. The reason for his absence from his assigned post when he entered the recreation yard should be determined and evaluated.

3. Re-evaluate available first aid equipment for emergency medical response situations. If oxygen and respirator equipment is available, training should be provided to assure proper usage and deployment with a non-breathing person.

4. The Sheriff should request an updated staffing analysis be completed with particular attention to the North Housing area post and its adjacent responsibilities.



PLAINTIFF'S
EXHIBIT NO. 39
FOR IDENTIFICATION
DATE 1.30.08  RPTR: DB

P-1                 **PUTNAM COUNTY SHERIFF'S DEPARTMENT**

**INTER - OFFICE MEMORANDUM**


Date: October 4, 2004

memos

**TO:**      Sheriff Donald Smith
             ATT: Undersheriff Peter Convey

**FROM:**    Captain Robert Le Fever

**SUBJECT:** NEW YORK STATE COMMISSION OF CORRECTION
             RECOMMENDATIONS NORBERTO RIVERA DEATH
             NOVEMBER 15, 2003


In response to your memorandum regarding the above subject, based on the information in your memorandum the following is provided;

1.     The polices and procedures in place are consistent with the training for suicide prevention. The training teaches that a suicide prevention screening is only good for 72 hours and should re-screen persons under the influence of alcohol or drugs.

       Inmate Rivera was referred to the medical unit for medical and mental health evaluation. The medical staff then referred inmate Rivera to the mental health provider, Doctor Sadler. Once this was done there was no basis for a Correction Officer to re-screen an inmate who was referred to the psychiatrist. At this point the care of the inmate was in the hands of Dr. Sadler, the mental health provider's psychiatrist.

2.     The Correction Officer on duty during the incident was counseled regarding his "rounding" of the times of his security checks. A review of his logbook entries other dates showed that he entered the "actual" time her conducted checks. As part of the training in August the recording of the actual time the security check was conducted into the logbook was covered.

3.     Correction Officers are Certified First Responder trained, which includes the administering of oxygen. There would be no additional training that would  be appropriate. A review of the oxygen units in the Facility found the number to be sufficient and their placement strategically located throughout

the Facility. The training of the medical personnel would be at the discretion of the medical provider.

4.  The Sheriff has already obtained a new Correction Officer position for the post of Program Officer. This was requested for the 2004 budget and most recently the position filled. Recently the process had begun to assign this post. Additionally, it was discussed with Mr. Keith Zobel, COC, Field Evaluator, that 2005 would be used for data gathering for a detail and concise staffing analysis.

Recommend that no response be sent to the Commission without meeting on this matter.

CC:    Lt P. O'Malley
       Sgt. K. Jackson

**EXHIBIT 31**





**PUTNAM COUNTY**
**OFFICE OF THE SHERIFF**
THREE COUNTY CENTER
CARMEL, NEW YORK 10512

DONALD B. SMITH
Brigadier General, U.S. Army (Ret.)
SHERIFF
(845) 225 - 3000

PETER H. CONVERY
UNDERSHERIFF
(845) 225 - 1460

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

November 20, 2006

Chairman Daniel L. Stewart
New York State Commission of Correction
80 Wolf Road, 4th Floor
Albany, New York 12205

Re: **Revised Staffing Analysis**

Dear Chairman Stewart:

I am writing in response to your letter of October 13, 2006 regarding the above subject. Per your request, I have reviewed the preliminary staffing analysis and am providing the following comments for your review and consideration.

After reviewing the staffing analysis, my staff and I concur with its conclusions and recommendations for a minimum staffing of 36 posts for a 24-hour period which results in a total of 57 full-time equivalent positions for the future operation of the Putnam County Jail. Since this revised preliminary staffing analysis calls for the hiring of eight additional correction officers over our current staffing level, I hereby propose that the new staffing analysis be implemented over a two-year period. This proposed two-year period would allow us to implement the new staffing levels, while mitigating the burden on the real property taxpayers of Putnam County and at the same time hiring, training and integrating quality correction officers on our team to fill these new positions.

If I receive your approval on this two-year implementation plan, I will propose to the Putnam County Executive and Legislative Board the hiring of two corrections officers during the third and fourth quarters of 2007; four correction officers during the first and second quarters of 2008; and two correction officers during the third and fourth quarters of 2008. With your approval and the approval of the leadership of Putnam County, we would in effect have this plan fully implemented during the last quarter of 2008.

Chairman Daniel L. Stewart
November 20, 2006
Page 2

     In closing, I wish to thank Mr. Terrence Moran and Mr. Keith Zobel for their hard work and diligence in putting together a very professional staffing analysis for the Putnam County Jail.  I also thank you and your staff for everything you do to help us make the Putnam County Jail the best it can possibly be in serving the citizens of Putnam County.

     Best wishes.  Keep the faith!

              Sincerely,

              Donald B. Smith
              Sheriff

DBS/jm

**EXHIBIT 32**

P-1                    **PUTNAM COUNTY SHERIFF'S DEPARTMENT**

                          **INTER - OFFICE MEMORANDUM**


                                                  Date: January 19, 2007

                                                  C; procedures 2020 011906

TO:         Sergeants J. Greenough, B. Chambers, K. Jackson,
            Sergeants C. Marro L. Lapolla

FROM:       Captain Robert Le Fever

SUBJECT:    **INTERIM STAFFING PROCEDURES**
            **EFFECTIVE IMMEDIATELY**
            **ADDENDUM TO MEMORANDUM 1 OF 1**
            JANUARY 2007


          The Commission of Correction has issued the final staffing analysis for the Facility based on the data that was compiled. The commission determined that there needs to be staff added as follows: one (1) officers on the A line in the Admission/Discharge [Booking] post and an Inmate Escort Officer on each the B Line and The C Line. The Commission has advised that these staffing requirements take effect immediately.


CONSTANT SUPERVISION

          When a constant watch post is initiated an Inmate Escort Officer or the Booking Officer may be used for the start of the watch. These Officers can not be used for the duration of the watch. If the watch is started at a time when an officer can not be forced to cover the watch then every effort must be made to have other staff cover the watch as it is another post.

          All constant watches will be posted in North Housing Unit 2. No other location will be used unless there are special circumstances that dictate otherwise.

END

CC: Lt. P. O'Malley
     Sgt. S. Hanley

**EXHIBIT 33**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. January 2006

----------------------------------------------------------------x

DONNY A. SINKOV, as Administrator
of the Estate of Spencer E. Sinkov,
deceased, DONNY A. SINKOV, and
HARA SINKOV,

Plaintiff(s),

<u>CIVIL CASE DISCOVERY PLAN</u>
<u>AND SCHEDULING ORDER</u>

- against -

07 Civ. 2866 (CLB) (MDF)

DONALD B. SMITH, individually
and in his official capacity as
Sheriff of Putnam County, et al.,

Defendant(s).

----------------------------------------------------------------x

**This Court requires that this case shall be <u>ready for trial</u> on or after November 30, 2007.**

The following Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel for the parties, pursuant to Rules 26(f) and 16 of the Federal Rules of Civil Procedure.

The case (is) (is not) to be tried to a jury.

Joinder of additional parties must be accomplished by ___6/8/07___ .

Amended pleadings may be filed until ___6/8/07___ .

**Discovery:**

1. Interrogatories are to be served by all counsel no later than ___6/15/07___ , and responses to such interrogatories shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 (shall) (shall not) apply to this case.

2. First request for production of documents, if any, to be served no later than ___6/15/07___

3. Depositions to be completed by ___8/29/07___ .

    a.     Unless counsel agree otherwise or the Court so orders, depositions are not to be held until all parties have responded to any first requests for production of documents.

    b.     Depositions shall proceed concurrently.

    c.     Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

    d.     If the defense of qualified immunity from suit as a matter of law has been or will be asserted by any defendant(s) with respect to any claim(s) in the case, counsel for any such defendant(s) shall, within thirty (30) days of this order depose

plaintiff(s) at least concerning all facts relevant to the issue of qualified immunity. Within thirty (30) days thereafter defendant(s) shall serve consistent with Local Rule 6.1 and file a motion under Rule 12(c) or Rule 56, returnable on a date posted in the New York Law Journal by Judge Brieant for hearing motions. The motion shall, in the absence of agreement of counsel, be limited to the issue of qualified immunity, and plaintiff(s) version of the events shall be assumed true for purposes of the motion. **Failure to comply with this provision of this Order shall operate as a waiver of the opportunity to resolve the issue of qualified immunity by motion prior to trial.**

4.    Any further interrogatories, including expert interrogatories, to be served no later than 9/11/07.

5.    Requests to Admit, if any to be served no later than 9/11/07.

6.    Additional provisions relating to discovery agreed upon by counsel for the parties ~~(are)~~ (are not) attached and made a part hereof.

7.    All discovery is to be complete by 10/12/07.

Dispositive motions, if any, must be served on notice as required by Local Civil Rule 6.1, and must be returnable before the Court on a published motion day, no later than three weeks before the ready for trial date.

Next Case Management Conference 12/7/07.
(This date will be set by the Court at the first conference)

Joint Pretrial Order is required only if counsel for all parties agree that it is desirable, or the Court so orders.

This case has been designated to the Hon. Mark D. Fox, United States Magistrate Judge at White Plains for discovery disputes if the Court is "unavailable" and for trial under 28 U.S.C. § 636(c) if counsel execute their consent in writing.

Strict compliance with the trial readiness date will be required. This Plan and Order may not be changed without leave of the Court or the assigned Magistrate Judge acting under a specific reference order.

Upon signing a Consent for Trial Before a United States Magistrate Judge, the Magistrate Judge will establish an agreed date certain for trial and will amend this Plan and Order to provide for trial readiness consistent with that agreed date.

SO ORDERED.

Dated: White Plains, New York
June 1, 2007

Charles L. Brieant, U.S.D.J.