UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DONNY SINKOV, as Administrator of the Estate of
Spencer E. Sinkov, deceased, DONNY A. SINKOV,
and HARA SINKOV,

                                    Plaintiffs,

        -against-

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSPEH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM,
New York, and AMERICOR, INC.,

                                    Defendants.
-------------------------------------------------------------------X

Docket No.: 07-CIV-2866
           (CLB)

**THE COUNTY
DEFENDANTS AND
SHERIFF SMITH'S
JOINT RESPONSE TO
PLAINTIFFS'
COUNTERSTATEMENT
OF FACTS PURSUANT
<u>TO LOCAL RULE 56.1</u>**

        Defendant Donald B. Smith (hereinafter referred to as "defendant Smith" or "Sheriff Smith"), by his attorneys, MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP, and defendants County of Putnam, Joseph A. Vasaturo, and Louis G. Lapolla (collectively referred to as the "County defendants"), by their attorneys, SANTANGELO, RANDAZZO & MANGONE, LLP, submit this Joint Response to Plaintiffs' Counterstatement of Facts, pursuant to Local Civil Rule 56.1.

        Preliminarily, we object to plaintiffs' submission to the extent that it improperly includes non-material facts as well as arguments, in contravention of Fed. R. Civ. P. 56 and the Court's Local Rules.  <u>*See e.g.*</u> *Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2001 WL 1263299 (S.D.N.Y. 2001).  Notwithstanding, and subject to said objection, we set forth the following responses.

        1.      Admit the statements in paragraph number 1.

2.      Deny the unsupported implication of a "reminder," and admit the remaining statements in paragraph number 2.

3.      Admit the statements in paragraph number 3.

4.      Deny the unsupported implication as to the frequency of reference in future publications, and admit that the document which was issued three years prior to Sheriff Smith's appointment provides the quoted language cited in paragraph 4.

5.      Admit that the Commission provided the documents referred to in paragraph 5, including the 2005 correspondence from the Commission noting that required documentation was being maintained by the PCCF with regard to inmates placed on constant supervision.  *See* Berg Dec., Exh. 2.

6.      Admit the statements in paragraph 6.

7.      Admit the statements in paragraph 7.

8.      Admit the statements in paragraph 8.

9.      Admit the statements in paragraph 9.

10.     Deny the unsupported, irrelevant statement as to suicidal intent in the first sentence and deny that a "Yes" answer to any of the 16 questions would indicate a likelihood of harm as implied in the second sentence, and admit the remaining statements in paragraph 10.

11.     Admit the statements in paragraph 11.

12.     Admit the statements in paragraph 12, except deny the mischaracterizations of Sheriff Smith's testimony set forth in the related footnote.  In this regard, Sheriff Smith testified that he spoke to several jail officials (Capt. Butler, then-Lt. LeFever,

2

and then-Sgt. O'Malley) at the time of his appointment regarding suicide prevention and compliance with Commission standards. *See* Kleinberg Dec., Exh. E at pp. 9-10. The discussions pertained to, in part, the annual inspections performed by the Commission and the approval of the PCCF suicide screening form by the Commission. *See* Kleinberg Dec., Exh. E at pp. 11-12.

13.     Admit the statements in paragraph 13.

14.     Deny any implication as to intent, and admit that prior to Sheriff Smith's appointment, the PCCF generated its own version of the Suicide Screening Prevention Guidelines based on the Commission's form, in order to create a single medical packet for intake. *See* Kleinberg Dec., Exh. E at p. 13.

15.     Admit the statements in paragraph 15 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates. *See* Kleinberg Dec., Exh. I at p. 15.2 and 15.6

16.     Admit the statements in paragraph 16.

17.     Deny the statements in paragraph 17 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates. *See* Kleinberg Dec., Exh. I at p. 15.2 and 15.6. Further, while plaintiffs refer to the deposition testimony of Corrections Officer Michael Oliver on these issues, we note that Oliver admitted having very little experience as a booking officer. *See* Kleinberg Dec., Exh. U at pp. 7-8.

18.     Deny the statements in paragraph 18 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal

inmates.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

19.     Deny the statements in paragraph 19 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates. In this regard, the booking officer was required to notify the tour supervisor of a high-risk suicide screening result and the tour supervisor was, in turn, required to institute a constant watch of the inmate.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

20.     Deny the statements in paragraph 20 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates. In this regard, the booking officer was required to notify the tour supervisor of a high-risk suicide screening result and the tour supervisor was, in turn, required to institute a constant watch of the inmate.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

21.     Deny the statements in paragraph 21 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates. In this regard, the booking officer was required to notify the tour supervisor of a high-risk suicide screening result and the tour supervisor was, in turn, required to institute a constant watch of the inmate.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I

at p. 15.2 and 15.6.

22.    Deny the statements in paragraph 22 and respectfully refer the Court to the PCCF suicide prevention training materials which is based on training manuals received from the Commission and the NYS Office of Mental Health.  *See* Kleinberg Dec., Exh. E at pp. 44-45; Exh. J.

23.    Deny the statements in paragraph 23.  *See* Kleinberg Dec., *See* Exh. E at pp. 26-27, 48-49; Exh. F at pp. 61-62; Exh. G at pp. 36, 85.

24.    Deny the statements in paragraph 24 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

25.    Deny the statements in paragraph 25 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

26.    Deny the statements in paragraph 26 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates.  *See* Kleinberg Dec., Exh. E at pp. 48, 69; Exh. F at pp. 55, 58, 72-74, 76, 105-08, 157, 160; Exh. G at pp. 30-32, 37-38; Exh. I at p. 15.2 and 15.6.

27.    Deny the statements in paragraph 27 as a suicide risk resulted in a constant watch. *See* Kleinberg Dec., Exh. F at p. 55.

28.    Deny the statements in paragraph 28 and respectfully refer the Court to the PCCF

suicide prevention training materials which is based on training manuals received from the Commission and the NYS Office of Mental Health.  *See* Kleinberg Dec., Exh. E at pp. 44-45; Exh. J.

29.   Deny the statements in paragraph 29 and respectfully refer the Court to the PCCF suicide prevention training materials which is based on training manuals received from the Commission and the NYS Office of Mental Health.  *See* Kleinberg Dec., Exh. E at pp. 44-45; Exh. J.

30.   Admit the statements in paragraph 30 as pertain to the medical staff.

31.   Deny the statements in paragraph 31 as there is no statement in the cited testimony as to any personal knowledge of such a practice as pertains to PCCF staff.  *See* Coon Dec., Exh. B at p. 47.

32.   Deny the statements in paragraph 32, as set forth in Smith's observations of Americor.  *See* Kleinberg Dec., Exh. E at pp. 124-25.

33.   Deny the statements in paragraph 33, refer to the PCCF written policy manual, and admit that Capt. LeFever testified the policy was incepted in November of 2005.  *See* Kleinberg Dec., Exh. I at pp. 15.2 and 15.6; Coon Dec., Exh. A at pp. 93-97.

34.   Deny the statements in paragraph 34, and refer to the PCCF written policy manual. *See* Kleinberg Dec., Exh. I at pp. 15.2 and 15.6.

35.   Deny the statements in paragraph 35, as Capt. LeFever testified the policy inception date was November of 2005 and denied any impropriety with regard to the policy. *See* Coon Dec., Exh. A at pp. 93-97.

36.   Admit the statements in paragraph 36, except deny the implication of backdating and

impropriety.  _See_ Coon Dec., Exh. A at pp. 93-97.

37.    Deny the statements in paragraph 37, as Sheriff Smith testified that the allegation of backdating is one of the issues that will be fully addressed upon the completion of this litigation.  _See_ Kleinberg Dec., Exh. E at pp. 59-60.

38.    Deny the statements in paragraph 38, as Sheriff Smith testified that the allegation of backdating is one of the issues that will be fully addressed upon the completion of this litigation.  _See_ Kleinberg Dec., Exh. E at pp. 59-60.

39.    Deny the statements in paragraph 39 and respectfully refer the Court to the PCCF Policy Manual which required the institution of a constant watch for suicidal inmates.  _See_ Kleinberg Dec., Exh. I at p. 15.2 and 15.6.

40.    Admit the statements in paragraph 40.

41.    Admit the statements in paragraph 41 and set forth that the completion and provision of the medical screening packet to Americor does not always take two hours, as the testimony indicates that it can take far less depending on the circumstances.  _See_ Kleinberg Dec., Exh. F at pp. 90-91; Exh. G at pp. 29-30.

42.    Admit the statements in paragraph 42.

43.    Admit the statements in paragraph 43.

44.    Deny the implication as to the assertion of contrary contentions, and admit that all of the referenced individuals have the authority to call for the implementation of a constant watch as contained in paragraph 44.

45.    Admit the statements in paragraph 45.

46.    Admit the statements in paragraph 46.

47.     Admit the statements in paragraph 47.

48.     Admit the statements in paragraph 48.

49.     Admit the statements in paragraph 49.

50.     Admit the statements in paragraph 50.

51.     Admit the statements in paragraph 51.

52.     Deny the statements to the extent they call for a legal conclusion, except admit that all of the referenced individuals had the authority to make a mental health referral as set forth in paragraph 52.

53.     Admit the statements in paragraph 53, except deny any implication that such a policy does not exist simply because Smith testified that he could not specifically identify one at the time of his deposition.  *See* Kleinberg Dec., Exh. E at pp. 72-74.

54.     Admit the statements in paragraph 54.

55.     Admit the statements in paragraph 55.

56.     Admit that, following a month long investigation, members of the Putnam County Sheriff's Narcotics Enforcement Unit arrested Spencer Sinkov on May 19, 2006, and Sinkov was charged with five counts of Criminal Possession of a Controlled Substance in the third degree and five counts of Criminal Sale of a Controlled Substance in the third degree, as set forth in paragraph 56.  *See* Kleinberg Dec., Exh. N at p. 2.

57.     Deny the statement that Lapolla was always the most senior person in the PCCF during his shift, except admit that Lapolla was typically, not always, the highest ranking official and most senior member during his shift.  *See* Kleinberg Dec., Exh.

8

G at p. 11-12.  Admit the remaining statements set forth in paragraph 57.

58.    Deny the statement that Sinkov answered "Yes" to 10 questions, as several of the subject questions were to be answered by the booking officer's own impressions and observations.  Admit that there were "Yes" answers and shaded area questions as set forth in paragraph 58.

59.    Deny the statement that Sinkov was identified as suicidal at intake to the extent it implies the officers' impressions of Sinkov's behavior, appearance, or conduct. Notwithstanding, admit the remaining portion of paragraph 59.

60.    Admit the statements in paragraph 60, and add that plaintiffs omitted the relevant section of Lapolla's testimony wherein he recalled asking Sinkov if he would have any problems with withdrawal and Sinkov replied "No."  _See_ Kleinberg Dec., Exh. G at pp. 57-58.

61.    Admit the statements in paragraph 61.

62.    Admit the statements in paragraph 62.

63.    Deny the unsupported, irrelevant statement as to importance in the first sentence and admit the cited language is set forth in the document referred to in paragraph 63.

64.    Admit the statements in paragraph 64.

65.    Deny the unsupported statement as to withdrawal in the first sentence, and admit the remaining statements in paragraph 65.

66.    Deny the statements in paragraph 66, except admit that the Commission found Nurse Clarke's assessment to be inadequate and refer the Court to the document for the relevant language.    _See_ Kleinberg Dec., Exh. N.    Further, deny the

mischaracterizations of Sheriff Smith's testimony as set forth in the related footnote. In this regard, Sheriff Smith testified that he spoke to Kevin Duffy on various topics, including (rather than limited to) the issue of vital signs. *See* Kleinberg Dec., Exh. E at pp. 154-56.

67.    Admit the statements in paragraph 67.

68.    Deny the statements in paragraph 68, except admit that the notification of heightened supervision can be in writing or verbally. *See* Kleinberg Dec., Exh. G at pp. 10-11, 30-32.

69.    Deny the statements in paragraph 68, except admit that notification of heightened supervision can be in writing or verbally and a P-1 memo would be generated. *See* Kleinberg Dec., Exh. F at p. 69.

70.    Deny that plaintiffs' citation to page 16 says what plaintiff alleges or the challenge to credibility as the questions and answers speak for themselves, and admit the remaining statements in paragraph 70.

71.    Deny that all of Oliver's log book entries refer simply to Sinkov lying down, as there are other actions listed, deny that Oliver's log book entries pertaining to Sinkov were conducted every half hour as opposed to every fifteen minutes, as Sinkov was also part of the routine 30 minutes checks, and deny that the testimony cited from Oliver's deposition was that he had a blocked view of Sinkov's face during all of his checks as plaintiff states in paragraph 71.

72.    Deny that whether Lapolla was aware of the score on the suicide screening form presents a question of fact as to defendant Smith as alleged in paragraph 72.

73.     Admit the statement in paragraph 73 and notes that LeFever testified he was not sure who told him this.

74.     Deny that Lapolla recalled specifics as to the reason for the 15 minute watch and admit he testified that he assumed it was for heroin withdrawal.

75.     Admit the statements in paragraph 75.

76.     Admit the statements in paragraph 76.

77.     Admits the statements in paragraph 77.

78.     Deny the unsupported implication as to the source of the information, and admit that the cited documents contain the statements in paragraph 78.

79.     Deny the allegations as to warranting follow up in paragraph 79, as the document states that Sinkov did not demonstrate physical or verbal indications he was contemplating suicide and the nurse completed a referral form that morning.  *See* Berg Dec., Exh. 17.

80.     Admit the statements in paragraph 80.

81.     Deny that Wendover testified Sinkov said he was going through withdrawal as set forth in paragraph 81, and admit that Wendover testified Sinkov responded affirmatively to his father's question as to whether he had done drugs the preceding evening and also responded "I'm not too bad now" in response to his father's questioning about withdrawal.  *See* Kleinberg Dec., Exh. V at p. 56.

82.     Deny that Wendover was asked about withdrawal and/or medical treatment, and admit that he was asked only about classification.  *See* Kleinberg Dec., Exh. V at pp. 52-54, 57.

11

83.  Deny the statements in paragraph 83, except admit that plaintiff was thin upon admission to the PCCF and appeared in satisfactory physical condition to all staff he encountered prior to his suicide.  See Kleinberg Dec., *See* Exh. F at pp. 128, 206, 220; Exh. G at pp. 53-54, 62, 71-72, 74-75; Exh. U at pp. 94-100; Exh. V at pp. 49-50; Coon Dec., Exh. D at pp. 74, 76, 78; Exh. E at pp. 78-80.

84.  Deny the statements in paragraph 84, as Nurse Waters testified she confused Sinkov with a female patient she was awaiting due to Sinkov's long hair and Waters denied calling Sinkov by name.  *See* Coon Dec., Exhibit E at pp. 78-80

85.  Admit that the document from Americor exchanged in this litigation provides the language referenced in paragraph 85.  *See* Berg Dec., Exh. 11.

86.  Admit that the document from Americor and the deposition testimony referenced in paragraph 86 state the language provided.

87.  Admit the statements in paragraph 87.

88.  Admit that Americor's written policies provides the cited language in paragraph 88, and that Sinkov was not placed on constant supervision prior to his death, but deny that PCCF staff did not place individuals at risk of withdrawal under constant observation as the staff was authorized to, and did, implement such supervision as they deemed necessary regardless of a "low" suicide screening score.  *See* Kleinberg Dec., Exh. E at pp. 26-27.

89.  Deny the allegations of paragraph 89, as the Americor staff could request heightened supervision.  *See* Exh. F at p. 92.

90.  Admit the statements in paragraph 90.

91.    Admit the statements in paragraph 91.

92.    Admit the statements in paragraph 92.

93.    Deny that either Wendover or Waters recalled the events as plaintiffs portray them in paragraph 93, and respectfully refer the Court to the cited deposition testimony. _See_ Kleinberg Dec., Exh. V at pp. 73-74; Coon Dec., Exh. E at pp. 96-97, 99.

94.    Deny that either Wendover or Waters recalled the events as plaintiffs portray in paragraph 94, and respectfully refer the Court to the cited deposition testimony.. _See_ Kleinberg Dec., Exh. V at pp. 73-74; Coon Dec., Exh. E at pp. 96-97, 99.

95.    Admit the statements in paragraph 95.

96.    Admit the statements in paragraph 96.

97.    Admit the statements in paragraph 97.

98.    Admit the statements in paragraph 98.

99.    Admit the statements in paragraph 99.

100.   Deny that the cited testimony refers to heroin, as opposed to a general reference to drugs, and admit the remaining statements of paragraph 100.

101.   Deny that the Rivera suicide and Sinkov suicides share a similarity as alleged, and admit the remaining statements of paragraph 101. _See_ Kleinberg Dec. Exhs. K and N.

102.   Admit that the Commission report contained the cited language, and note that plaintiffs fail to include the last portion of the cited paragraph which recommended to the Sheriff that the additional duties of the North Housing Unit officer "should be reviewed as a part of an updated staffing analysis." _See_ Kleinberg Dec., Exh. K.

13

103.    Deny the statements in paragraph 103, as Sheriff Smith testified that the North
        Housing Unit officer was no longer responsible for monitoring the four cell housing
        unit, was no longer for monitoring jail programs during the week, and that the
        overwhelming majority of jail programs were during the week as opposed to
        weekends.  _See_ Kleinberg Dec., Exh. E at pp. 168-174.  Further admit that the Sheriff
        sought and obtained a staffing analysis from the Commission which approved of the
        weekday program officer and laid out the staffing for the North Housing Unit.  _See_
        Kleinberg Dec., Exh. R at pp. 5 and 10 of 11.

104.    Deny the statements in paragraph 104, as Sheriff Smith testified that the North
        Housing Unit officer was no longer responsible for monitoring the four cell housing
        unit, was no longer for monitoring jail programs during the week, and that the
        overwhelming majority of jail programs were during the week as opposed to
        weekends.  _See_ Kleinberg Dec., Exh. E at pp. 168-174.  Further admit that the Sheriff
        sought and obtained a staffing analysis from the Commission which approved of the
        weekday program officer and laid out the staffing for the North Housing Unit.  _See_
        Kleinberg Dec., Exh. R at pp. 5 and 10 of 11.

105.    Deny the statements in paragraph 105 as Sheriff Smith testified that the North
        Housing Unit officer was no longer responsible for monitoring the four cell housing
        unit, was no longer for monitoring jail programs during the week, and that the
        overwhelming majority of jail programs were during the week as opposed to
        weekends.  _See_ Kleinberg Dec., Exh. E at pp. 168-174.  Further admit that the Sheriff
        sought and obtained a staffing analysis from the Commission which approved of the

weekday program officer and laid out the staffing for the North Housing Unit. *See* Kleinberg Dec., Exh. R at pp. 5 and 10 of 11.

106.     Deny that Sheriff Smith's deposition testimony is contradictory as plaintiffs' counsel asked if there were changes since 2005 and Sheriff Smith responded that there had been, as the revised staffing analysis was delivered by the Commission since that date. *See* Kleinberg Dec., Exh. E at pp. 168-174. Notwithstanding, the Sheriff sought and obtained a staffing analysis from the Commission which approved of the weekday program officer and laid out the staffing for the jail. *See* Kleinberg Dec., Exh. R at pp. 5 and 10 of 11.

107.     Admit that in 2005 the Sheriff sought and a staffing analysis from the Commission which was received in October of 2006 and laid out the staffing for the jail,. *See* Kleinberg Dec., Exh. E at p. 174; Exh. R at pp. 5 and 10 of 11.

108.     Deny the allegation of impropriety towards Smith in paragraph 108 and respectfully refer the Court to the document referred to by plaintiffs, and admit that Vasaturo testified he knew not to round off his log book entries. *See* Kleinberg Dec., Exh. F at pp. 261-62; Berg Dec., Exh. 24.

109.     Deny the unsupported allegations of impropriety towards Vasaturo and note there is no such finding in the Commission report. *See* Kleinberg Dec., Exh. F at pp. 261-62; Exh. N.

110.     Deny the statements in paragraph 110, and deny the implication of backdating and impropriety. *See* Coon Dec., Exh. A at pp. 97-100.

111.     Deny the statements in paragraph 111. See Kleinberg Dec., Exh. E at pp. 20-22.

112.    Admit the statements in paragraph 112.

113.    Deny the statements in paragraph 113, except admit that prior to October or November of 2007, Sheriff Smith believed that the PCCF suicide screening form was a replica of the Commission's ADM 330 form and thereafter directed LeFever to cease using the PCCF form.  *See* Kleinberg Exh. E at pp. 13-14, 19-20.

114.    Admit the statements in paragraph 114.

115.    Admit the statements in paragraph 115.

116.    Deny the statements in paragraph 116, as the parties have stipulated to extend the time for such disciplinary action to November 20, 2008.  *See* Kleinberg Reply Dec., Exh. A.

117.    Deny the statements in paragraph 117, as the parties have stipulated to extend the time for such disciplinary action to November 20, 2008.  *See* Kleinberg Reply Dec., Exh. A.

118.    Deny the statements in paragraph 118, as the parties have stipulated to extend the time for such disciplinary action to November 20, 2008.  *See* Kleinberg Reply Dec., Exh. A.

Dated: Mineola, New York
         June 9, 2008                    MIRANDA SOKOLOFF SAMBURSKY
                                         SLONE VERVENIOTIS LLP
                                         Attorneys for Defendant
                                         DONALD B. SMITH

                                         _____
                                         Adam I. Kleinberg (AIK-0468)
                                         Melissa Holtzer (MH-6636)
                                         The Esposito Building
                                         240 Mineola Boulevard
                                         Mineola, New York 11501

(516) 741-7676
Our File No.: 07-730

SANTANGELO, RANDAZZO
& MANGONE, LLP
Attorneys for Defendants
County of Putnam, Joseph A.
Vasaturo, and Louis G. Lapolla

_____
James A. Randazzo, Esq. (JAR-0156)
151 Broadway
Hawthorne, NY 10532
(914) 741-2929

TO:     Kim Berg, Esq.
        LOVETT & GOULD, LLP
        Attorneys for Plaintiffs
        222 Bloomingdale Road
        White Plains, NY 10605
        (914) 428-8401

        Timothy Paul Coon, Esq.
        WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
        Attorneys for Defendant Americor, Inc.
        3 Gannett Drive
        White Plains, NY 10604
        (914) 323-7000