UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

DONNY SINKOV, as Administrator of the Estate of Spencer E. Sinkov, deceased, DONNY A. SINKOV, and HARA SINKOV,

Plaintiffs,

-against-

DONALD B. SMITH, individually and in his official capacity as Sheriff of Putnam County, JOSPEH A. VASATURO, individually, LOUIS G. LAPOLLA, individually, THE COUNTY OF PUTNAM, New York, and AMERICOR, INC.,

Defendants.

---------------------------------------------------------------------------x

Docket No.: 07-CIV-2866 (CLB)

**REPLY MEMORANDUM OF LAW**

MIRANDA SOKOLOFF SAMBURSKY
SLONE VERVENIOTIS LLP
Attorneys for Defendant
DONALD B. SMITH
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676
Our File No.: 07-730

Of Counsel:
Adam I. Kleinberg
Melissa Holtzer

## ARGUMENT

### POINT I

### PLAINTIFFS' FEDERAL CLAIMS AGAINST SHERIFF SMITH MUST FAIL AS PLAINTIFFS HAVE NOT AND CANNOT ESTABLISH DELIBERATE INDIFFERENCE.

While, at times, plaintiffs' seek to sum up Sheriff Smith's testimony as "self-serving," plaintiffs cannot overcome the sworn testimony of this high-ranking elected official and the related findings of the New York State Commission of Correction (the "Commission") which support the instant motion for summary judgment. In this regard, the Record before the Court demonstrates that the Commission reviewed the PCCF Suicide Prevention Screening Guidelines (also referred to hereinafter as the "PCCF form") both before and after the 2003 Norberto Rivera suicide in the jail and approved the use of the PCCF form, both implicitly and explicitly through their investigations. See Kleinberg Dec., Exh. E at pp. 11-12; 38-39; Exh. K. In fact, even after Spencer Sinkov's 2006 suicide, the Commission failed to articulate any appreciable distinction between the PCCF form and the ADM-330 form. See Kleinberg Dec., Exh. N. This is not surprising as the forms look nearly identical and the purpose of forms is the same -- to identify inmates with an increased risk of inflicting harm to themselves. See Kleinberg Dec., Exhs. H and O.

It follows that Sheriff Smith was not aware of any distinction between the PCCF form and the Commission approved ADM-330 form until this litigation and there is no evidence in the record demonstrating anything to the contrary. See Kleinberg Dec., Exh. E at pp. 13-14. Further, the Commission's direct communications with Sheriff Smith failed to provide any indication that either the substance or contents of the PCCF form were inadequate in any way. See Kleinberg Dec., Exh. N and Q. As such, plaintiffs cannot show that Sheriff Smith knew, and disregarded, that the use of

the PCCF form would result in a substantial risk of serious inmate harm. It is irrefutable that Sheriff Smith never drew such an inference, which is fatal to plaintiffs' federal claims against the Sheriff.

There can also be no dispute of plaintiffs' contention that the New York State Corrections Law imposes certain legal duties upon Sheriff Smith. However, those duties do not automatically give rise to a federal due process violation, such as those alleged and premised upon a claim of deliberate indifference. Here, there is no dispute that, prior to Sheriff Smith's appointment, the PCCF generated a suicide screening form based on the State form and included it into a single intake medical packet for the PCCF booking officers. See Kleinberg Dec., Exh. E at pp. 11-13, 38-39; Exh. F at pp. 64-65. The questions posed to the PCCF inmates were identical to those set forth in the ADM-330 form. See Kleinberg Dec., Exhs. H and O. Thus, the PCCF was properly complying with what plaintiffs' counsel identifies as the very thrust of the form -- "to identify those who posed a risk of harming themselves." See plaintiffs' Memorandum of Law at pp. 4-5, 11. Accordingly, Sheriff Smith cannot be held deliberately indifferent towards the identification of incoming prisoners who presented a risk of suicide or by continuing the prior administration's practice of administering the PCCF suicide screening form.

Plaintiffs devote significant time in their opposition papers to another irrefutable fact -- that the PCCF form did not contain an express directive to institute a constant watch for suicidal prisoners. Yet, this alone is not dispositive on a deliberate indifference analysis.

Here, the PCCF had a written policy manual in place that was distributed to each PCCF corrections officer and, through a two-step process, mandated the institution of a constant watch for suicidal prisoners. As set forth in Sheriff Smith's moving papers, PCCF booking officers were required to notify their tour supervisor where an inmate scored an 8 or more on the suicide screening

form, or where there was an affirmative answer noted to a shaded area question. *See* Kleinberg Dec., Exh. F at pp. 72-74, 76; Exh. G at pp. 30-31; Exh. I at p. 15.2. The tour supervisor, in turn, was required to implement a constant watch of the inmate and issue paper clothing to the inmate until a medical professional ordered otherwise. *See* Kleinberg Dec., Exh. E at p. 69; Exh. F at pp. 55, 58, 105-06; Exh. I at p. 15.6.

While plaintiffs challenge the omission of the constant watch directive from the PCCF form itself, they impermissibly seek to gloss over the fact that the PCCF policy manual required the very same level of supervision, a constant watch, demanded by the Commission. Although the PCCF form did not expressly direct the booking officer to institute such a constant watch, the corrections officers' policy manuals rectified any deficiency in the PCCF form.

Plaintiffs mischaracterize Sheriff Smith's testimony on these issues. While Smith conceded at his deposition that the PCCF form itself did not specifically direct the implementation of a constant watch, he also unequivocally testified that the policy manual (also referred to as the "Red Book") cured any such absence. *See* Kleinberg Dec., Exh. E at pp. 42-43, 70. Thus, the desired result was the same, as the PCCF had a written policy in place directing the implementation of a constant watch on all arriving inmates whose suicide screening form revealed an increased likelihood of a suicide attempt.

Consistent with this written policy manual, defendant Joseph Vastauro testified that a PCCF booking officer must notify a tour supervisor when an inmate scores an eight or higher on the suicide screening form or where there is an affirmative answer in an immediate referral category on the

form. See Kleinberg Dec., Exh. F at pp. 72-74, 76; Exh. G at pp. 30-31.[1] Thus, had Vasaturo followed the policies he acknowledged, the matter would have been in the hands of the supervisor to institute a constant watch.[2] It follows that the Commission acknowledged the existence of the PCCF's suicide prevention intake policies, and the individual officers' failure to adhere to such policies, in the investigation into Sinkov's death. See Kleinberg Dec., Exh. N.

As set forth in plaintiffs' own opposition papers, the challenged official "must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference." See plaintiffs' Memorandum of Law at p. 15 *citing Pagan v. County of Orange*, 2001 WL 32785 (S.D.N.Y. 2001). Plaintiffs seek to satisfy this burden by alleging that Smith was deliberately indifferent "by not having policies and procedures in place mandating that constant watch be implemented." See plaintiffs' Memorandum of Law at p. 15. This statement is patently false and entirely disproved by the evidence summarized in the preceding paragraphs and in Sheriff Smith's initial motion papers.

To the extent that plaintiffs summarily challenge the suicide prevention training provided to the PCCF staff, the Record demonstrates that the Jail Administrator oversaw the training and that there was a training officer and staff. See Kleinberg Dec., Exh. E at pp. 36-37. While he did not attend every training session provided in the jail, Sheriff Smith viewed the training manuals, was aware that they were derived from the Commission's manuals, and observed that the manuals communicated the requirement of a constant watch for suicidal inmates. Id. at pp. 43-45; Exh. J at

---

1 While plaintiffs refer to the deposition testimony of Corrections Officer Michael Oliver on these issues, we note that Oliver admitted having very little experience as a booking officer. See Kleinberg Dec., Exh. U at pp. 7-8.

Section VI.

In fact, while plaintiffs argue that Smith was negligent or indifferent on the issue of training, Smith was very concerned with the issue of training from the date of his appointment in 2002. *Id*. at p. 46. Almost immediately, he procured an additional $150,000 from the County legislature in order to implement training on various topics, including suicide screening. *Id*. at p. 46.

Plaintiffs have failed to proffer any evidence that Sheriff Smith ever knew, or should have known, prior to Sinkov's death that the training staff did not communicate the constant watch requirement to PCCF staff members. Further, while plaintiffs now claim that the PCCF officers were not implementing these written policies, they fail to demonstrate how Sheriff Smith was apprised of such a problem before Sinkov's death. Rather, Sheriff Smith believed that his subordinates were carrying out these policies pertaining to suicidal inmates based on his personal observations, participation in staff briefings, and the significant number of constant watches conducted in the PCCF during his tenure. *See* Kleinberg Dec., Exh. E at pp. 26-27, 48-49. Based on all of the aforementioned, Sheriff Smith cannot be held deliberately indifferent towards the training of the PCCF staff on suicide prevention.

Plaintiffs have taken great license with the August 2006 memorandum generated by the Jail Administrator, Captain Robert LeFever, produced in this case. However, while proffering various theories as to when and why it was created, there is no evidence that Sheriff Smith was in any way involved with the creation of the document. Rather, Sheriff Smith has expressly denied being involved in its drafting or issuance. *See* Kleinberg Dec., Exh. E at p. 65.

---

2 While plaintiffs allege that the deadline has passed without disciplinary activity against defendants Vasaturo and Lapolla, the time for such action has been extended by Stipulation to November 20, 2008. *See* Kleinberg Reply Dec., Exh. A.

Captain LeFever has confirmed this, testifying that it was his decision, and his decision alone, to put out the memo and that he did not consult with anyone prior to drafting and issuing the memo. See Declaration of Timothy Coon, Exh. A at pp. 96-97. Captain LeFever felt his memo would allow for "better accountability." *Id* at p. 97.

Similarly, plaintiffs have also characterized the relevant events surrounding the staffing analysis. Here, the Commission recommended in January of 2005 that Sheriff Smith request an updated staffing analysis with particular attention to the North Housing area post and its adjacent responsibilities, such as program supervision. *See* Kleinberg Dec., Exh. J. Sheriff Smith complied with this finding, writing to the Commission in March of 2005 to request a complete staffing analysis of the PCCF. *See* Kleinberg Dec., Exh. Q. While plaintiffs allege that the Sheriff could have been more proactive with regard to staffing, Sheriff Smith's March 2, 2005 letter noted that he had already taken affirmative steps prior to the Commission's recommendation by assigning a full-time program supervisor. *Id*. Further, when the Commission issued a revised staffing analysis in October of 2006 (months after Sinkov's suicide), the Commission confirmed that the PCCF program officer should be a five day a week, rather than a seven day a week post. *See* Kleinberg Dec., Exh. E at pp. 134-35, 173-74; 176-78, 182; Exhs. Q and R.

Finally, we note that plaintiffs' reliance on the Court's decision in *Pagan v. County of Orange*, 2001 WL 32785 (S.D.N.Y. 2001) is misplaced. In *Pagan*, the Court denied, *inter alia*, that portion of the defendants' motion seeking to dismiss the claims against the defendant Sheriff. However, unlike the Record in the instant case, the Court in *Pagan* found an issue of fact as to whether the Sheriff knew of the problems at the Jail and failed to remedy the situation. Here, there is simply nothing in the Record to demonstrate Sheriff Smith's awareness prior to Sinkov's death of

any problems in the use of the PCCF form or in the training of PCCF corrections officers as to suicide prevention.

Accordingly, we respectfully submit that dismissal of the federal claims against Sheriff Smith is warranted as a matter of law.

## POINT II

### PLAINTIFFS CANNOT MAINTAIN THEIR DUPLICATIVE OFFICIAL CAPACITY CLAIM AGAINST SHERIFF SMITH.

Plaintiffs' opposition fails to address Point II in Sheriff Smith's initial Memorandum of Law providing that dismissal of the official capacity claims against the Sheriff is warranted as the claims are duplicative of those against the County.

Where, as here, a defendant moves for summary judgment and the opposing party wholly fails to address the argument in any manner, courts will deem the claim as abandoned and award summary judgment to the moving party. See e.g. *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F.Supp.2d 233, 249 (S.D.N.Y. 2002).

Accordingly, as defendant's arguments are unopposed, dismissal of the official capacity claims is warranted as a matter of law.

## POINT III

### SHERIFF SMITH IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiffs' opposition to the merits of Sheriff Smith's qualified immunity defense largely mirrors the arguments set forth on the issue of deliberate indifference. As fully set forth in Point I, *supra*, plaintiffs cannot overcome that there was a written policy in place during the relevant period that mandated a constant watch for suicidal inmates arriving at the PCCF.

Further, as explained *supra*, there is no evidence in the Record before the Court to demonstrate that Sheriff Smith was ever aware of a time that his jail staff was not properly administering the training manuals regarding the PCCF's suicide prevention policies. Sheriff Smith played no role in the "backdated policy" to which plaintiffs repeatedly cite in their opposition papers.

Accordingly, Sheriff Smith has demonstrated that it was "objectively reasonable" for him to believe that his challenged acts did not violate the inmates' constitutional rights. *See* *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

With regard to plaintiffs' procedural objection to defendants' assertion of a qualified immunity motion, the Second Circuit has recognized that the Court may excuse a waiver or procedural default on a qualified immunity motion where it is adequately set forth in a summary judgment motion. *See* *Zarvis v. Albany County*, 75 Fed.Appx. 837, 838 (2d Cir. 2003).

Based on all of the aforementioned, defendant Smith respectfully requests that the Court dismiss plaintiff's First and Third Causes of Action against him as a matter of law.

## CONCLUSION

For all of the foregoing reasons, defendant Sheriff Smith respectfully requests that this Court grant summary judgment in his favor and dismiss this action against him in its entirety, along with granting such other relief as the Court may deems just, proper, and equitable.

Dated: Mineola, New York
June 9, 2008

MIRANDA SOKOLOFF SAMBURSKY
SLONE VERVENIOTIS LLP
Attorneys for Defendant
DONALD B. SMITH

_______________________________
Adam I. Kleinberg (AIK-0468)
Melissa Holtzer (MH-6636)
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676
Our File No.: 07-730

TO: Kim Berg, Esq.
LOVETT & GOULD, LLP
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, NY 10605
(914) 428-8401

James Randazzo, Esq.
SANTANGELO, RANDAZZO & MANGONE, LLP
Attorneys for the County Defendants
151 Broadway
Hawthorne, NY 10532
(914) 741-2929

Timothy Paul Coon, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Defendant Americor, Inc.
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000