UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DONNY A. SINKOV, as Administrator of the Estate of      CIVIL ACTION NO.
Spencer E. Sinkov, deceased, DONNY A. SINKOV, and       07 Civ. 2866, (CLB)
HARA SINKOV,

                Plaintiffs,

  - against -

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM, New York,
and AMERICOR, INC.,

                Defendants.
-------------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICOR, INC.'S MOTION FOR SUMMARY JUDGMENT


                      Respectfully submitted,

           WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

      By: _____
           Timothy P. Coon (TC 3357)
           Bernice E. Margolis (BM0702)
           Attorneys for Defendant AmeriCor
           3 Gannet Drive
           White Plains, New York 10604
           (914) 323-7000
           File No.: 07621.00174

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 2

ARGUMENT

      THE PLAINTIFF HAS FAILED TO SET FORTH A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE. AS SUCH, SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMERICOR ......................................................................... 3

      NO JURY COULD REASONABLY FIND THAT AMERICOR, INC. ACTED WITH DELIBERATE INDIFFERENCE TO THE MEDICAL NEEDS OF THE DECEDENT ...................................................................................................................... 4

            A) Nurse Clarke was not Deliberately Indifferent ........................................... 8

            B) Nurse Waters was not Deliberately Indifferent .......................................... 8

            C) AmeriCor's written policies were not deliberately indifferent ................... 9

            D) AmeriCor did not fail to train its staff ......................................................... 9

            E) AmeriCor was not deliberately indifferent to the decedent's heroin use .................................................................................. 11

            F) The Decedent was not Suffering from a Serious Medical Condition ....................................................................................... 13

                1) Heroin Use ........................................................................................ 13

                2) Heightened Suicide Risk .................................................................. 14

            G) There is no evidence to support a finding of deliberate indifference under the Subjective Prong ......................................... 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990) ..................................................................4, 6

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2nd Cir. 1999). ...................................................3

*Brock v. Lester Wright, et. al.*, 315 F.3d 158 (2nd Cir. 2003) .................................................13

*Brown v. G.W. Harris*, 240 F.3d 383 (4th Cir. 2000), *quoting Farmer*, 511 U.S. at 844........................................................................................................................................6

*City of Canton v. Harris*, 489 U.S. 378 (1989)..................................................................6, 10

*Cooke ex.rel. Estate of Tessier v. Sherriff of Monroe County*, 402 F.3d 1092 (11th Cir. 2005) ......................................................................................................................4

*Cooper v. County of Washtenaw*, 222 Fed.Appx. 459, 2007 WL 557443 (C.A.6.(Mich.))...............................................................................................................13

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998), *cert. denied*, 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 .................................................................................3

*Gayton v. Michael McCoy, Sheriff of Peoria County, Illinois, et. al.*, 2008 U.S.Dist. LEXIS 32378 ..................................................................................................15

*Gonzales v. Cecil County*, 221 F.Supp.2d 611 (221 F.Supp.2d 611 (D.Md.2002) ...........14

*Kelley v. County of Wayne*, 325 F.Supp.2d 788..............................................................14, 15

*Kelsey v. City of New York*, 2006 WL 3725543 (E.D.N.Y. 2006).........................................7

*Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998) .......................................................................6

*Mathis v. Cotton*, 1998 U.S. Dist. 17639 (N.D. Tx. 1998) .................................................14

*Morrison v. Washington County*, 700 F.2d 678 (11th Cir. 1983).......................................14

*Novak v. County of Wood*, 226 F.3d 525 .........................................................................9, 15

*Pagan v. County of Orange*, Not Reported in F.Supp.2d, 2001 WL 32785 (S.D.N.Y. 2001).................................................................................................................15

*Rellergert v. Cape Girardeau County*, 924 F.2d 794 (8th Cir. 1991).....................................4

2019953.1

*Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992)..................................................6, 9

*Scotto v. Almenas*, 143 F.3d 105...........................................................................................3

*Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 ..............12, 13

## STATE CASES

*Zuckerman v. City of New York*, 49 N.Y.2d 557 (1980).......................................................3

## FEDERAL STATUTES

42 U.S.C. §1983................................................................................................... passim

2019953.1

-2-

## PRELIMINARY STATEMENT

Defendant AmeriCor, Inc. respectfully submits this reply in further support of its motion pursuant to Fed. R. Civ. P. 12 (c) and 56 seeking to dismiss the plaintiffs' complaint against AmeriCor, Inc. in its entirety. AmeriCor's motion should be granted in its entirety as the plaintiffs have failed to raise a triable issue of fact.

## THE PLAINTIFF HAS FAILED TO SET FORTH A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE. AS SUCH, SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMERICOR

"Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." Id. citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998).

While on a motion for summary judgment all facts must be construed in favor of the non-moving party, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but…must set forth specific facts showing that there is a genuine issue for trial." Id. Citing Fed. R. Civ. P. 56(e). In doing so, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." Id. citing Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Conclusory statements, mere conjecture, speculation or hearsay is insufficient to defeat a motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 454 (2nd Cir. 1999); Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980).

In the instant matter, the plaintiffs have attempted, in 80 pages, to raise a genuine issue of material fact that is in dispute. Despite their efforts, a review of the papers reveals that the alleged facts set forth in the plaintiffs' opposition are nothing other than speculative, conclusory and based upon inadmissible hearsay.

## POINT I

## NO JURY COULD REASONABLY FIND THAT AMERICOR, INC. ACTED WITH DELIBERATE INDIFFERENCE TO THE MEDICAL NEEDS OF THE DECEDENT

This case, while tragic, cannot be ameliorated by an attempt to attach constitutional blame where it does not belong. The Fourteenth Amendment does not contemplate liability upon the premise that all self-inflicted harm is the fault of someone else other than the one who harmed himself. Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

Deliberate indifference is a difficult burden for a plaintiff to meet, and plaintiffs cannot sustain such a burden in the instant matter. Rellergert v. Cape Girardeau County, 924 F.2d 794 (8th Cir. 1991). The fact that the decedent committed suicide is not probative of this issue. Id. at 796. See also, In Cooke ex.rel. Estate of Tessier v. Sherriff of Monroe County, 402 F.3d 1092 (11th Cir. 2005)(a failure to prevent suicide is not held to constitute deliberate indifference).

The question is not whether, in hindsight, all that could have been done was done; rather the inquiry must be whether the defendant met the constitutional requirements. Id. at 797. Indifference is apathy or unconcern. Id. at 797. In the presence of implemented precautionary procedures (i.e. repeated discussions, 15 minute watch and the preparation of a Mental Health Referral Form) a defendant cannot be held to be deliberately indifferent. Id. at. 797.

In the instant matter, during the booking process, the decedent spoke with Nurse Clarke. Nurse Clarke discussed the decedent's heroin use, how he was feeling and whether he was suffering from withdrawal. The decedent stated that he felt fine. Nurse Clarke then advised the decedent to either notify medical or a corrections officers if he began to withdraw and feel ill so that medical care could and would be provided. After being processed through the booking process, the decedent was placed on a 15 minute watch by the PCCF. As such, every 15 minutes

a corrections officer checked on the decedent to see how he was. Approximately eleven hours after the decedent was admitted to the facility, and two hours before his death, the decedent spoke with Nurse Waters. The decedent looked fine, was without signs of withdrawal and did not make any complaints about feeling sick or withdrawing from heroin. Nurse Waters filled out a Mental Health Referral Form due to the fact that the decedent had used heroin within 24 hours of his admittance to the facility and had family problems. The decedent was returned to his cell and remained on a 15 minute watch up until the time he hung himself.

After admittance to the facility, in addition to speaking with Sergeant LaPolla and Corrections Officer Vasaturo about his heroin use, the decedent spoke with AmeriCor nurses on two occasions in the approximately thirteen hours he was at the facility. He was checked on every 15 minutes by PCCF staff. He was told, on more than one occasion, by more than one person, that should he become ill due to withdrawal, notify anyone and help would be provided. Action was taken and care and consideration was provided to the decedent. The fact that the decedent ultimately committed suicide, while tragic, cannot be said to be the result of any deliberate indifference by AmeriCor staff.

The plaintiffs claim that AmeriCor was deliberately indifferent as while they had the authority to do so, it did not place the decedent on a continuous watch, which was required by state policy and procedure. However, this claim cannot lie. AmeriCor's policy, as well as its contract with Putnam County, requires AmeriCor to comply with PCCF policies concerning steps to be taken with regard to the Suicide Screening Form, i.e. that the shift supervisor be consulted regarding an inmate who is at a high risk of suicide. This PCCF placed the decedent on a 15 minute watch. The fact that AmeriCor did not adopt a policy that an inmate who scores eight or higher or has one shaded box on the form be placed on constant watch does not

constitute deliberate indifference. *See*, Rhyne v. Henderson County, 973 F.2d 386 (5th Cir. 1992)(Failure to place a suicidal inmate on a constant watch was not deliberate indifference); City of Canton v. Harris, 489 U.S. 378 (1989). The fact that the decedent was talked to on several occasions and placed on a fifteen minute watch is evidence of concern, not apathy. Rhyne at 393. *See also*, Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990)(Although normal procedure, failure to remove the decedent's belt and shoe laces did not constitute deliberate indifference to a medical need where the decedent did not express any concern over his own wellbeing or behaved in a manner that he would commit suicide).

Assuming arguendo that AmeriCor was aware of the score the decedent received on his Suicide Screening Form, (a fact the plaintiffs cannot prove) AmeriCor still cannot be held to have been deliberately indifferent to the needs of the decedent. One "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Brown v. G.W. Harris, 240 F.3d 383 (4th Cir. 2000), *quoting* Farmer, 511 U.S. at 844. As set forth more fully above, both Nurse Clarke and Nurse Waters spoke to the decedent about his heroin use and how he felt throughout the time he was at the facility. Having been placed on a 15 minute watch by the PCCF, there can be no knowledge imputed to AmeriCor that the decedent was either withdrawing from heroin or was suicidal. Two different AmeriCor nurses on two separate occasions spoke to the decedent, plus the filing out of the Mental Health Referral Form, combined with the 15 minute watch he was placed on by the PCCF is a reasonable response to any perceived risk by AmeriCor. *See,* Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)(a court must focus on the precautionary action taken, not those that could have been taken). *See also*, Brown v. G.W. Harris, 240 F.3d 383 (4th Cir. 2000)(Placing a inmate at risk for suicide on a less

than constant watch was not deliberately indifferent. The fact that other action could have been taken does not negate the actions that were taken. Negligence is not deliberate indifference); Kelsey v. City of New York, 2006 WL 3725543 (E.D.N.Y. 2006)(where affirmative actions are taken to prevent suicide, deliberate indifference is lacking, even in the face of potentially negligent actions).

Plaintiffs misapprehend AmeriCor's role in the booking process. As set forth more fully in AmeriCor's Rule 56.1 statement and Counterstatement, the Suicide Screening Form is not "shown" to AmeriCor staff. The medical packet, as a matter of course, is placed on the door of the AmeriCor office. AmeriCor nurses review the form to ensure completeness. (See Deposition Transcript of Peter Clarke, Page 32, Lines 8-12, annexed as Exhibit "D" to the Declaration of Timothy P. Coon). There was no PCCF policy which required PCCF employees to notify AmeriCor if an inmate scored eight or higher or had one or more shaded boxes checked. (See Deposition Transcript of Captain Robert LeFever, Page 153, annexed as Exhibit "A" to the Declaration of Timothy P. Coon). There was no policy or requirement that employees of the PCCF were to consult with AmeriCor. (See Deposition Transcript of Sergeant Louis LaPolla, Pages 29-30, annexed to the Declaration of Adam I. Kleinberg as Exhibit "G"). Further, AmeriCor's role with respect to the booking process at the time of the decedent's suicide was to ensure that an inmate was medically fit to be admitted into the facility. (See AmeriCor Procedure Receiving Screening bates stamped 494-495, annexed to the Declaration of Kim Berg as Exhibit "11").

The AmeriCor policy as cited to by plaintiffs relating to Special Needs Inmates is not specifically designed for mentally ill or suicidal inmates. It includes inmates who are chronically ill, physically handicapped, pregnant, frail or elderly, terminally ill, mentally ill or suicidal,

developmentally disabled, infected with communicable diseases, on dialysis or under the age of 18. As set forth more fully in AmeriCor's Rule 56.1 statement and counterstatement, there was no indication that the decedent was at suicidal or suffering from withdrawal imputed to AmeriCor.

### A. Nurse Clarke was not Deliberately Indifferent

While the plaintiffs claim that it is question of fact whether Nurse Clarke knew the results of the Suicide Screening Form, and thus he was deliberately indifferent in failing to call for a constant watch for the decedent, there is simply no evidence in admissible form to support this claim. The PCCF administered the suicide screening form. The PCCF alone made the decision to place the decedent on a 15 minute watch. While Nurse Clarke did review the medical packet, which included the suicide screening form to check that it was completed, there is no evidence he read the contents of the form. Assuming arguendo that he did, the PCCF form does not require a constant watch, nor did AmeriCor policy. Plaintiffs cannot identify a single fact to support its claim that AmeriCor was deliberately indifferent. As set forth more fully above, what could have been done in hind sight is not sufficient evidence to find deliberate indifference and the fact that steps were taken in regard to the decedent negates any claim the plaintiffs have that AmeriCor was deliberately indifferent. Further, there is no evidence, as imputed to AmeriCor that the decedent was either suicidal or withdrawing from heroin such that medical care was required and not provided.

### B. Nurse Waters was not deliberately indifferent

There is no evidence that Nurse Waters was deliberately indifferent to the medical needs of the decedent. Nurse Waters followed AmeriCor policy and filled out a Mental Health Referral Form based upon the decedent's heroin use and family problems. The fact that Nurse Waters

-8-

now cannot recall why she filled out the form has no bearing on this matter. The plaintiffs claim that Nurse Waters must have obtained this information from the Suicide Screening Form is pure speculation and insufficient to raise a question of fact. Nurse Waters testified that she discussed the decedent with Nurse Clarke when the shift was changed. There is no evidence that she was required to place the decedent on constant watch nor is there any evidence that the decedent exhibited any signs or symptoms that would have indicated to Nurse Waters that the decedent required a constant watch or medical attention.

C.   **AmeriCor's written policies were not deliberately indifferent**

Plaintiffs claim that AmeriCor's policy of providing for a 15 minute watch for inmates determined to be at risk constitutes deliberate indifference. However, there is no evidence this policy was deliberately indifferent to the decedent. Indeed, this policy is consistent with the PCCF policy and was what was required of AmeriCor by its contract. Assuming arguendo that the policy was "in violation of state law," liability still cannot be imposed as Section 1983 provides no remedy for an alleged failure to meet state law requirements. *See*, Novak v. County of Wood, 226 F.3d at 531-532. *See also*, Rhyne v. Henderson County, 973 F.2d 386 (5th Cir. 1992)(a failure to adopt a policy does not constitute deliberate indifference).

D.   **AmeriCor did not fail to train its staff**

There is no evidence that AmeriCor staff were not adequately trained to tend to the needs of the decedent.

A failure to train inquiry must extend beyond the question of whether the individual nurses were poorly trained. The record evidence establishes that Nurse Clarke had training and vast experience in treating patients with mental illness and high risk of suicide. The appropriate question is whether the training is adequate, given the experience of the staff; and if it is not, the

-9-

question becomes whether such inadequate training can justifiably be said to represent …policy." City of Canton v. Harris, 489 U.S. 378, 390 (1989). In addition, a plaintiff must prove that the failure to train illustrates that AmeriCor acted reckless, intentionally or with gross negligence." Id. at 423. Further, this failure must amount to such deliberate indifference to the rights of the inmates in order to be actionable. Id. at 388. As set forth more fully above, the plaintiffs cannot make this showing.

It is only when a failure to train reflects a "deliberate" or "conscious" choice can an entity be held liable. There could be no deliberate or conscious choice here as AmeriCor was not contractually obligated to administer the Suicide Screening Form nor was it responsible for the placement of an inmate at the time of the decedent's suicide. PCCF policies and procedures did not require corrections officers to coordinate with AmeriCor staff with respect to the Suicide Screening Form nor cell assignment based upon the results of the suicide screening form. AmeriCor cannot be held to have failed to train their staff for such a responsibility it did not undertake nor was required to take[1].

While plaintiffs attempt to claim that Nurse Waters alleged stopping of CPR twenty-five minutes before the arrival of EMS personnel further illustrates a failure to train, this statement is belied by the evidence. First, there is absolutely no evidence that the alleged stopping of CPR caused or contributed to the death of the decedent. Secondly, a review of the Ambulance Call Report and the testimony of Nurse Waters illustrate that such a claim cannot possibly be supported. (See Ambulance Call Report annexed to the declaration of Kim Berg as Exhibit 20, See also Statement of Susan Waters annexed to the declaration of Kim Berg Exhibit 21).

---

[1] While AmeriCor contests the admissibility of the plaintiffs' statement that AmeriCor staff received suicide detection training with respect to the administration of the Suicide Screening Form only after the decedent's suicide, we note that this training was not done prior to the decedent's suicide as it was not the responsibility of, nor did AmeriCor contract with the PCCF for these services at that time.

-10-

### E. AmeriCor was not deliberately indifferent to the decedent's heroin use

Contrary to the assertions of the plaintiffs, the fact that the decedent used heroin within 24 hours of his admittance into the facility does not constitute evidence that the decedent was suffering from heroin withdrawal. While the plaintiffs claim, without support of any expert opinion, that withdrawal from heroin can be so physically and psychologically painful and uncomfortable that suicide may seem to be the only relief, there is absolutely no evidence that the decedent was suffering from any symptoms of withdrawal. According to AmeriCor procedures, such withdrawal signs include: a runny nose, watery eyes, irritability, loss of appetite, hot/cold flashes, anxiety, agitation, muscle cramps, nausea, vomiting, tremors, tachycardia, hypertension, elevated temperature, diarrhea, dehydration, panic or insomnia. (See AmeriCor Opiate Detoxification Procedure annexed to the declaration of Kim Berg as Exhibit 11, bates stamped p. 518). There is absolutely no evidence that the decedent had any of these symptoms. Indeed, Nurse Clarke testified, and his contemporaneous notes confirm, that the decedent was not in withdrawal. AmeriCor simply cannot be held to be deliberately indifferent to a medical condition that was not present.

Without any evidentiary support, the plaintiffs boldly state that the decedent was "clearly smack in the middle" of the withdrawal range, i.e. between 24 to 72 hours. They even go so far as to state that at the time of his suicide, that it was 37 hours since the decedent last used heroin. This statement is based upon speculation, which is not admissible. The decedent reported that he had used heroin within 24 hours prior to his admission into the facility. There is no evidence to support a claim that the decedent had last used heroin 37 hours before his death just as there is no evidence that the decedent was going through withdrawal such that he required medical care or had indicators that he wanted to kill himself due to the "pain of withdrawal." The assumptions

of the plaintiffs are nothing other than speculation, which cannot defeat a motion for summary judgment.

Contrary to the bare allegations of the plaintiffs, AmeriCor did evaluate the decedent for the potential onset of symptoms of withdrawal. During this evaluation, Nurse Clarke was told by the decedent that he was fine. Nurse Waters saw the decedent and noted he was fine, without tremors and had a steady gait. Even during the visitation with his parents (which we note was merely two hours before the decedent committed suicide) he stated that he was not that bad. The decedent was advised to notify a corrections officer if he began to feel ill. The decedent was monitored by corrections staff every 15 minutes. Had the decedent shown signs of requiring medical care for withdrawal, he would have received it. Had the decedent shown signs of progression, he would have received medical treatment.

The plaintiffs' statement that Nurse Waters could be found to have been deliberately indifferent as she did not place the decedent on a constant watch is erroneous and not supported by the evidence. There is absolutely no evidence to support a claim that Nurse Waters should have placed the decedent on a constant watch after she saw him outside of the medical office. The decedent was in good spirits, non-tremulous and had a steady gait. He appeared fine. Further, while the decedent may have appeared "awful, appeared sick, appeared clammy, and was very pale," to his parents, presuming this statement is true, it is still not evidence that the decedent was either actively withdrawing from heroin, that "his symptoms of withdrawal were intensifying" or that he required medical assistance. Indeed, plaintiffs confirm that the decedent was "not that bad."[2]

---

[2] Plaintiffs reliance upon Woodward v. Correctional Medical Services of Illinois, Inc., 368 F.3d 917 (7th Cir. 2004) is misplaced. First, there is no evidence that AmeriCor deviated from any existing policies and procedures in place at the time of the decedent's suicide. Secondly, Woodward involved a case where the medical health services were

The plaintiffs have failed to submit evidence, in admissible form, to illustrate that AmeriCor had reason to believe that the decedent was suicidal or that he was withdrawing from heroin such that medical care was required. As such, their Fourteenth Amendment claim must be dismissed as a matter of law.[3]

### F. The Decedent Was Not Suffering from a Serious Medical Condition

The plaintiffs misapprehend AmeriCor's position on this issue. At no time did AmeriCor state that an inmate at a high risk of suicide or one who is actively withdrawing from heroin cannot be considered a serious medical condition, the objective prong of the analysis.

#### 1) Heroin Use

The plaintiffs do not dispute that in the absence of evidence that a serious medical condition existed, a claim cannot lie. *See, e.g.* Brock v. Lester Wright, et. al., 315 F.3d 158 (2nd Cir. 2003). AmeriCor's position is that the decedent did not show signs that could be imputed to AmeriCor that he was suicidal or actively withdrawing from heroin such that medical care was required.

The plaintiffs attempt to state that since AmeriCor's policy/procedure does state that heroin withdrawal can include "anxiety, agitation, muscle cramps, nausea, vomiting and tremors and tachycardia, hypertension, increased respirations, elevated temperature, diarrhea and

---

required to administer the preliminary suicide screening intake of an inmate. AmeriCor did not have this role. Further Woodward was an example of egregious behavior by the medical health services as they delayed ordering required mediation in the hopes that inmate would be transferred, had a month long backlog in intake evaluations of inmates, employees were told to disregard policies and procedures in an effort to minimize costs and employees were intoxicated on the job with no consequences. Further, in Woodward, the decedent was outwardly suicidal. He was crying, depressed and stated that he felt suicidal. A mental health referral form was completed. However, at no time, unlike the decedent in the instant matter, was the decedent in the Woodward matter placed on any type of precautions whatsoever.

[3] Plaintiffs' reliance upon Cooper v. County of Washtenaw, 222 Fed.Appx.459, 2007 WL 557443 (C.A.6.(Mich.)) is also misplaced. In Cooper, the Court did not find that proximate cause is not required in a deliberate indifference analysis. In cased where a condition is "non-obvious" as is in the instant matter, an inquiry into proximate cause is appropriate.

-13-

dehydration...confusion, slurred speech, ataxia and hallucinations" that this is somehow evidence that the decedent was actively going through heroin withdrawal. However, there is absolutely no evidence that the decedent suffered from any of these symptoms.

The case law cited by plaintiffs to support their positions is easily distinguishable from the instant matter.

In <u>Gonzales v. Cecil County</u>, 221 F.Supp.2d 611 (D.Md.2002) the court held one could infer that heroin withdrawal in that case presented a serious medical need. Unlike the instant matter, in <u>Gonzales,</u> the decedent identified himself as heroin user who was likely to undergo symptoms and complications from withdrawal. During his stay at the facility, the decedent was violently ill, resulting in pneumonia. Despite his complaints to the facility nurses, he was only provided with an over-the-counter stomach remedy. Here, in the instant action, the decedent offered no complaints. The decedent Sinkov in this matter stated that he was fine. <u>Morrison v. Washington County</u>, 700 F.2d 678 (11th Cir. 1983) is similarly distinguishable. <u>Morrison</u>, unlike the instant matter, is a case regarding alcohol withdrawal that was not treated despite that the decedent was experiencing delirium tremens.

As there is absolutely no evidence that the decedent required medical treatment while in PCCF for heroin withdrawal, the alleged heroin withdrawal cannot be considered a "serious medical condition" which required attention by AmeriCor. See, <u>Kelley v. County of Wayne</u>, 325 F.Supp. 2d 788 (E.D.Mich. 2004); <u>Mathis v. Cotton</u>, 1998 U.S. Dist. 17639 (N.D. Tx. 1998).

**2) Heightened Suicide Risk**

The plaintiffs do not dispute that, with respect to the objective standard, that there is no evidence that can be imputed to AmeriCor to indicate that the decedent was at high risk of suicide.

-14-

2018281.1

### G. There is no evidence to support a finding of deliberate indifference under the Subjective Prong

Assuming arguendo that this Court finds that the decedent was suffering a "serious medical condition" so as to require medical attention, the plaintiff's claim still must fail as the plaintiffs have failed to show that AmeriCor was deliberately indifferent to the medical needs of the decedent.

As the decedent exhibited no behavior that would have put AmeriCor on notice that there was a significant likelihood that the decedent would hurt himself, AmeriCor cannot be said to have been deliberately indifferent to the needs of the decedent. *See*, Novak v. County of Wood, 226 F.3d 525 (7th Cir. 2000); *See also*, Gayton v. Michael McCoy, Sheriff of Peoria County, Illinois, et. al., 2008 U.S. Dist. LEXIS 32378 (C.D.Ill. 2008); Kelley v. County of Wayne, et.al., 325 F.Supp. 2d 788 (E.D.Mich. 2004). As set forth above, there is no evidence the decedent was actively withdrawing from heroin nor that he was suicidal.[4]

The plaintiffs, without evidentiary support, state that there are facts that exist from which a jury could conclude that AmeriCor knew of the decedent's risk of suicide based upon the score on the suicide screen and were thus deliberately indifferent by the failure to place the decedent on a continuous watch. Again, neither Nurse Waters nor Nurse Clarke heard or saw any indicators that the decedent was suicidal. The decedent, on each encounter with AmeriCor staff appeared fine.

---

[4] Pagan v. County of Orange, Not Reported in F.Supp.2d, 2001 WL 32785 (S.D.N.Y. 2001) as cited to by plaintiffs merely held that under the circumstances, where the inmate who assaulted the plaintiff had twice written to prison psychiatric doctors that he had not received his psychiatric mediations for his conditions, and where housed in a specialized unit for mental housing, with officers who were specially trained, it was a question of fact whether the inmate would become violent, attacking another inmate.

## CONCLUSION

As set forth above, the plaintiffs cannot establish that AmeriCor violated 18 U.S.C. §1983. The decedent did not suffer from a serious medical condition which required medical attention. Even assuming he did, the alleged actions or inactions of AmeriCor did not rise to the level of deliberate indifference. As such, the plaintiffs' §1983 claim against AmeriCor must be dismissed as a matter of law.

**WHEREFORE**, it is respectfully requested that this Court grant Defendant AmeriCor's motion for summary judgment on the plaintiffs' 42 U.S.C. §1983 claims pursuant to Federal Rule of Civil Procedure 56, that this Court not exercise pendant jurisdiction over the plaintiffs' remaining state law claims and transfer this action to the State Supreme Court, and for such other further and different relief as this Court deems just and proper.

Dated: White Plains, New York
      May 6, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Timothy P. Coon (TC 3357)
Bernice E. Margolis (BM0702)
Attorneys for Defendant AmeriCor
3 Gannet Drive
White Plains, New York 10604
(914) 323-7000
File No.: 07621.00174

-17-

TO:  Lovett & Gould, LLP
     Attorneys for Plaintiffs
     Attn.: Kim Berg, Esq.
     222 Bloomingdale Road
     White Plains, NY 10605
     (914) 428-8401
     Fax: (914) 428-8916

     Santangelo Randazzo & Mangone, LLP
     Attorneys for Co-Defendants Joseph A. Vasaturo
     Louis G. LaPolla and The County of Putnam
     Attn.: James Randazzo, Esq.
     151 Broadway
     Hawthorne, New York 10532
     (914) 741-2929
     Fax: (914) 741-2920

     Miranda Sokoloff Sambursky Slone Verveniotis LLP
     Attorneys for Co-defendants DONALD B. SMITH
     Attn.: Adam I. Kleinberg, Esq.
     The Esposito Building
     240 Mineola Boulevard
     Mineola, NY 11501
     516.741.7676 (TEL)
     516.741.9060 (FAX)