UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DONNY A. SINKOV, as Administrator of the Estate
of Spencer E. Sinkov, deceased, DONNY A.
SINKOV, and HARA SINKOV,

                           Plaintiffs,                07 Civ. 2866 (CS)(GAY)

    -against-

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM,
New York, and AMERICOR, INC.,

                          Defendants.
------------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT AMERICOR'S MOTION FOR
REARGUMENT AND RECONSIDERATION**


                                                                       LOVETT & GOULD, LLP
                                                                       Attorneys for Plaintiffs
                                                                       222 Bloomingdale Road
                                                                        White Plains, New York 10605
                                                                        (914) 428-8401

## Table of Contents

                                                                                                   **Page**

Table of Authorities .................................................................................ii

Preliminary Statement................................................................................1

ARGUMENT

POINT I
    DEFENDANT'S MOTION FOR RECONSIDERATION SHOULD BE
    DENIED AS IT SIMPLY REHASHES THE SAME ARGUMENTS
    PREVIOUSLY MADE IN ITS MOTION FOR SUMMARY JUDGMENT........1

POINT II
    THE COURT CORRECTLY DENIED DEFENDANT
    AMERICOR'S MOTION FOR SUMMARY JUDGMENT........................4

POINT III
    AMERICOR FAILS TO ADDRESS THE ADDITIONAL BASIS
    FOR DENIAL OF ITS MOTION FOR SUMMARY JUDGMENT................9

Conclusion.............................................................................................11

## TABLE AUTHORITES

**Cases**                                                                                **Page**

Adams v. United States, 686 F.Supp 417 (S.D.N.Y. 1990).................................1

Purdy v. Greenburgh, 178 F.Supp.2d 439 (S.D.N.Y. 2002)................................1

Shrader v. CSX Transportation, Inc. 70 F.3d 255 (2nd Cir. 1995)........................1

**Preliminary Statement**

On July 28, 2008, by Memorandum Decision and Order, this Court (Hon. George A. Yanthis) denied Defendants' motions for summary judgment.

Defendant AmeriCor, Inc. now moves for reargument and reconsideration of the Court's Memorandum Decision and Order.[1] For the reasons set forth herein, AmeriCor' motion should be denied in all respects.

**Argument**

**POINT I**

**DEFENDANT'S MOTION FOR RECONSIDERATION SHOULD BE DENIED AS IT SIMPLY REHASHES THE SAME ARGUMENTS PREVIOUSLY MADE IN ITS MOTION FOR SUMMARY JUDGMENT**

The standards for granting a motion for reconsideration are "strict" in that motions for "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2nd Cir. 1995) *citing* Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y. 1990) and Adams v. United States, 686 F.Supp. 417, 418 (S.D.N.Y. 1988); Purdy v. Greenburgh, 178 F.Supp.2d 439, 441 (S.D.N.Y. 2002).

AmeriCor has failed to meet this strict standard. Its motion falls woefully short of this threshold since it solely consists of a reiteration of the very same arguments made to the Court in support of their previously, unsuccessful motion for summary judgment. Fatal to both motions is AmeriCor's assertion as undisputed "fact" matters which, as this Court correctly concluded, are "triable factual issues, including, but not limited to,

---

[1] The remaining defendants have not moved for reargument and reconsideration.

1

whether the defendants were deliberately indifferent." (July 28, 2008 Memorandum Decision and Order, p. 2).

First and foremost, AmeriCor has not cited to any legal precedent or controlling case overlooked by the Court. Rather, AmeriCor has literally "cut and paste" from portions of its prior motion for summary judgment and simply relabeled the same legal argument as one for "reargument and reconsideration" (compare Motion for Reconsideration, pp. 5-6 with Motion for Summary Judgment, pp. 9-10).

Second, AmeriCor has not cited to any undisputed facts overlooked by the Court. Instead, AmeriCor rehashes the same "facts" it previously brought to the Court's attention in support of its underlying motion for summary judgment and at oral argument.

More specifically, AmeriCor continues to speciously argue that it had no reason to believe that Spencer was going to harm himself. This of course is a significant, disputed, issue of material fact in that evidence exists in this record from which a reasonable jury could readily conclude that AmeriCor was in fact aware of Spencer's high risk of suicide and acted in a deliberately indifferent manner to that serious, medical need when it failed to implement a constant watch (*see* Point II, *infra*).

In addition, AmeriCor could be found to have acted in a deliberately indifferent manner by reason of the fact that its policies and procedures fell far short of the State's requirement that a constant watch be implemented for inmates at risk of suicide. Here, contrary to the State's minimum requirements, AmeriCor deliberately and without any concern for the safety of suicidal prisoners violated these minimum standards by

requiring a "plainly inadequate" 15 minute watch for suicidal inmates (*see* Point III, *infra*).

Americor could also be found to be deliberately indifferent by reason of its failure to train staff in suicide prevention (*see* Point III, *infra*).

Third, a very important point warrants attention in connection with the instant motion for reargument and reconsiderations. That is here is AmeriCor and <u>not</u> the Court that has overlooked the relevant legal principles and record evidence which required denial of its motion for summary judgment.

For here, once again (as in connection with the underlying motion for summary judgment) AmeriCor overlooks New York State's mandated "Minimum Standards" which <u>required</u> nothing less than constant watch for Spencer under the circumstances where Spencer scored a "10" on the suicide screening form and had three shaded areas on the screening marked as "yes" (Berg Aff. Exs. 1, 3, 4 and 5)[2].

Thus, contrary to Americor's arguments (then and reiterated now), it is AmeriCor that actually overlooks legal precedent by its intentional failure to even once refer the Court to the controlling State minimum standards governing admissions such as Spencer's into County jails. To that end, the cases AmeriCor cites to where some type of precautionary measures were taken by jail officials are all inapposite since in New York State the minimum <u>required</u> under the circumstances of Spencer's admission was implementation of a constant watch.

Finally, although AmeriCor now claims the Court overlooked "uncontroverted record evidence" in fact all it has done is a rehash of the same evidence it put before the

---

[2] All references to "Berg Aff." are to those exhibits annexed to the Affidavit of Kim Berg dated May 23, 2008 and submitted in opposition to Defendants' motions for summary judgment.

3

Court on the underlying motion and at oral argument – all evidence which is sharply disputed (*see* Point II, *infra*).

As such, this Court correctly held that questions of fact precluded AmeriCor's motion from being granted in the first instance. Again now, AmeriCor's motion on the basis of the same relabeled contentions, should be denied.

## POINT II

### THE COURT CORRECTLY DENIED DEFENDANT AMERICOR'S MOTION FOR SUMMARY JUDGMENT

AmeriCor's motion for reargument and reconsideration is based upon the same facts it previously asserted in support of its motion for summary judgment. This Court correctly found, after review of all Defendants' motion papers and lengthy oral argument attended by counsel for all parties, that questions of fact precluded the grant of the defendants' motions for summary judgment.

Here, AmeriCor first continues to claim that there was no indication Spencer was at risk of harming himself – portraying his demeanor as one which was "lighthearted" and "joking", his physical appearance as being perfectly normal/healthy, and as not having any indication that he would be going through withdrawal (*see* AmeriCor's Motion for Reargument, pp. 7-8, 12-13).

The evidence in the record contradicts AmeriCor's assertions of "fact", including:

(1) Donny and Hara Sinkov's testimony that when they saw Spencer approximately two hours before he committed suicide Spencer did not appear "normal" but rather looked awful, with dark circles under his eyes, a very pale complexion and clammy skin (D. Sinkov Dep. p. 69; H. Sinkov Dep. p. 20);

4

(2) Putnam County Correction Officer Wendover's testimony that also two hours before the suicide he specifically heard Spencer say that he (Spencer) was withdrawing from heroin (Wendover Dep. pp. 56, 83; D. Sinkov Dep. p. 69; 50-h Tr. p. 36).

In fact, it was moments after Spencer's parents and Wendover made these observations that Nurse Waters claims she saw Spencer and he appeared to be fine. Under these circumstances, a jury may readily disbelieve Waters and AmeriCor's assertion that Spencer was okay in that his parents and Wendover give a very different version of these events. Yet another question of fact the Court correctly found existed precluding Defendants' from obtaining judgment.

Moreover, even on the far-fetched chance a jury believes the assertion that Spencer's demeanor and physical appearance were all normal, there still exists a more than ample basis for a jury to find that AmeriCor staff knew Spencer was a high risk of suicide. In fact, the clearly self-serving claims that Spencer appeared fine, when juxtaposed against the very elevated scores on the suicide screening form, present the quintessential jury question.

For here, AmeriCor nurse Clarke initialed the medical packet showing he reviewed it (Berg Aff. Ex. 12). The screening form, that was part of that packet, indisputably shows that: (1) Spencer scored a "10" on the suicide screening form; (2) Spencer answered "yes" to not only one but three shaded areas on the suicide screening form; and (3) Spencer answered yes to having "feelings of hopelessness (nothing to look forward to)", to this being his first time in jail, and to being addicted to heroin (Berg Aff. Ex. 4).

5

Furthermore, AmeriCor's own written policies and the testimony adduced during discovery show that individuals experiencing withdrawal from heroin typically start out with having mild symptoms that then peak 24-72 hours after the last use of heroin. At the time of his suicide, Spencer had last used heroin 37 hours earlier. There is no dispute that the physical and mental pain associated with withdrawal can often lead individuals to believe suicide is their only option (LeFever Dep. p. 75; Vasaturo Dep. pp. 98-99; Clarke Dep. p. 68; Waters Dep. pp. 55-56; Berg Aff. Ex. 11, bates stamped p. 518; Duffy Dep. p. 153).

Under these circumstances, AmeriCor's claim that there was no indication Spencer would harm himself or was in need of monitoring due to withdrawal is rendered incredible. At minimum, it is another disputed issue of material fact precluding summary judgment from being granted to AmeriCor.

AmeriCor's next assertion that the Court overlooked the fact that Spencer did not verbally state at any time he was going to harm himself just continues to show its deliberate indifference to the serious medical risk of suicide (AmeriCor's Motion for Reconsideration, pp. 8-10, 13). The fact that a first time arrestee does not openly profess to a complete stranger, who happens to also be a jail official, that he may harm himself is not shocking. Nor is there any support for an inference that such verbal expression of suicidal thoughts is required before the State's minimum standards requiring constant watch are triggered.

In fact, the State requires the administration of the suicide screening form for that very reason (Berg Aff. Ex. 1; LeFever Dep. pp. 73-74, 87-88, 90-91). Put differently, the suicide screening was devised because of the diverse range of issues inmates arriving at

jail facilities face. Thus, the Commission has declared that the screening instrument developed by the OMH and Commission in the 1980's, namely the ADM-330 "must be used" (Berg Aff. Ex. 5).

Under the minimum standards, completely ignored by the AmeriCor, the State imposes the affirmative obligation on jailers, including those with whom County's contract for the provision of services, to use the ADM-330 screening form to identify anyone who is at risk of harming themselves (Berg Aff. Exs. 1, 3 and 5).

Then, once an inmate is identified as suicidal by reason of their score on the screening form, the State's regulations leave no room for discretion. Thus, where an inmate scores eight or higher or has one or more shaded box checked constant watch must be implemented (Berg Aff. Exs. 1, 3 and 5; LeFever Dep. pp. 88-89).

AmeriCor's claim that somehow they have discretion to implement something less than a constant watch as a suicide precaution not only fails to meet the required minimum standards in New York but also highlights the deliberately indifferent approach AmeriCor took and continues to take to this serious medical need.

For the State Commission has specifically held that fifteen minute watches are "plainly inadequate" and "inappropriate" as well as in violation of 9 NYCRR §7003.3(h). That is because "it is a well established fact that inmates can hang themselves with fatal results in less than five minutes. Therefore if the objective is to prevent suicide, ONLY CONSTANT OBSERVATION IS EFFECTIVE..." (Berg Aff. Ex. 1 (emphasis in original); LeFever Dep. pp. 88-89).

AmeriCor's next factual contention that it did not have ay role in determining the level of supervision is also disputed – even by its own staff (AmeriCor's Motion for

7

Reconsideration, pp. 10-11). Both AmeriCor nurses and County employees testified that AmeriCor not only reviewed the suicide screening forms at intake but that its staff also had the authority to implement constant watches for inmates who were at risk of harming themselves. In fact, AmeriCor's policies mandated the nurses review these forms and advise jail staff of any issues – including but not limited to advising jail staff of inmates who are suicidal (Berg Aff. Ex. 10 bates stamped page 557-558; Berg Aff. Ex. 9, bates stamped page 388).

And here, Nurse Clarke even admitted in Spencer's case he saw the suicide screening form (Clarke Dep. p. 36)

Nurses had also implemented suicide precautions before and their own written policies defined the precaution as a fifteen minute watch (although this precaution we know was plainly inadequate under the State's minimum standards) (*see* LaPolla Dep. pp. 25-26, 28-30, 32-33; Vasaturo Dep. pp. 90-91; Oliver Dep. pp. 16, 45-46; Clarke Dep. pp. 31-34; Duffy Dep. pp. 68-69; Smith Dep. pp. 73-74; Berg Aff. Exs. 1, 3, and 5).

Here again, AmeriCor's version of events cannot be credited as it is deceptive in its attempts to ignore the State's required minimum standards.

Finally, AmeriCor's claim that it took precautionary procedures is a complete farce. For Americor did not engaged in "repeated conversations and observations, 15 minute watch and the preparation of a Mental Health Referral Form" for the purpose of preventing Spencer's suicide (see AmeriCor's Memorandum of Law, p. 6).[3] To the contrary, AmeriCor did not do anything to prevent the risk of suicide despite its involvement in the screening process, Clarke's review of the form, its ability to institute

---

[3] Nurse Waters cannot even recall completing the mental health referral form.

8

constant watches, and its authority to refer inmates for psychological evaluation. It did not place Spencer on a constant watch. It did not conduct a single observation of Spencer. It did a screening that was found to be inadequate by the State Commission. And it now claims through Nurse Waters that despite Spencer's sickly appearance there was no reason for her to believe he was going through withdrawal. Even at intake Nurse Clarke wrote that he "will monitor" Spencer when in fact he admitted he never did monitor or follow up on Spencer after the intake was done (Clarke Dep. pp. 48-49; Berg Aff. Ex. 13; State Commission Report, p. 4 ¶9, annexed to Berg Aff. as Ex. 9).

Thus again, AmeriCor's tainted version of the facts is contested.

Clearly, it is AmeriCor that has failed to "give proper consideration to" the facts adduced during discovery and not the Court that has overlooked any factual or legal issues. Rather, this Court correctly found that on this record a host of disputed issues of material fact exist which issues required denial of AmeriCor's motion for summary judgment. The Court should therefore similarly deny AmeriCor's instant motion for reargument and reconsideration.

## POINT III

### AMERICOR FAILS TO ADDRESS THE ADDITIONAL BASIS FOR DENIAL OF ITS MOTION FOR SUMMARY JUDGMENT

Separate and apart from the existence of disputed issues of material fact, there exist other material facts in this record which further support the Court's denial of AmeriCor's motion for summary judgment.

First, AmeriCor has conceded that its written policies and practices did not comply with the State's minimum standards. For AmeriCor's policies required ONLY a

9

"fifteen minute watch" for inmates who were at risk of suicide (Berg Aff. Ex. 9, bates stamped pp. 448-450; Duffy Dep. pp. 165-166; Smith Dep. pp. 157-158).

Under circumstances where a fifteen minute watch has been specifically and repeatedly declared "patently insufficient" and "inadequate" by the State Commission of Correction as a method of suicide prevention (Berg Aff. Ex. 1) this constitutes deliberate indifference.

In fact, since as far back as 1999, the Commission has warned that suicide by hanging can result in fatalities in less than five minutes and therefore "if the objective is to prevent suicide, ONLY CONSTANT OBSERVATION IS EFFECTIVE." (Berg Aff. Ex. 1) (emphasis in original).

Under these circumstances, AmeriCor was deliberately indifferent in failing to require by its own policies a constant watch as a suicide precaution. In the face of a clear directive and explanation by the State that anything less than constant watch is not effective, and even in the face of the clear language that death results in less than five minutes of hanging, AmeriCor deliberately disregarded the mandate. AmeriCor is liable for having in place a policy and procedure that was deliberately indifferent to the serious risk of inmate harm by suicide when it implemented only a fifteen minute watch – a measure that amounts to no prevention at all according to the State Commission.

Second, AmeriCor can be liable for failing to train its staff in suicide prevention. For it has been established that nurses were not providing with such training until approximately six months after Spencer died (Clarke Dep. pp. 11-13, 19-20, 27-28; Waters Dep. pp. 8, 12-14).

10

Thus, AmeriCor's motion for summary judgment was properly denied not only due to the existence of disputed issues of material fact but also because its own policies and practices, and its failure to train staff, were deliberately indifferent to the serious risk of inmate suicide.

## Conclusion

Defendant AmeriCor Inc.'s motion for reargument and reconsideration should be denied in all respects.

Dated: White Plains, N.Y.
      August 13, 2008

LOVETT & GOULD, LLP
By: _____
Kim Berg (KB1425)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401
