UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DONNY A. SINKOV, as Administrator of the Estate
of Spencer E. Sinkov, deceased, DONNY A.
SINKOV, and HARA SINKOV,

                                Plaintiffs,                07 Civ. 2866 (CS)(GAY)

    -against-

DONALD B. SMITH, individually and in his official
capacity as Sheriff of Putnam County, JOSEPH A.
VASATURO, individually, LOUIS G. LAPOLLA,
individually, THE COUNTY OF PUTNAM,
New York, and AMERICOR, INC.,

                                Defendants.
------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICOR'S MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

                                            LOVETT & GOULD, LLP
                                           Attorneys for Plaintiffs
                                           222 Bloomingdale Road
                                           White Plains, New York 10605
                                           (914) 428-8401

## Preliminary Statement

On July 28, 2008, by Memorandum Decision and Order, this Court (Hon. George A. Yanthis) denied Defendants' motions for summary judgment.

Defendant AmeriCor, Inc. now moves for certification of an interlocutory appeal to the Second Circuit Court of Appeals pursuant to 28 U.S.C. §1929(b).[1] For the reasons set forth herein, AmericCor's motion should be denied in all respects.

## Argument

### POINT I

### DEFENDANT AMERICOR'S MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL SHOULD BE DENIED

AmeriCor's motion for certification of an interlocutory appeal should be denied. Upon review of its moving papers, it is patently evident that the motion for certification does nothing more than reiterate AmeriCor's failed arguments for judgment – arguments which have been presented to the Court now twice – first in connection with its unsuccessful motion for summary judgment and then again in its motion for reconsideration.

Furthermore, the instant motion, as with the two other motions made by AmeriCor, rely upon the same tainted version of "facts" which facts are clearly in dispute and which provided more than sufficient grounds for denial of its motion for summary judgment. It is respectfully submitted at the outset that AmeriCor's continued course of repetitive arguments styled under different motion titles cannot be countenanced. It is not only unduly burdensome and time consuming for the Court, but similarly burdensome and costly to the litigants.

**A. The certification of this matter for interlocutory appeal will not materially advance the ultimate termination of this litigation**

---

[1] The remaining defendants have not similarly moved. In addition, Defendant Americor has also moved for reargument and reconsideration of the Court's July 28, 2008 Memorandum Decision and Order. Plaintiff opposed that motion by submissions made on August 13, 2008.

1

AmeriCor's argument that an appeal of this matter will advance the ultimate termination of the litigation is based on the flawed (and already failed) argument that the Second Circuit will find AmeriCor did not act in a deliberately indifferent manner. This argument really is simply one for judgment in favor of AmeriCor and continues to improperly rely upon a vastly disputed version of the record facts.

Even AmeriCor's own characterization of the issue that would certified for appeal shows it simply is an argument for summary judgment. *See* AmeriCor's Brief at p. 4: "Specifically should this case be certified for interlocutory appeal, the issue before the Second Circuit Court of Appeals will be whether the defendant AmeriCor was deliberately indifferent such that the decedent's constitutional rights were violated?"

Under these circumstances, an appeal will not advance the termination of the litigation but will merely delay the outcome – which outcome this Court already correctly concluded must be left for the jury's determination. *See* Point I(B), *infra*, for a brief analysis of these disputed facts.

Further, even if AmeriCor was able to appeal the Court's July 28, 2008 Memorandum Decision and Order at this time, there still exists a negligence claim against AmeriCor that would go to trial. Clearly, under these circumstances, material advancement of the end of this case will not be the result.

Finally, regardless of any appeal by AmeriCor, there still remain the Fourteenth Amendment and negligence claims against the County, Smith, Vasaturo and LaPolla. In that connection, AmeriCor staff will be called as witnesses at trial and the negligence claim against AmeriCor will be tried at the same proceeding. These circumstances further show the lack of

any advancement of this litigation's conclusion, or even curtailment of the evidence, if an appeal is taken at this time.

As such, this prong for certification of an interlocutory appeal has not been met.

### B. A closer look at the host of disputed issues of fact material to the question of deliberate indifference that would prevent the Second Circuit from reversing this Court's July 28, 2008 Memorandum Decision and Order

Since this Court correctly found that disputed issues of fact precluded summary judgment in favor of all defendants, an appeal on this record will not materially advance the ultimate termination of this litigation. In fact, the only thing an appeal can accomplish is further delay the matter's resolution since the Court of Appeals (like this Court) is not permitted to invade the jury's province and determine the factual issues presented on this record.

Each of these disputed issues of material fact have been presented to the Court in connection with the underlying summary judgment motion, at oral argument, and again in response to Defendant Americor's motion for reconsideration. Nonetheless, a summary of those issues of fact which will preclude any reversal by the Second Circuit of this Court's July 28, 2008 decision include:

(1) Americor's role in the booking process and authority to institute constant watches for inmates who were at risk of suicide – a role which AmeriCor continues to deny it had any involvement in contrary to the deposition testimony of numerous witnesses who state that AmeriCor nurses had an integral role (*see* Americor's own written policies describing the nurse's role in the booking process at Berg Aff. Ex. 10 bates stamped page 557-558; Berg Aff. Ex. 9, bates stamped page 388; *see also* LaPolla Dep. pp. 25-26, 28-30, 32-33; Vasaturo Dep. pp. 90-91; Oliver Dep. pp. 16, 45-46; Clarke Dep. pp. 31-34; Duffy Dep. pp. 68-69; Smith Dep. pp. 73-74);

3

(2) AmeriCor Nurse Clarke's knowledge that Spencer scored a "10" and had three shaded boxes checked on the suicide screening form warranting the only acceptable level of supervision in the State of New York – namely a constant watch (Berg Aff. Ex. 12; Clarke Dep. p. 36 admitting he saw Spencer's forms);

(3) Nurse Clarke's knowledge that Spencer would be entering serious withdrawal based on his history of heroin use and his deliberate indifference in failing to monitor Spencer under circumstances where heroin withdrawal can be so physically and mentally painful that a person may believe that suicide is their only option -- especially in light of Clarke's own progress note at intake that he "will monitor" Spencer (LeFever Dep. p. 75; Vasaturo Dep. pp. 98-99; Clarke Dep. p. 68; Waters Dep. pp. 55-56; Berg Aff. Ex. 11, bates stamped p. 518; Duffy Dep. p. 153; progress note at Berg Aff. Ex. 13).

(4) Given Clarke's knowledge, AmeriCor's deliberate indifference to the known risk that Spencer was suicidal;

(5) The utter lack of credibility with respect to AmeriCor's attempts to paint Spencer as if he was acting like a clown in the circus – appearing perfectly normal and constantly joking around – in contrast to the objectively measured suicide screening form showing the high risk of suicide as evidenced by the highly elevated score on the suicide screening form, statements on that form that he had "feelings of hopelessness (nothing to look forward to)" and his parents testimony about his sickly physical appearance (*see* Berg Aff. Exs. 4, 12; D. Sinkov Dep. p. 69; H. Sinkov Dep. p. 20);

(6) Along similar lines, the lack of credibility of Waters' claims that Spencer looked fine moments after his visit with his parents who, in stark contrast, described Spencer's appearance as

pale, clammy, translucent and sickly (compare Waters Dep. p. 84 with D. Sinkov Dep. p. 69 and H. Sinkov Dep. p. 20);

(7) The lack of credibility to AmeriCor's claims that Spencer was not withdrawing from heroin where Putnam County Correction Officer Wendover's testimony is that two hours before Spencer committed suicide he specifically heard Spencer say that he (Spencer) was withdrawing from heroin (Wendover Dep. pp. 56, 83; *see also* D. Sinkov Dep. p. 69; 50-h Tr. p. 36);

(8) Americor's deliberate indifference toward all inmates who pose a risk of suicide, and particular to Spencer, in that its own written policy and procedure required implementation of 15 minute watches as a suicide precaution which policies did not meet the State's minimum standards requiring constant watch. This is to be evaluated gainst the State Commission's memoranda to local facilities which stated, at least as far back as 1999, that suicide by hanging can result in fatalities in <u>less than five minutes</u> and therefore "if the objective is to prevent suicide, ONLY CONSTANT OBSERVATION IS EFFECTIVE" (compare AmeriCor's policies cited in the record at Berg Aff. Ex. 9, bates stamped pp. 448-450; Duffy Dep. pp. 165-166; Smith Dep. pp. 157-158 with the State's Minimum Standards described in Berg Aff. Exs. 1, 3, and 5), and, *inter alia,*

(9) Americor's liability and deliberate indifference for its complete failure to train staff in the area of suicide prevention which training was not provided until after two suicides occurred in the jail during the time AmeriCor was the jail's medical provider (Clarke Dep. pp. 11-13, 19-20, 27-28; Waters Dep. pp. 8, 12-14).

Under these circumstances, these disputed issues of material fact would preclude the Court of Appeals for the Second Circuit from reversing this Court's July 28th Order and similar preclude the Second Circuit from granting Defendant AmeriCor summary judgment. Thus,

5

certification of the matter for interlocutory appeal will not advance the end of this litigation. To the contrary, an appeal will only further delay the matter and add undue expense and burden on the parties and the Courts. As such, AmeriCor's motion for certification must be denied.

### C. AmeriCor's claim that there is substantial difference of opinion in the law governing the deliberate indifference claim is completely specious

Contrary to AmeriCor's view, the law governing claims of deliberate indifference is not diverse and unsettled. In fact, the law is rather uniform and has been clearly established in this Circuit for nearly two decades – both by reason of United States Supreme Court and Second Circuit precedent.

For as the United States Supreme Court has held: affirmative duties are imposed on jail officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted).

Similarly, the Second Circuit has held that "the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." Weyant v. Okst, 101 F.3d 845, 856 (2nd Cir. 1996), citing see e.g., Liscio v. Warren, 901 F.2d 274, 276-77 (2nd Cir. 1990).

Put differently, the official may be liable where he acts in a deliberately indifferent manner to inmate health or safety. Farmer, 511 U.S. at 834.

The term "deliberate indifference" has been clearly defined as well. It includes an objective and subjective prong. With respect to the objective prong, the alleged deprivation must be sufficiently serious in the sense that it contemplates "a condition of urgency, one that may

produce death, degeneration, or extreme pain". Hathaway v. Coughlin, 99 F.3d 550, 553 (2nd Cir. 1996), *citing* Hathaway v. Coughlin, 37 F.3d 63, 66 (2nd Cir 1994), *citing* Nance v. Kelly, 912 .2d 605, 607 (2nd Cir. 1990) (Pratt, J. dissenting).

And as to the nature of the serious medical conditions covered by the deliberate indifference standard, numerous courts in and out of the Second Circuit have consistently held that a risk of suicide is a sufficiently serious condition to trigger the requirements of due process under the Fourteenth Amendment. *See* Kelsey v. City of New York, 2006 WL 3725543, *4 (E.D.N.Y. 2006) ("when in the custody of police, an arrestee has the right to care and protection, including protection for suicide"); Weyant, 101 F.3d at 856 (in the detainee suicide context, the relevant inquiry is whether defendants were deliberately indifferent to the medical need of the detainee to be protected from himself."); Cooke ex rel. Estate of Tessier v. Sheriff of Monroe Cty. Fla, 402 F.3d 1092, 1115 (11th Cir. 2005) ("pretrial detainees like [plaintiff] have a Fourteenth Amendment due process right 'to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.") *quoting* Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citations omitted); *see also* Hare v. Corinth, Miss., 74 F.3d 633, 647 & 648 n. 3 (5th Cir. 1996) (collecting cases involving claims for failure to protect individuals in custody from suicide); Cooper v. County of Washtenaw, 2007 WL 557443 (6th Cir. 2007) (suicidal tendencies are serious medical needs), *citing* Horn, 22 F3d at 660 and Barber v. City of Salem, Ohio, 953 F.2d 232, 239-240 (6th Cir. 1992); *see also* County Defendants' Memorandum of Law, p. 10.

As to the subjective prong, it has been uniformly held that deliberate indifference is the equivalent of "reckless disregard" to the risk posed by the detainee's condition. This is

"something more than mere negligence" but less than intentional conduct. "Proof of intent is not required, for the deliberate indifference standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Weyant, 101 F.3d at 856, citing Farmer v. Brennan, 511 U.S. 825, see generally Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); see also Hathaway, 99 F.3d at 553.

It is no surprise that with respect to the subjective prong, Courts in the Southern District have repeatedly found questions of fact exist on the issue of whether officials actually drew the inference that a substantial risk of serious harm to inmate health or safety existed and disregarded that risk – leaving those questions of fact for the jury. See Pagan, 2001 WL at *3, citing Byrd v. Abate, 1998 WL 67665 (S.D.N.Y. 1998) and Warren v. Keane, 937 F.Supp. 301, 305 (S.D.N.Y. 1996).[2]

Thus, the standards governing deliberate indifference and its applicability to the risk of suicide in jail has been long established.

AmeriCor has failed to show any substantial ground for difference of opinion on this legal standard to warrant certification of an interlocutory appeal. In fact, the cases cited at page 5 of its Brief are completely irrelevant to the issue since this case does not involve evidence of a decedent's actual suicide as the only evidence pointing towards deliberate indifference.

In addition, there can be no substantial ground for difference of opinion on the governing State's minimum standards – which standards required that Spencer be placed on a constant watch. As in its prior motions, AmeriCor again completely ignores these Minimum Standards in

---

[2] AmeriCor's argument that there is limited case law in the Southern and Eastern Districts is incorrect. For not only is there United States Supreme Court and Second Circuit precedent, but there is significant law on deliberate indifference in the Southern District of New York. Furthermore, the State's minimum standards provide for uniform requirements rather than a "substantial difference" in suicide prevention.

8

this motion for certification. Perhaps that is because the Commission's minimum standards negate any leeway for any difference of opinion.[3]

For here, even the Putnam County Jail Administrator's own testimony proves there is no room for differing opinion as he readily admitted that fifteen minute or other periodic checks do not comply with the State's minimum standards (LeFever Dep. pp. 73-74, 87-88, 90-91) and that Spencer should have been placed on a constant watch due to his scores on the suicide screening form (LeFever Dep. pp. 113-114, 132-133).

Since this prong for certification has not been satisfied by Americor, the instant case should not be certified for an interlocutory appeal.

### Conclusion

Defendant AmeriCor Inc.'s motion for certification of an interlocutory appeal should be denied in all respects.

Dated: White Plains, N.Y.
August 18, 2008

LOVETT & GOULD, LLP
By: _____
Kim Berg (KB1425)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

---

[3] Thus, to the extent Defendant cites to cases outside of New York, they are inapposite as New York's regulations would not control in these other jurisdictions. In fact, the only cased cited by Defendant which is in Circuit is Kelsey – a case factually distinguishable from the instant case. For in Kelsey, the decedent committed suicide not in jail but while being arrested. During arrest, he escaped from the arresting officers and, while still handcuffed, ran to the rooftop of a building and jumped to his death. The arresting officers pursued him but were unable to catch him before he died. See Kelsey v. City of New York, 2006 WL 3725543 (E.D.N.Y. 2006). Clearly, the case has not applicability to Spencer's claims or factual circumstances and the officers did take all of the affirmative steps they could have to prevent his death.